**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REEBOK INTERNATIONAL LTD.,<br><br>              Plaintiff,<br><br>     v.<br><br>WAL-MART STORES, INC.,<br><br>              Defendant. | Civil Action No. 04-12668 (RGS) (RBC)<br>Honorable Richard G. Stearns |

<u>REEBOK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT OF PATENT INVALIDITY
AND IN SUPPORT OF REEBOK'S CROSS-MOTION FOR SUMMARY JUDGMENT OF
PATENT VALIDITY AND REEBOK'S MOTION FOR SUMMARY JUDGMENT OF
PATENT INFRINGEMENT</u>

Reebok International Ltd. ("Reebok") hereby provides a combined memorandum in
opposition to Wal-Mart's Motion for Summary Judgment of Patent Invalidity and in support of
Reebok's Cross-Motion for Summary Judgment of Patent Validity and Reebok's Motion for
Summary Judgment of Patent Infringement.  The undisputed evidence in this case establishes
that, as a matter of law, U.S. Design Patent No. D495,127 to Marvin *et al.* ("the '127 patent") is
valid and infringed by the offer for sale and sale of certain shoes marketed under the name
"Oxide" ("the Oxide shoes") and sold by Wal-Mart Stores, Inc. ("Wal-Mart") throughout the
United States.

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ......................................................................................1

II.    SUMMARY JUDGMENT THAT THE '127 PATENT IS VALID AND INFRINGED IS
       APPROPRIATE .........................................................................................................1

III.   THE '127 PATENT IS NOT ANTICIPATED BY THE DE WERTH PATENT ..............2

       A.    PROPER CONSTRUCTION OF THE '127 PATENT DESCRIBES THE
             VISUAL APPEARANCE OF THE CLAIMED DESIGN AS A WHOLE ...........2
       B.    THE '127 PATENT IS PRESUMED VALID ......................................................5
       C.    THE DE WERTH PATENT DOES NOT DISCLOSE EACH AND EVERY
             FEATURE OF THE '127 PATENT ....................................................................6
       D.    THE DE WERTH PATENT IS CUMULATIVE TO THE ART THAT WAS
             BEFORE THE EXAMINER WHEN THE '127 PATENT WAS GRANTED ......9
       E.    REEBOK IS ENTITLED TO SUMMARY JUDGMENT OF VALIDITY .........10

IV.    THE '127 PATENT IS INFRINGED BY WAL-MART'S OXIDE SHOES..................10

       A.    IN THE EYE OF AN ORDINARY OBSERVER THE DESIGNS OF THE
             '127 PATENT AND THE OXIDE SHOES ARE SUBSTANTIALLY THE
             SAME ..............................................................................................................11
       B.    THE OXIDE SHOES APPROPRIATE THE POINTS OF NOVELTY THAT
             DISTINGUISH THE '127 PATENT FROM THE PRIOR ART.........................15
       C.    REEBOK IS ENTITLED TO SUMMARY JUDGMENT OF
             INFRINGEMENT.............................................................................................16

V.     CONCLUSION .........................................................................................................17

## TABLE OF AUTHORITIES

CASES

Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573 (Fed. Cir. 1996)...........................2

Avia Group Int'l Inc. v. L.A. Gear, 853 F.2d 1557 (Fed. Cir. 1988) ............................... 12, 14, 15

Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371 (Fed. Cir. 2004)............................................................................ 3, 5, 6, 9, 11

Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815 (Fed. Cir. 1992)...............................10

Canon Computer Sys. v. Nu-Kote Int'l., 134 F.3d 1085 (Fed. Cir. 1998)...................................10

Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277  (Fed. Cir. 2002) ......................11, 15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................................1

Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370 (Fed. Cir. 2002).................3, 10, 11

Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308 (Fed. Cir. 2001) ..................................4, 6

Durling v. Spectrum Furniture Co., 101 F.3d 100 (Fed. Cir. 1996) .........................................3

Gargoyles Inc. v. Aearo Corp., 49 USPQ2d 1556, 1998 U.S. Dist. LEXIS 22294 (D. Mass 1998)...........................................................................................11

Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350 (Fed. Cir. 1999) ...........................................2

Gorham Mfg. Co. v. White, 81 U.S. 511 (1872) ..................................................... 11, 12, 15

Hupp v. Siroflex of Am., Inc., 122 F.3d 1456 (Fed. Cir. 1997)..............................................6

Jack Schwartz Shoes v. Skechers U.S.A., 233 F. Supp. 2d 512 (S.D.N.Y. 2002) ......................14

L.A. Gear v. Thom McAnn Shoe Co., 988 F.2d 1117 (Fed. Cir. 1993) .............................. 12, 16

Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984)...................................6, 14

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) .....................................2

Nike, Inc. v. Wolverine World Wide, Inc., 43 F.3d 644 (Fed. Cir. 1994) ...................................2

OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed. Cir. 1997)...............................2, 14

Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189 (S.D.N.Y. 1999).........................2, 14

Schawbel Corp. v. Conair Corp., 122 F. Supp. 2d 71 (D. Mass. 2000).....................................6

Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316 (Fed. Cir. 2001) .........................2

Unette Corp. v. Unit Pack Co., 785 F.2d 1026 (Fed. Cir. 1986) ...........................................12

Union Carbide Corp v. Am. Can Co., 724 F.2d 1567 (Fed. Cir. 1984).....................................2

STATUTES

35 U.S.C. § 271 ..................................................................................................................10

35 U.S.C. § 282 ....................................................................................................................5

OTHER AUTHORITIES

37 C.F.R. § 1.152 .................................................................................................................4

Fed. R. Civ. P. 56(c) ............................................................................................................1

Manual of Patent Examining Procedure § 1503.2 ..............................................................4

## I.     PRELIMINARY STATEMENT

Reebok is the owner by assignment of the '127 patent, which was duly issued by the United States Patent and Trademark Office on August 31, 2004.  Statement of Facts, ¶¶ 7 and 8. A copy of the '127 patent is filed herewith as Exhibit A.  Decl. at ¶ 2.  The prosecution history of the '127 patent is filed herewith as Exhibit C and the references cited during prosecution of the '127 patent are filed herewith as Exhibit D.  Decl. at ¶¶ 4 and 5 .  Wal-Mart has offered for sale and sold the Oxide shoes in the United States in men's, women's and youth's versions. Statement of Facts, ¶ 37.  Color photographs of the men's, women's and youth's versions of the Oxide shoes are filed herewith as Exhibit H.  Decl. at ¶ 9.  On December 20, 2004, Reebok filed the present action against Wal-Mart alleging that the Oxide shoes infringe the '127 patent. Statement of Facts, ¶ 1.  Service of the complaint was effective on January 10, 2005 and Wal-Mart answered on February 22, 2005.  Statement of Facts, ¶¶ 2 and 3.

On March 29, 2005, Wal-Mart moved for summary judgment, arguing that the '127 patent is invalid under 35 U.S.C. § 102(b) as anticipated by U.S. Patent No. 2,669,038 to De Werth ("the De Werth patent").  Statement of Facts, ¶ 4.  However, Wal-Mart has erred in its construction and analysis of the claimed design of the '127 patent.  Under the proper claim construction and analysis, the '127 is not anticipated by the De Werth patent.  Under the proper claim construction and analysis, the '127 patent is both valid and infringed.

## II.    SUMMARY JUDGMENT THAT THE '127 PATENT IS VALID AND INFRINGED IS APPROPRIATE

Summary judgment is properly granted when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Federal Circuit has repeatedly stated that "[s]ummary judgment is appropriate in a patent case, as in other cases . . . ." Nike, Inc. v.

Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994). "This applies to design patent cases as well as to utility patent cases." Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189, 192 (S.D.N.Y. 1999) (citing to OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed. Cir. 1997)). The standard for judgment under Rule 56 is the same in a patent case as in any other type of action. See Union Carbide Corp v. Am. Can Co., 724 F.2d 1567, 1571 (Fed. Cir. 1984) ("Where no issue of material fact is present . . . courts should not hesitate to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56 without regard to the particular type of suit involved."). Summary judgment is particularly appropriate here, as the accused shoe and Reebok's patent may be readily understood and compared by the Court without the need of technical explanation by experts.

"Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1327 (Fed. Cir. 2001) (citing Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999)). Similarly, summary judgment of infringement, also a question of fact, is appropriate where "the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible [claim constructions] is the proper one." See Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1578 (Fed. Cir. 1996) ("the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment").

## III.    THE '127 PATENT IS NOT ANTICIPATED BY THE DE WERTH PATENT

### A. PROPER CONSTRUCTION OF THE '127 PATENT DESCRIBES THE VISUAL APPEARANCE OF THE CLAIMED DESIGN AS A WHOLE

The first step in a validity analysis is claim construction. Markman v. Westview Instruments, Inc., 52 F.3d 967, 996 n.7 (Fed. Cir. 1995) (en banc) ("A claim must be construed

before determining its validity just as it is first construed before deciding infringement."). Claim construction is a matter of law and, as such, is within the province of the court. Id. at 977.

Because the scope of a design patent lies in the drawings, words are rarely, if ever an appropriate mechanism to describe what is protected by a design patent. "[T]he scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual appearance it creates." Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) (quoting Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-105 (Fed. Cir. 1996). To the extent that Reebok can articulate the novelty of the '127 patent, it is the combination of elements in the drawings which is not found in prior footwear designs, that is, the seventy-nine U.S. and foreign patents and other publications considered by the U.S. Patent and Trademark Office during examination of the '127 patent (which are cited on the face of the '127 patent). The Federal Circuit has held that to establish the points of novelty,

> the patentee must introduce into evidence, at a minimum, the design patent at issue, its prosecution history, and the relevant prior art references cited in the prosecution history; and must present, in some form, its contentions as to points of novelty. The contentions may be made in any appropriate way, such as in proposed findings of fact. The fact finder generally will be able to determine the points of novelty that distinguish the design patent from the prior art by comparing the design patent with the cited prior art references, aided by any written statements of the applicant and examiner in the prosecution history.

Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1384 (Fed. Cir. 2004)) ("additional evidence, such as expert testimony, is not necessary to establish the points of novelty.")

The '127 patent claims "the ornamental design for a portion of a midsole[1], as shown and described." Statement of Facts, ¶ 6. Figures 1 and 2 of the '127 patent are reproduced below for

---

[1] The midsole of a shoe is the portion of the sole between the outsole and the upper of the shoe. In Fig. 1, a dot-dash line encircles the portion of the midsole claimed.

the court's convenience[2].  Statement of Facts, ¶ 9.  Fig. 1 is "a side view of a portion of a midsole showing [the claimed] design."  Statement of Facts, ¶ 10.  Fig. 2 is "a cross sectional view thereof taken along line 2-2."  Statement of Facts, ¶ 11.  Reference numerals have been added to Figs. 1 and 2 of the '127 patent as reproduced below to aid the Court in the following discussion.



**FIG. 1 AND FIG. 2 OF THE '127 PATENT**

As apparent from Fig. 2, shown above, the claimed design generally consists of a portion of a midsole having ridges (labeled 1 and 2, above) arranged in a stair-stepped configuration, such that one ridge (labeled 2 above) protrudes further than the other ridge (labeled 1 above). Statement of Facts, ¶¶ 12 and 13.  Wal-Mart purports that the scope of the claimed design is limited to "a two-stepped ridged portion of a midsole on the side of a shoe, where the stepped

---

[2] The broken lines shown in the figures show "visible environmental structure" and not "hidden planes and surfaces that cannot be seen through opaque materials."  37 C.F.R. § 1.152. Broken lines have been interpreted as "for illustrative purposes only and form no part of the claimed design."  Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001). Nonetheless, as part of the Figures, they do provide some context to the claimed invention. Manual of Patent Examining Procedure § 1503.2 ("Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines.")

ridges are of unequal perimeter size."[3]   Statement of Facts, ¶ 5.  However, as is typical when words are used to describe an image, figure or drawing, Wal-Mart's construction fails to describe "the visual appearance as a whole" of the design protected by the '127 patent.  Additional features clearly present in the figures of the '127 patent are not identified by Wal-Mart.  For example, as can be seen in Fig. 1, the stepped ridges are rounded at both the front corner (labeled 3 above) and rear corner (labeled 4 above) of the midsole portion, as shown by the vertical hash lines at the front corner and rear corner of the claimed element in Fig. 1.  Statement of Facts, ¶¶ 14 and 15.  Further, at the rear corner (labeled 4 above) of the midsole portion, it is apparent that the stepped ridges also incline slightly, such that the top of each stepped ridge is slightly higher at the rear of the midsole portion than in the middle of the midsole portion.  Statement of Facts, ¶ 16.  Additionally, each stepped ridge has a vertical height which in relation to its overall horizontal length forms a long, slender visual aspect ratio.  Statement of Facts, ¶ 17.

While recitation of these features also does not provide a complete description of the midsole potion claimed in the '127 patent, such construction is sufficient to show that at least these features are not present in the De Werth patent, as discussed below.

**B.  THE '127 PATENT IS PRESUMED VALID**

A design patent, like a utility patent, is presumed valid.  See 35 U.S.C. § 282.  This presumption may only be overcome by clear and convincing evidence of invalidity.  Bernhardt, 386 F.3d at 1378.  The burden for establishing invalidity of the '127 patent lies with Wal-Mart. Id.  Reebok need not produce any additional affirmative evidence of validity, but may rest on the presumption of validity provided under 35 U.S.C. § 282.  See Schawbel Corp. v. Conair Corp.,

---

    [3]  By "unequal perimeter size," Reebok understands Wal-Mart to be referring to the fact that one ridge protrudes further than the other ridge in the claimed design.  Given that the claimed design is for a "portion of a midsole" and, therefore, does not necessarily encircle the entire midsole, the use of the term "perimeter" is, at best, confusing.

122 F. Supp. 2d 71, 81 (D. Mass. 2000) ("the patentee's obligation is not independently to produce affirmative evidence bolstering its patent's validity; rather, the patentee must clearly show that it can disprove the challenger's bases for invalidity.").

### C. THE DE WERTH PATENT DOES NOT DISCLOSE EACH AND EVERY FEATURE OF THE '127 PATENT

"The tests for determining the validity of a design patent issued pursuant to 35 U.S.C. § 171 are identical to those tests currently espoused by [the Federal Circuit] for determining the validity of a utility patent issued pursuant to 35 U.S.C. § 101." Bernhardt, 386 F.3d at 1377-1378 (quoting Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1440 (Fed. Cir. 1984)). This means that the prior art reference must be "identical in all material respects" to the claimed invention. Door-Master, 256 F.3d at 1308 (quoting Hupp v. Siroflex of Am., Inc., 122 F.3d 1456, 1461 (Fed. Cir. 1997)).[4]  In light of the differences between the design of the '127 patent and the De Werth patent, a reasonable jury could not conclude that Wal-Mart has met its burden of showing anticipation by clear and convincing evidence.

A side-by-side comparison of the relevant portions of Figure 1 of the '127 and Figure 1 of the De Werth patent is reproduced below.  Statement of Facts, ¶ 19.

---

[4]  The Federal Circuit has noted that "that which infringes, if later, would anticipate, if earlier." See Door-Master, 256 F.3d at 1308.  Under this tenet, the Federal Circuit has held that the proper analysis of invalidity of a design patent, like the analysis of infringement of a design patent, must "discuss or explain whether [the prior art designs] were substantially similar in appearance in the eyes of an ordinary observer to the claimed design or appropriated the points of novelty of the patented design."  Bernhardt, 386 F.3d at 1378.



**FIG. 1 OF THE '127 PATENT**          **FIG. 1 OF THE DE WERTH PATENT**

Figure 1 of the De Werth patent does not disclose each and every feature of the '127 patent. The De Werth patent does not disclose a midsole portion having stepped ridges that are rounded at *both the front and rear* corners of the midsole portion, as claimed in the '127 patent. The front corner of the heel of the De Werth patent is not rounded. Statement of Facts, ¶ 20. Figure 1 of the De Werth patent does not include hash lines on the front corner of the heel, as it does at the rear, to show roundness. Statement of Facts, ¶ 20. Further, Figure 2 of the De Werth patent, which is described as "a bottom elevational view of the heel, per se, shown in Fig. 1" and which is reproduced below, illustrates that the heel of the De Werth patent does not have a rounded front corner, but rather includes a sharp edge at the front corner of the heel shown in Figure 1. Statement of Facts, ¶ 21. It is apparent from Figs. 1 and 2 of the De Werth patent that, unlike the claimed invention, the De Werth patent does not disclose a midsole portion having stepped ridges that are rounded at *both* the front and rear corners.



**FIG. 2 OF THE DE WERTH PATENT**

Further, the stepped ridges of the heel of the De Werth patent do not incline at the rear of the heel, such that the top of each stepped ridge is higher at the rear of the heel than in the middle of the heel. Statement of Facts, ¶ 22. Rather, as is apparent from Fig. 1 of the De Werth patent, the top of each stepped ridge is at the same height in the middle of the heel as at the rear of the heel. Statement of Facts, ¶ 22.

In addition, when the heel of the De Werth patent is compared in about the same proportion to the design claimed in the '127 patent, the visual aspect ratio (apparent height to length) of the stepped ridges of the De Werth patent is not substantially similar to the visual aspect ratio of the stepped ridges of the '127 patent. Statement of Facts, ¶ 23. Each ridge of the '127 patent appears longer and thinner than that of the De Werth patent. Statement of Facts, ¶ 23.

Since at least these features are not present in the De Werth patent, the present invention is not anticipated. When shown side-by-side as discussed above, the shoe of the De Werth patent is not substantially similar in appearance in the eyes of an ordinary observer to the claimed

design.  The differences pointed to above illustrate points of novelty that render the '127 patent valid over the De Werth patent.

### D. THE DE WERTH PATENT IS CUMULATIVE TO THE ART THAT WAS BEFORE THE EXAMINER WHEN THE '127 PATENT WAS GRANTED

At best, the De Werth patent cited by Wal-Mart is cumulative of the art that was before the Examiner when the '127 patent was found to be patentable.  In granting the patent application of the present invention, the Examiner had before him at least two references that showed a two-stepped ridged portion of a midsole on the side of a shoe, where the stepped ridges are of unequal perimeter size, specifically, U.S. Patent No. 1,081,442 to Geiger and the Ferragamo layered heel from page 18 of "Shoes, a Lexicon of Style" by Valerie Steel, Rizzoli (1999), shown below, the latter having been specifically found and cited by the examiner. Statement of Facts, ¶¶ 25-27 and 31-33.  Wal-Mart's claim construction, focusing solely on a two-stepped ridged portion of a midsole on the side of a shoe, where the stepped ridges are of unequal perimeter size, cannot be a proper construction in view of these references. Determination of the points of novelty requires a determination of the *differences* between the patented design and the prior art.  <u>Bernhardt</u>, 386 F.3d at 1384.




**FERRAGAMO LAYERED HEEL**



**U.S. PAT. NO. 1,081,442**

Like the De Werth patent, both references shown above disclose a sharp edge at the front of the midsole portion and stepped ridges which are at the same height at the rear of the midsole as at the middle.  Statement of Facts, ¶¶ 28, 29, 34 and 35.  Consequently, neither reference has a visual aspect ratio (height to width) substantially similar to the '127 patent.  Statement of Facts, ¶¶ 30 and 36.  None of the cited references, including the references shown above, disclose a stair-stepped ridge portion of a midsole, (1) where the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) where each stepped ridge is slightly higher at the rear of the midsole portion than in the middle, and (3) where each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio.

### E.  REEBOK IS ENTITLED TO SUMMARY JUDGMENT OF VALIDITY

Under the proper claim construction, for the reasons discussed above, no reasonable jury could find that the '127 patent is anticipated by the De Werth patent.  Wal-Mart has not met its burden by providing sufficient evidence of invalidity.  Thus, Reebok is entitled to summary judgment of validity of the '127 patent.  See Canon Computer Sys. v. Nu-Kote Int'l., 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue.").

### IV.  THE '127 PATENT IS INFRINGED BY WAL-MART'S OXIDE SHOES

Patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention, within the United States … during the term of the patent therefore." 35 U.S.C. § 271.  Design patent infringement is a question of fact, to be proven by a preponderance of the evidence.  Braun, Inc. v. Dynamics Corp. of America, 975 F.2d 815, 819 (Fed. Cir. 1992).  "Determining whether a design patent is infringed requires (1) construction of the patent claim, and (2) comparison of the construed claim to the accused product."  Contessa, 282 F.3d at 1376; See Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286  (Fed.

Cir. 2002) ("As with utility patents, determining whether a design patent is infringed is a two-step process.").

Further, "[c]omparison to the accused product includes two distinct tests, both of which must be satisfied in order to find infringement: (a) the "ordinary observer" test, and (2) the "point of novelty" test." Contessa, 282 F.3d at 1377; See Gargoyles Inc. v. Aearo Corp., 49 USPQ2d 1556, 1565, 1998 U.S. Dist. LEXIS 22294, *32 (D. Mass 1998) ("An accused device infringes only if it 1) is substantially similar to the patented design overall and 2) appropriates the novel ornamental features of that design."). The ordinary observer and point of novelty tests are factual inquiries undertaken after the claim has been construed by the Court. Bernhardt, 386 F.3d at 1383.

## A. IN THE EYE OF AN ORDINARY OBSERVER THE DESIGNS OF THE '127 PATENT AND THE OXIDE SHOES ARE SUBSTANTIALLY THE SAME

The "ordinary observer" test for infringement of a design patent has been applied to design patent cases for more than one hundred and thirty years:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1872). A product is "substantially the same" as a patented design if it is the same in general appearance and has the same effect on the eye. Id. at 527.

Reproduced below are "diagrams" from the Gorham case. The handle on the top depicts the flatware handle design patented by Gorham; the remaining two handles depict the designs by White which were both found to infringe the Gorham patent.



The <u>Gorham</u> test is still good law, and it has been repeatedly applied by the courts. In fact, the Federal Circuit has, on more than one occasion, applied the <u>Gorham</u> test in affirming findings of infringement of patents protecting the designs of shoes. <u>See e.g.</u>, <u>L.A. Gear v. Thom McAnn Shoe Co.</u>, 988 F.2d 1117 (Fed. Cir. 1993); and <u>Avia Group Int'l Inc. v. L.A. Gear</u>, 853 F.2d 1557 (Fed. Cir. 1988).

To determine whether two designs are substantially the same, the accused device must be compared with the patented design. <u>Unette Corp. v. Unit Pack Co.</u>, 785 F.2d 1026, 1028 (Fed. Cir. 1986). In making this comparison, the patented design must be viewed in its entirety. <u>L.A. Gear</u>, 988 F.2d at 1125.

A simple visual comparison of the '127 patent with Wal-Mart's shoe readily reveals that the midsole of the Oxide shoes has substantially the same overall appearance as Reebok's patented design. Reproduced below are the relevant portions of Figures 1 and 2 of the '127 patent and side and rear photographs of the relevant portions of the Oxide shoes, for the court's convenience. Statement of Facts, ¶¶ 38 and 39.





**FIG. 1 OF THE '127 PATENT**    **SIDE VIEW OF OXIDE SHOE**





**FIG. 2 OF THE '127 PATENT**    **REAR VIEW OF OXIDE SHOE[5]**

Substantial similarity is apparent from the copying by Wal-Mart of nearly every feature of Reebok's patented design.  As shown above, the midsole of the Oxide shoes includes a stair-stepped ridged portion, where one ridge protrudes further than the other ridge.  Statement of

---

[5]  With reference to the rear view of the Oxide shoe, the Court can infer that the cross-sectional configuration of the Oxide shoe is substantially similar to Reebok's patented design.

Facts, ¶ 40.  As shown in the side view of the Oxide shoe, the stepped ridges are rounded at both the front and rear corners of the midsole portion.  Statement of Facts, ¶ 41.  Also, the stepped ridges incline slightly at the rear corner of the midsole portion, such that the top of each stepped ridge is slightly higher at the rear of the midsole portion than in the middle.  Statement of Facts, ¶ 42.  Like Reebok's claimed design, each stepped ridge of the Oxide shoes has a height which in relation to its overall length forms a long, slender visual aspect ratio. Statement of Facts, ¶ 43.  The midsole of the Oxide shoes includes so many features which are identical to features of the design of the '127 patent that the two designs create the same overall impression on the eye of an ordinary observer.  Statement of Facts, ¶ 44.

Although Wal-Mart may argue that the height and/or profile shape of the stepped ridges of the Oxide shoes include slight differences from that shown in figures of the '127 patent, to the extent such differences are present, they do not alter the substantial similarity between the overall appearance of the Oxide shoes and the design of the '127 patent.  The case law is clear, minor differences do not avoid infringement or preclude the grant of summary judgment.  Litton, 728 F.2d at 1444; see also Jack Schwartz Shoes v. Skechers U.S.A., 233 F. Supp. 2d 512, (S.D.N.Y. 2002); Rockport Co., 65 F. Supp. 2d at 193.  "The patented and accused designs *do not have to be identical* in order for design patent infringement to be found." OddzOn, 122 F.3d at 1405 (emphasis added).  For example, the exclusion of several features and the modification of others on an accused shoe sole did not avoid grant of summary judgment of infringement (and affirmation by the Federal Circuit) when it was found that an accused shoe sole had the same overall appearance as the patented shoe sole in the Avia case.   See Avia, 853 F.2d at 1565. Below are exemplars from the Avia case.

14

 

**Fig. 1 of Avia's**        **L.A. Gear's**
**U.S. Pat. No. Des. 284,420**        **Infringing Model**

As in <u>Gorham</u> and <u>Avia</u>, it is unquestionable that the design of the Oxide shoes and the design protected by the '127 patent are substantially the same in overall appearance and have substantially the same effect upon the eye of an ordinary observer. Thus, the <u>Gorham</u> test is satisfied. No reasonable jury could find that the Oxide shoe is not substantially similar in appearance in the eyes of an ordinary observer to the claimed design of the '127 patent.

### B. THE OXIDE SHOES APPROPRIATE THE POINTS OF NOVELTY THAT DISTINGUISH THE '127 PATENT FROM THE PRIOR ART

The "points of novelty" test requires that "the fact-finder must determine whether the accused design appropriates the points of novelty that distinguish the patented design from the prior art." <u>Catalina</u>, 295 F.3d at 1286-1287. The "points of novelty" test acts as a safeguard, to ensure that an infringing product is closer in appearance to the patented design than it is to prior product designs. However, "[w]hile the accused design must appropriate the novelty that distinguished the patented design from the prior art, the ultimate question requires determining

whether 'the effect of the whole design [is] substantially the same'." <u>L.A. Gear</u>, 988 F.2d 1117, 1125 (citations omitted).

As discussed above, to the extent that Reebok can articulate some of the points of novelty of what is shown in the drawings of the '127 patent, they are at least the elements identified above which are not found in prior footwear designs; that is, the design includes a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge, and where (1) the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) each stepped ridge is slightly higher at the rear of the midsole portion than in the middle, and (3) each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio.

These points of novelty of the '127 patent are found in the Oxide shoes[6]. The Oxide shoes include a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge. Statement of Facts, ¶ 40. The stepped ridges of the Oxide shoes are rounded at both the front and rear corners of the midsole portion. Statement of Facts, ¶ 41. The stepped ridges of the Oxide shoes incline slightly at the rear corner of the midsole portion, such that the top of each stepped ridge is slightly higher at the rear of the midsole portion than in the middle. Statement of Facts, ¶ 42. Each stepped ridge of the Oxide shoes has a height which in relation to its overall length forms a long, slender visual aspect ratio. Statement of Facts, ¶ 43. No reasonable jury could conclude that the Oxide shoe does not include the points of novelty that distinguish the '127 patent from prior footwear designs.

## C.  REEBOK IS ENTITLED TO SUMMARY JUDGMENT OF INFRINGEMENT

The designs in the present case are not complicated. Comparison under the <u>Gorham</u> test and the "points of novelty" test is sufficient to determine infringement in this case. In view of

---

[6]  Obviously, every novel element of a design patent need not be misappropriated to find infringement, otherwise the more novel an invention, the harder it would be to infringe.

the overwhelming, overall similarity in ornamental design as well as the appropriation of the points of novelty, there is no genuine issue of material fact that would allow a reasonable jury to return a verdict in favor of Wal-Mart on the issue of infringement. Thus, the Oxide shoes infringe the '127 patent as a matter of law. Reebok is entitled to summary judgment of infringement.

## V.    CONCLUSION

As a matter of law, the '127 patent is valid and infringed by the offer for sale and sale of the Oxide shoes by Wal-Mart throughout the United States. The '127 patent is presumed valid. Wal-Mart has failed to provide clear and convincing evidence of invalidity. Wal-Mart's Motion for Summary Judgment of Invalidity must be denied and Reebok's Cross-Motion for Summary Judgment of validity granted. Further, the undisputed evidence establishes that the Oxide shoes have the same overall ornamental appearance as the design protected by the '127 patent and the Oxide shoes have misappropriated the novel features of the '127 patent. Therefore, the Oxide shoes infringe Reebok's patent as a matter of law and Reebok's Motion for Summary Judgment of Infringement should be granted.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.
By its attorneys,

    /s/ Victoria L. Walton

| | |
|---|---|
| Shepard Davidson (BBO#557082) | David K.S. Cornwell (*pro hac vice*) |
| sdavidson@burnslev.com | Donald R. Banowit (*pro hac vice*) |
| Victoria L. Walton (BBO#650999) | Rae Lynn P. Guest (*pro hac vice*) |
| vwalton@burnslev.com | |
| BURNS & LEVINSON LLP | STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C. |
| 125 Summer Street | 1100 New York Avenue, N.W. |
| Boston, MA 02110-1624 | Washington, D.C. 20005 |
| Telephone: 617-345-3000 | Telephone: 202-371-2600 |
| Facsimile: 617-345-3299 | Facsimile: 202-371-2540 |

Dated: May 2, 2005
382199_4.DOC