UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

REEBOK INTERNATIONAL LTD.,

                Plaintiff,

v.

WAL-MART STORES, INC.,

                Defendant.

Civil Action No. 04-12668 (RGS)(RBC)
Honorable Richard G. Stearns

REEBOK'S RESPONSE TO WAL-MART'S RULE 56.1 STATEMENT OF
MATERIAL FACTS

Pursuant to Local Rule 56.1, Plaintiff, Reebok International Ltd. ("Reebok"), provides the following response to Defendant, Wal-Mart Stores, Inc.'s ("Wal-Mart"), Local Rule 56.1 Statement of Material Facts submitted with Wal-Mart's Motion for Summary Judgment of Patent Invalidity (hereinafter "Wal-Mart's Statement").

1. Reebok admits ¶ 1 of Wal-Mart's Statement.

2. Reebok admits ¶ 2 of Wal-Mart's Statement.

3. Reebok admits ¶ 3 of Wal-Mart's Statement.

4. Reebok admits ¶ 4 of Wal-Mart's Statement.

5. Reebok admits ¶ 5 of Wal-Mart's Statement.

6. The '127 patent is directed to "[t]he ornamental design for a *portion* of a midsole" (emphasis added) and as such does not claim an entire midsole. The broken lines shown in the figures show "visible environmental structure" and not "hidden planes and surfaces that cannot be seen through opaque materials." 37 C.F.R. § 1.152. Broken lines have been interpreted as "for illustrative purposes only and form no part of the claimed design." Door-Master Corp. v.

1

Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001). Nonetheless, as part of the Figures, they do provide some context to the claimed invention. Manual of Patent Examining Procedure § 1503.2 ("Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines.") To the extent the reference in ¶ 6 of Wal-Mart's Statement to "one side only of the sole" refers to the broken lines shown in the figures of the '127 patent, which are not part of the claimed design, Reebok admits ¶ 6 of Wal-Mart's Statement.

  7. Reebok admits ¶ 7 of Wal-Mart's Statement.

  8. The '127 patent is directed to "[t]he ornamental design for a *portion* of a midsole" (emphasis added) and as such does not claim an entire midsole. The broken lines shown in the figures show "visible environmental structure" and not "hidden planes and surfaces that cannot be seen through opaque materials." 37 C.F.R. § 1.152. Broken lines have been interpreted as "for illustrative purposes only and form no part of the claimed design." Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001). Nonetheless, as part of the Figures, they do provide some context to the claimed invention. Manual of Patent Examining Procedure § 1503.2 ("Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines.") To the extent the reference in ¶ 8 of Wal-Mart's Statement to "the side of the shoe midsole not shown" and "the side shown" refers to the broken lines shown in the figures of the '127 patent, which are not part of the claimed design, Reebok admits ¶ 8 of Wal-Mart's Statement.

  9. The '127 patent is directed to "[t]he ornamental design for a *portion* of a midsole" (emphasis added) and as such does not claim an entire midsole. The broken lines shown in the

figures show "visible environmental structure" and not "hidden planes and surfaces that cannot be seen through opaque materials." 37 C.F.R. § 1.152. Broken lines have been interpreted as "for illustrative purposes only and form no part of the claimed design." Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001). Nonetheless, as part of the Figures, they do provide some context to the claimed invention. Manual of Patent Examining Procedure § 1503.2 ("Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines.") To the extent the reference in ¶ 8 of Wal-Mart's Statement to "other portions of the shoe midsole" refers to the broken lines shown in the figures of the '127 patent, which are not part of the claimed design, Reebok admits ¶ 9 of Wal-Mart's Statement.

10. Reebok disputes ¶ 10 of Wal-Mart's Statement. The points of novelty of the '127 patent are not limited to "the two-stepped ridges portion of the midsole on the side of the shoe, where the steps are not of equal perimeter size, as shown in Figure 1 of the '127 patent." Such a construction of the points of novelty of the '127 patent fails to appreciate the *differences* between the patented design and the prior art. While words are not a perfect mechanism for describing visual elements, to the extent that Reebok can articulate some of the points of novelty of what is shown in the drawings of the '127 patent, they are at least the elements which are not found in prior footwear designs; that is, the design includes a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge, and where (1) the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) each stepped ridge is slightly higher at the rear of the midsole portion than in the middle, and (3) each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio.

3

11.     By "unequal perimeter size," Reebok understands Wal-Mart to be referring to the fact that one ridge protrudes further than the other ridge in the claimed design. Given that the claimed design is for a "portion of a midsole" and, therefore, does not necessarily encircle the entire midsole, the use of the term "perimeter" is, at best, confusing. With this clarification, Reebok admits ¶ 11 of Wal-Mart's Statement.

12.     Reebok admits ¶ 12 of Wal-Mart's Statement.

13.     Reebok admits ¶ 13 of Wal-Mart's Statement.

14.     Reebok admits ¶ 14 of Wal-Mart's Statement.

15.     Reebok admits ¶ 15 of Wal-Mart's Statement.

16.     Reebok admits ¶ 16 of Wal-Mart's Statement.

17.     Reebok admits ¶ 17 of Wal-Mart's Statement.

18.     Reebok disputes ¶ 18 of Wal-Mart's Statement. The points of novelty of the '127 patent are not limited to "the two-stepped ridges portion of the midsole on the side of the shoe, where the steps are not of equal perimeter size, as shown in Figure 1 of the '127 patent." Such a construction of the points of novelty of the '127 patent fails to appreciate the *differences* between the patented design and the prior art. While words are not a perfect mechanism for describing visual elements, to the extent that Reebok can articulate some of the points of novelty of what is shown in the drawings of the '127 patent, they are at least the elements which are not found in prior footwear designs; that is, the design includes a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge, and where (1) the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) each stepped ridge is slightly higher at the rear of the midsole portion than in the middle, and (3) each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio. When

4

shown side-by-side, the shoe of the De Werth patent is not substantially similar in appearance in the eyes of an ordinary observer to the claimed design.

19.     Reebok disputes ¶ 19 of Wal-Mart's Statement. Figure 1 of the De Werth patent does not disclose and incorporate the points of novelty of the '127 patent. While words are not a perfect mechanism for describing visual elements, to the extent that Reebok can articulate some of the points of novelty of what is shown in the drawings of the '127 patent, they are at least the elements which are not found in prior footwear designs; that is, the design includes a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge, and where (1) the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) each stepped ridge is slightly higher at the rear of the midsole portion than in the middle, and (3) each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio. It is apparent from Figs. 1 and 2 of the De Werth patent that, unlike the claimed invention, the De Werth patent does not disclose a midsole portion having stepped ridges that are rounded at *both* the front and rear corners. Further, the stepped ridges of the heel of the De Werth patent do not incline at the rear of the heel, such that the top of each stepped ridge is higher at the rear of the heel than in the middle of the heel. Rather, as is apparent from Fig. 1 of the De Werth patent, the top of each stepped ridge is at the same height in the middle of the heel as at the rear of the heel. In addition, when the heel of the De Werth patent is compared in about the same proportion to the design claimed in the '127 patent, the visual aspect ratio (apparent height to length) of the stepped ridges of the De Werth patent is not substantially similar to the visual aspect ratio of the stepped ridges of the '127 patent. Each ridge of the '127 patent appears longer and thinner than that of the De Werth patent.

20.     Reebok disputes ¶ 20 of Wal-Mart's Statement. The heel shown in Figure 1 of the De Werth patent is not identical in all material respects to the claimed design of the '127 patent. It is apparent from Figs. 1 and 2 of the De Werth patent that, unlike the claimed invention, the De Werth patent does not disclose a midsole portion having stepped ridges that are rounded at *both* the front and rear corners. Further, the stepped ridges of the heel of the De Werth patent do not incline at the rear of the heel, such that the top of each stepped ridge is higher at the rear of the heel than in the middle of the heel. Rather, as is apparent from Fig. 1 of the De Werth patent, the top of each stepped ridge is at the same height in the middle of the heel as at the rear of the heel. In addition, when the heel of the De Werth patent is compared in about the same proportion to the design claimed in the '127 patent, the visual aspect ratio (apparent height to length) of the stepped ridges of the De Werth patent is not substantially similar to the visual aspect ratio of the stepped ridges of the '127 patent. Each ridge of the '127 patent appears longer and thinner than that of the De Werth patent.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.

By its attorneys,

   /s/ Victoria L. Walton
Shepard Davidson (BBO#557082)          David K.S. Cornwell (*pro hac vice*)
sdavidson@burnslev.com                 Donald R. Banowit (*pro hac vice*)
Victoria L. Walton (BBO#650999)        Rae Lynn P. Guest (*pro hac vice*)
vwalton@burnslev.com
BURNS & LEVINSON LLP                   STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
125 Summer Street                      1100 New York Avenue, N.W.
Boston, MA 02110-1624                  Washington, D.C. 20005
Telephone: 617-345-3000                Telephone: 202-371-2600
Facsimile: 617-345-3299                Facsimile: 202-371-2540

Dated: May 2, 2005
393637_1.DOC