Irving H. Picard (BBO # 398820)
Peter T. Cobrin (pro hac vice)
pcobrin@gibbonslaw.com
GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
(212) 649-4700 ph
(212) 333-5980 fax

*ATTORNEYS FOR DEFENDANT,*
*WAL-MART STORES, INC.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL, LTD.,<br><br>       Plaintiff,<br><br> v.<br><br>WAL-MART STORES, INC.,<br><br>       Defendant. | Civil Action No. 04-12668 (RGS)(RBC)<br>Hon. Richard G. Stearns, U.S.D.J. |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS MOTION AND MOTION FOR SUMMARY JUDGMENT OF PATENT VALIDITY AND INFRINGEMENT, RESPECTIVELY, AND IN SUPPORT OF DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND NON-INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.     Preliminary statement ................................................................................... 1

II.    Facts .............................................................................................................. 4

    A.     The '127 Patent ................................................................................. 4

    B.     The '038 Patent ................................................................................. 7

    C.     The Accused Wal-Mart Product ...................................................... 8

    D.     The Chinese Publication .................................................................. 9

III.   ARGUMENT ................................................................................................ 9

    A.     Point I: Under Reebok's Claim Construction, the '127 Patent is Invalid for Failure to Satisfy 35 U.S.C. § 112, par. 1. ............................................ 9

        1.     Law of Patent Disclosure ...................................................... 9

        2.     The Third Element is Not Adequately Disclosed .................. 11

    B.     Point II:  Based On Reebok's Admissions, There Is No Infringement ............... 12

        1.     The Accused Wal-Mart Product Is Not Curved or  Rounded in the Center of the Midsole ................................................................ 12

        2.     The Rear Portion of the Midsole of the Wal-Mart Product is Planar, So One Ridge Does Not Protrude Further than the Other. .......... 13

        3.     If the '127 Patent is Construed to be Valid, It Cannot Include the Third Element ........................................................................ 13

    C.     Point III - Reebok's Cross Motion for Summary Judgment of Patent Validity and Motion for Summary Judgment of Infringement Must Be Denied ................ 14

        1.     The Cross-Motion for a Finding of Patent Validity Must Fail Because It is Premature Due to a Lack of Discovery (F.R.C.P. 56(f)) and Because the '127 Patent is Invalid ............................ 14

        2.     There is No Genuine Issue of Material Fact that Wal-Mart's Accused Product Does Not Infringe the '127 Patent. .............. 15

    D.     Point IV - The '127 Patent is Anticipated by the '038 Patent. ............. 17

IV.    Point V - The Chinese Publication Anticipates The '127 Patent ................... 18

V.     CONCLUSION .............................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Christianson v. Colt. Indus. Operating Corp.,*
609 F.Supp. 1174, (C.D. Ill. 1985) ................................................. 15

*Door-Master Corp. v. Yorktowne, Inc.,*
256 F.3d 1308 (Fed. Cir. 2001)................................................. 10

*Elmer v. ICC Fabricating, Inc.,*
67 F.3d 1571 (Fed. Cir. 1995)................................................. 2, 6

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.,*
162 F.3d 1113 (Fed. Cir. 1998)................................................. 2

*Hupp v. Siroflex of Am., Inc.,*
122 F.3d 1456, 43 USPO2d 1887 (Fed. Civ. 1997)................................................. 18

*Keystone Retaining Wall Systems, Inc. v. Westrock, Inc.,*
997 F.2d 1444, 27 USPQ 2d 1297 (Fed. Cir. 1993) ................................................. 10

*Liberty Combustion Corp. v. Jackson,*
253 F.Supp. 848 (E.D. Mich. 1963)................................................. 11

*Philco Corp. v. Admiral Corp.,*
199 F.Supp. 797, 131 USPQ 413 (D.Del. 1961) ................................................. 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
247 F.3d 1316 (Fed. Cir. 2001)................................................. 15

## Statutes

35 U.S.C. § 102(a) ................................................. 4, 18, 19

35 U.S.C. §112................................................. 4

## Other Authorities

*Application of Fee, Patent Appeal No. 7984,*
55 C.C.P.A. 1297, 1299, 397 F.2d 329, 330 (CCPA 1968)................................................. 10

## Rules

35 C.F.R. § 1.152................................................. 16

#101187 v1
105210-52957

37 C.F.R. § 1.152 ................................................................................................ 10, 11

Fed. R. Civ. P. 56(f) ................................................................................................ 14

#101187 v1
105210-52957

## I.    PRELIMINARY STATEMENT

Defendant Wal-Mart Stores, Inc. ("Wal-Mart" or "defendant") respectfully submits this memorandum in opposition to the cross-motion and motion by plaintiff Reebok International, Ltd. ("Reebok" or "plaintiff") for summary judgment of patent validity and infringement, respectively, and in support of Wal-Mart's cross motions for summary judgment of patent invalidity and non-infringement.[1]

Wal-Mart moved for summary judgment of invalidity of U.S. Patent No. D495,127 (the "'127 patent") based on U.S. Patent No. 2,669,038 (the "'038 patent"). In opposition, Reebok seeks a claim construction of the '127 patent which Reebok based on the selected aspects of the allegedly infringing Wal-Mart product. However, Reebok's proffered claim construction, concocted of four alleged novel aspects of the '127 patent and based upon Wal-Mart's accused product, instead demonstrates that the '127 patent is invalid and not infringed.

Reebok's argument rests on its proffered claim construction that the '127 patent has four features (the "four elements"). The four elements (which are disputed by Wal-Mart but used for purposes of Wal-Mart's cross motions), are:

1.    a stair-stepped ridged portion of a midsole where one ridge protrudes further than the other ridge (the "first element")[2];

2.    the stepped ridges are rounded at both the front and rear corners of the midsole portion (the "second element");

3.    each stepped ridge is slightly higher at the rear of the midsole portion than in the middle (the "third element"); and

---

[1]    These cross motions are in addition to Wal-Mart's original motion for summary judgment of invalidity.
[2]    Wal-Mart assumes that "protrudes further" refers to one ridge extending further in an outwardly direction than the other ridge.

1

4.    each ridge has a height which in relation to its overall length forms a long slender visual aspect ratio (the "fourth element").

(See Reebok Memorandum at 4-5; Reebok Rule 56.1 Statement at ¶¶12-17).  However, in order for the accused Wal-Mart product to infringe the '127 patent, it must include **each and every one** of these elements (also known as "points of novelty").  See, e.g., *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (To infringe a design patent, "the accused design must appropriate the novel ornamental features of the patented design that distinguish it from the prior art."), cit. omit.; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1117 (Fed. Cir. 1998) (Design patent for manufacturer's tire retread design was not infringed by competitor's tire design, where accused design did not incorporate all of patented design's "points of novelty" that were necessary in sustaining validity of patent.)  Because, as will be shown, Wal-Mart's product is missing at least one of Reebok's required elements/points of novelty, Wal-Mart's product cannot infringe the '127 patent, as a matter of law.

Reebok's sole support for the proffered construction is the figures of the '127 patent. (Reebok Memorandum at 3-5; Reebok Rule 56.1 Statement at ¶¶12-17).  But, the '127 patent only has two figures -- a cross section view which simply shows two ridges on a side portion of a midsole (figure 2), with one ridge protruding further than the other; and an angled side view (figure 1), which includes some depth perception, i.e., one can see the opening in the shoe/sneaker for a foot.  (See '127 patent, Cornwell Dec. Ex. A, Fig. 1; Declaration of Thomas Sindle ("Sindle Dec.") at ¶ 11).  From this view, it is not possible to determine that the ridges are higher at the rear of the midsole portion than the middle.  (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. at ¶ 13).  Rather, as seen in figure 1, the ridges are exactly the same height throughout the length of the midsole.  (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. at ¶ 13).    Thus, the third claim element proffered by Reebok simply does not exist.

Next, Reebok urges this Court to accept that hash marks (vertical parallel lines spaced closely together) on the ridges in figure 1 indicate curvature at the front and rear of the midsole.

#101187 v1
105210-52957

Accepting this as correct, then the vertical hash marks in the center of the midsole also indicate curvature. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. at ¶ 12).   Those hash marks are more prominent than any other hash marks in figure 1 and thus curvature of the ridges in the center of the midsole (the "missing element") is also an element of the proper claim construction of the '127 patent. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. at ¶ 12).   The bottom edges of the ridges also bow in the center, indicating the curvature is concave in the center of the midsole. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. at ¶ 12).   However, the accused Wal-Mart product's ridges are not curved in the center of the midsole. (See Cobrin Dec. Ex. E). Therefore, the accused Wal-Mart product lacks at least one essential element of the '127 patent, and cannot infringe same.

Finally, the allegedly infringing product is not accurately depicted by Reebok at page 13 of its supporting memorandum, because Reebok's depiction fails to properly show the rear of the midsole of Wal-Mart's product.  Thus, Wal-Mart provides its product to the court as Exhibit E, which shows that, at the rear, one ridge does not protrude further than the other ridge. (Compare Reebok Mem. at 13 with Cobrin Dec. Ex. E).   Therefore, the first element of Reebok's proffered construction also is missing from the allegedly infringing product, thus precluding any finding of patent infringement.  (Compare Cobrin Dec. Ex. E with Reebok Mem. at 4, Reebok Rule 56.1 Statement at ¶13).  With respect to Reebok's proffered third element, the ridges of Wal-Mart's accused product are slightly higher at the rear, at the center and at the front of the midsole portion.   Thus, the third element is missing not only from the '127 patent but from the Wal-Mart product,  entitling Wal-Mart to summary judgment of patent non-infringement.

With respect to the issue of patent invalidity, the '127 patent simply does not have the proffered third element.  (Compare Cornwell Dec. Ex. A Fig. 1 with Reebok Mem. at 4-5, Reebok Rule 56.1 Statement at ¶¶12-17).  However, U.S. Patent No. 2,669,038 ("the '038 patent"), cited in Wal-Mart's original summary judgment motion, discloses each of the other elements.  As to whether there is rounding of the front corner of the midsole in the '127 patent, figure 1 shows that any rounding, the presence of which is unclear, is insignificant as evidenced

#101187 v1
105210-52957

by the dotted lines which show that any rounding is immaterial to the claimed design. (Cromwell Dec. Ex. A Fig. 1, Reebok Mem. at 4 n2). As such, the rounding, if it exists, does not constitute a material difference from the disclosure of the '038 patent.

Further, should Reebok continue to urge that all four of its proffered elements are part of the '127 patent's claim construction, it is clear then that the angled side view of figure 1 fails to sufficiently disclose at least the third element, because there is simply no adequate disclosure of an increase in height of each ridge at the rear of the midsole portion. (Reebok Mem. at 5, Reebok Rule 56.1 Statement at ¶16; Cromwell Dec. Ex. A Fig. 1; Sindle Dec. ¶13). Thus, the '127 patent is invalid under 35 U.S.C. §112, ¶1, for an inadequate disclosure.

Moreover, each of the four above elements are fully disclosed in a January 28, 2003 publication entitled "China Leather News" (the "Chinese publication") which predates and, thus, anticipates the '127 patent.[3] Thus, in light of the Chinese publication, the '127 patent is invalid as anticipated, under 35 U.S.C. § 102(a).

---

[3]     The Chinese publication is Exhibit D to the Declaration of Xu Yiping (the "Yiping Declaration") submitted herewith.

#101187 v1
105210-52957

## II.     FACTS

### A.     The '127 Patent

The '127 patent has only two figures (reproduced below):



(Cornwell Dec. Ex. A).

\*       Annotations are not part of figure and are added to aid the court.

#101187 v1
105210-52957

Figure 2 of the '127 patent is a cross section view which only demonstrates that, throughout the midsole portion of the patent design, one ridge must protrude further than the other ridge. (Cornwell Dec. Ex. A, Fig. 2). This is the first element proffered by Reebok. (See Reebok. Mem. at 4). As this is an essential element/point of novelty, a product which does not have one ridge protruding further (or extending further in an outwardly direction) than the other throughout the midsole portion, does not infringe. *Elmer*, 67 F.3d at 1577.

Figure 1 of the '127 patent provides an angled side view of the midsole. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 11). The dotted lines show the rest of the sneaker, and are only provided for environmental purposes. (Cornwell Dec. Ex. A, Fig. 1; Reebok Mem at 4 n2; Sindle Dec. ¶ 11). But the dotted lines are indicative of the perspective of the view. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 11). A true, direct side view would not have any depth perception to the sneaker. And, as plainly shown in figure 1, one does see the top of the sneaker and even the opening for the foot. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 11). In such view, one can see two ridges which appear to curve at the back of the sole and, perhaps, at the front of the sole. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 12). There is no height indication whatsoever. (*Id.*; Sindle Dec. ¶ 13). The dotted lines are also added to show where the sole would be and, although not a requirement or limitation, the dotted lines indicate that the sole would be sloped upward in the rear. (Cornwell Dec. Ex. A, Fig. 1). This provides contrast and further indication that there is no change in height of the ridges at the front or back of the midsole.[4]

Figure 1 contains vertical hash marks at the front of the midsole, the rear of the midsole, and in the middle portion of the midsole. (Cornwell Dec. Ex. A, Fig. 1). According to Reebok, the hash marks show curvature or rounding. (Reebok Mem. at 5). Accepting that logic for purposes of summary judgment, the vertical hash marks depicted in figure 1 would then show that the ridges are very slightly rounded in the front of the midsole, are curved or rounded at the rear of the midsole and are curved or rounded in the center of the sole. (Cornwell Dec. Ex. A,

---

[4]    See Sindle Dec., ¶¶ 11-13.

#101187 v1
105210-52957

Fig. 1). From the view provided in figure 1, the edges of the ridges are bowed at the center of the midsole indicating an inward, or concave, curvature. Thus, figure 1 depicts not only the second element but also the missing element (i.e., curvature in the center of the midsole).[5]

Figure 1 does not show a change in height of the ridges at the front or back of the midsole. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 13). The angled side view of figure 1 shows curvature of the ridges at the rear, center and, perhaps, at the front of the midsole. There is no height variation throughout the length of the ridges. (*Id.*). Thus, figure 1 does not show the third element proffered by Reebok.

As for Reebok's fourth element, figure 1 of the '127 patent shows that each ridge is much greater in length than in height. (Cornwell Dec. Ex. A, Fig. 1). Thus, this element is depicted.

**B.     The '038 Patent**



As shown in Wal-Mart's original moving papers, to which this Court is referred, and which are incorporated herein by reference, the '038 patent depicts a midsole having stepped ridges, with one ridge protruding further than the other ridge throughout the circumference of the midsole. (First Reebok element). The patent shows that the ridges are rounded in the rear of the midsole. (Second Reebok element). Although the '038 patent does not show rounding in the front portion of the midsole, this is not a material aspect of the '127 patent, as evidenced by the very limited rounding of the front corner of the '127 patent design. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶ 13). As each ridge in the '038 patent is much greater in length than in height,

---

[5]     See Cornwell Dec. Ex. A, Fig. 1; Sindle Dec., ¶¶ 9-12.

#101187 v1
105210-52957

each ridge has a height-to-overall length relation that forms a long slender visual aspect ratio. (Fourth Reebok element). There is no height difference indicated in the ridges of the '038 patent.

### C.    The Accused Wal-Mart Product

Reebok proffers the four elements not because the '127 patent discloses those elements but because Reebok believes those elements are in Wal-Mart's accused product. However, a proper claim construction does not read the features of the accused product into the claims.[6]

Additionally, Reebok submits pictures of Wal-Mart's accused product which are distorted and not accurate. (See Reebok Mem. at 13). First, the product has a stair shaped ridge portion of a midsole where one ridge protrudes further than the other ridge for most, but significantly not for the entire length of the sole. (Cobrin Dec. Ex. E). In the heel portion, the ridges are coplanar and the sole comes up to the back of the shoe such that the ridges both end at the sole. (*Id*.). Reebok's pictures blatantly distort or hide this feature. (Compare Cobrin Dec. Ex. E and Reebok Mem. at 13).

Next, the ridges of the accused Wal-Mart product are rounded at both the front and rear of the midsole portion and are higher at the rear of the midsole and in the middle of the midsole. (Cobrin Dec. Ex. E).

Additionally, Wal-Mart product's ridges are not rounded or curved in any way throughout the length of the sole except at the front and rear corners. (Cobrin Dec. Ex. E, compare Reebok Mem. at 5).

Thus, Wal-Mart's accused product does not have the first element proffered by Reebok. It does not have the missing element (curvature at the center of the midsole). It does not have the third element, because the height of the ridges increases at the rear and in the middle so each

---

[6]    See, e.g., *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (" 'In claim construction the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art.'"), cit. omit., quot. omit.

#101187 v1
105210-52957

ridge is not slightly higher at the rear of the midsole than in the middle of the midsole.  (Cobrin Dec. Ex. E).  As a result, there is no infringement.

### D.    The Chinese Publication

The last page of the Chinese publication, Exhibit D to the Declaration of Xu Yiping (the "Xu Declaration"), at photograph 4, includes a photograph of a sneaker attached to inline skates. The photograph shows a stair-stepped ridged portion of a midsole where one ridge protrudes further than the other ridge.  Thus, the first Reebok element is met.  The stepped ridges are rounded at the rear corner of the midsole portion and are slightly rounded in the front corner thereof.  In fact, the Chinese publication's rounding in the front is very similar to the slight immaterial rounding of front of the midsole in the '127 patent.  Reebok's second element is met. Each stepped ridge is slightly higher at the rear of the midsole portion than in the middle. Therefore, the third element is met.  Finally, each ridge has a height which in relation to its overall length forms a long slender visual aspect ratio.  As such, Reebok's fourth element is met.

## III.    ARGUMENT

### A.    Point I: Under Reebok's Claim Construction, the '127 Patent is Invalid for Failure to Satisfy 35 U.S.C. § 112, par. 1.

#### 1.    Law of Patent Disclosure.

The specification of a patent:

> shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

#101187 v1
105210-52957

35 U.S.C. § 112, par. 1. For a design patent, 37 C.F.R.§ 1.152 requires that a claimed design be

disclosed in such manner as to enable a person skilled in the art to make and use the same.

Specifically:

> The design must be represented by a drawing made
> in conformity with the rules laid down for drawings
> of mechanical inventions and must contain a
> *sufficient number of views* to constitute a complete
> disclosure of the appearance of the article.

37 C.F.R. § 1.152; MPEP 1503.02. The omission of a particular view is equivalent to an

admission of the unimportance of such detail to the appearance of the article. *Application of Fee,*

*Patent Appeal No.* 7984, 55 C.C.P.A. 1297, 1299, 397 F.2d 329, 330 (CCPA 1968).[7]

In *Application of Fee*, the court found that, where neither the thickness nor degree and

distribution of a curvature of a surface is made evident in the drawings and there was not a

sufficient number of views to constituent a complete disclosure of the appearance of the article,

the patent was invalid. *Id.* at 331. Likewise, in *Door-Master Corp. v. Yorktowne, Inc.*, the

Federal Circuit found that a concealed feature is not part of the design patent. 256 F.3d 1308,

1312-1313 (Fed. Cir. 2001).

A patented design is defined by the drawings in the patent. *Keystone Retaining Wall*

*Systems, Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 27 USPQ 2d 1297, 1302 (Fed. Cir. 1993).

A patented design may be embodied in less than an entire article of manufacture, but there must

be some indication that certain features are not part of the claimed design. *Door-Master Corp.*,

256 F.3d at 1313. Thus, features that provide part of the ornamental design are part of the

claimed design.

37 C.F.R. § 1.152 requires that a design patent contain a sufficient disclosure so as to

enable those skilled in the art to make the claimed invention without being forced to resort to

conjecture or undue experimentation, and the disclosure cannot be so vague as to compel

---

[7]    The decisions of the C.C.P.A. are deemed binding precedent on the Federal Circuit. See *South Corp. v. U.S.*, 690 F.2d 1368, 1370 (Fed. Cir. 1982).

#101187 v1
105210-52957

independent experimentation by others to ascertain bounds of claims.  *Philco Corp. v. Admiral Corp.*, 199 F.Supp. 797, 801, 131 USPQ 413 (D.Del. 1961); see also *Liberty Combustion Corp. v. Jackson*, 253 F.Supp. 848, 849 (E.D. Mich. 1963).  Under 37 C.F.R. § 1.152, design patent drawings must contain a sufficient number of views to constitute a complete disclosure of the appearance of the claimed design.  *Door-Master*, at 1313.

### 2.    The Third Element is Not Adequately Disclosed.

Here, Reebok urges that the four elements are part of the proper claim construction of the '127 patent.  However, when reviewing figures 1 and 2 of the '127 patent, the claims are not adequately disclosed to describe each of the proffered elements.  Figure 2 is a cross section which, at most, shows the first element.  That is, one ridge protrudes further than the other throughout the midsole of the patented design.  (Cornwell Dec. Ex. A, Fig. 2; Sindle Dec. ¶10).  From the view of figure 1, which is clearly an angled side view, and which provides some depth perception, the second element is disclosed.  That is, due to the curvature of the ridges in the front and rear, while the thickness of the ridges remains constant, one could observe curvature or roundness at the rear of the midsole and slight immaterial curvature or roundness at the front of the midsole.  (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶¶11-12).

Reebok argues that the vertical hash marks in the drawing of figure 1 indicates curvature.  (Reebok Mem. at 5).  Assuming that to be true, there is curvature at the rear of the midsole, there is slight curvature at the front of the midsole **and there is a concave curvature in the middle of the midsole**.[8]  The curvature in the middle -- the missing element from Reebok's proffered construction -- is an essential feature which Reebok overlooks.  Reebok cannot argue that the missing element is not part of the claimed design.[9]

As to the third proffered element, that the stepped ridges are higher at the rear of the midsole than in the middle, the disclosure in the drawings is insufficient to meet this element.

---

[8]      See Sindle Dec. ¶12.

[9]      *Id.*

11

#101187 v1

105210-52957

Looking at figure 1, particularly from the angle of the view, it is impossible to determine whether the ridges are higher in the rear than in the center.  (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶13).  The curve and vertical hash marks in the front and the rear portions of the midsole indicate the curvature or rounding of the ridges.  (*Id.*; Sindle Dec. ¶12).  The width of the ridges remain the same indicating that there is no change in height.  (*Id.*; Sindle Dec. ¶13).  In contrast, the dotted lines, which provide the environmental background of the sole itself, show a decrease in thickness at the rear, which indicates that the sole has an upward slope.  (*Id.*; Reebok Mem. at 4 n2).  As the thickness of the ridges does not change, from the angled side view provided, a height difference cannot be ascertained.  (*Id.*; Sindle Dec. ¶13).  The critical figure, figure 1, does not adequately show that, at the rear of the midsole, the ridges are both curved and higher than they are at the center of the midsole.  Thus, the patent is invalid under 35 U.S.C. § 112, ¶ 1.

### B.    Point II:  Based On Reebok's Admissions, There Is No Infringement

#### 1.    The Accused Wal-Mart Product Is Not Curved or  Rounded in the Center of the Midsole

Reebok argues that the vertical hash marks in figure 1 of the '127 patent indicate curvature.  (Cornwell Dec. Ex. A, Fig. 1; Reebok Mem. at 5).  Reebok uses the vertical hash marks as part of its argument that the second proffered element is disclosed in the '127 patent.  (*Id.*).  What Reebok ignores, however, is that the center portions of the ridges, as depicted in figure 1, also have hash marks, thus indicating curvature **in the center portion of the midsole, as well**.  (Cornwell Dec. Ex. 1, Fig. 1; Sindle Dec. ¶12).  As those hash marks are denser and wider than, or at least as wide as, any other hash marks in the figure, the center portion curvature is significant, and represents a necessary missing element/point of novelty in the claim construction of the '127 patent.

However, the missing element is not a feature of the accused Wal-Mart product.  That is, the ridges in the Wal-Mart product are not curved inwardly in the center of the midsole, but are

#101187 v1
105210-52957

curved only in the rear and in the front of the midsole. (Cobrin Dec. Ex. E). Therefore, the Wal-Mart product does not infringe the '127 patent. *Goodyear*, 162 F.3d at 1117 (all points of novelty must be appropriated for infringement).

### 2.     The Rear Portion of the Midsole of the Wal-Mart Product is Planar, So One Ridge Does Not Protrude Further than the Other.

The pictures of Wal-Mart's product in Reebok's memorandum hide a distinct and critical feature of the product, namely, that the sole of the Wal-Mart product not only slopes up at the rear,  but it slopes up at the rear to cover the ridges in the midsole.  In that way, in the rear of the Wal-Mart shoe, the ridges end at the sole and neither ridge protrudes further than the other at the rear of the sole. (Cobrin Dec. Ex. E). Clearly, the first element as depicted in as figure 2 of the '127 patent -- that one ridge protrude further than the other throughout the midsole -- is not an element of the Wal-Mart product's midsole throughout its length or circumference. (Compare Cornwell Dec. Ex. A, Fig. 2 and Cobrin Dec. Ex. E). The rear of the accused Wal-Mart product is coplanar: the ridges end in a common vertical plane, so that one ridge does not extend further in an outwardly directly than the other ridge. (Cobrin Dec. Ex. E).

Based on figures 1 and 2, the '127 patent claim includes the first element, which is that one ridge protrude further than the other throughout the midsole.  This first element is missing from the Wal-Mart product. Therefore, there is no infringement. *Goodyear*, 162 F.3d at 1117.

### 3.     If the '127 Patent is Construed to be Valid, It Cannot Include the Third Element.  In Either Event, The Wal-Mart Product Does Not Infringe.

The third element, as proffered by Reebok, is that the height of the ridges is higher in the rear of the midsole than in the rest of the midsole portion.  But this element is simply not depicted in figure 1 of the '127 patent, and thus cannot be construed as part of the claimed design. (Cornwell Dec. Ex. 1, Fig. 1; Sindle Dec. ¶13).  Should this Court so construe the '127 patent to require the third element, then a sufficient number of views to constitute a complete

#101187 v1
105210-52957

disclosure of the appearance of the patented design were not provided. (*Id.*). Specifically, from figure 1, one could ascertain a curve in the rear of the midsole but not an increase in height. Therefore, another view should have been provided. (*Id.*). It is important to note that figure 1 is not an absolute side view but rather an angled side view from the top edge of the sneaker. (Cornwell Dec. Ex. 1, Fig. 1; Sindle Dec. ¶11). That is confirmed by the dotted lines and the depth perception provided in the view. (*Id.*).

Alternatively, in the accused Wal-Mart product, the ridges are higher in the rear and in the center of the midsole. Likewise, the ridges are also higher in the front. (Cobrin Dec. Ex. E). Thus, the third element is not met in the accused product. As such, assuming arguendo that the third element is part of the claim, there is no infringement. *Goodyear*, 162 F.3d at 1117.

    **C.**     **Point III - Reebok's Cross Motion for Summary Judgment of Patent Validity and Motion for Summary Judgment of Infringement Must Be Denied**

        **1.**     **The Cross-Motion for a Finding of Patent Validity Must Fail Because It is Premature Due to a Lack of Discovery (F.R.C.P. 56(f)) and Because the '127 Patent is Invalid.**

Unlike the question of patent invalidity (i.e., whether the '127 patent is anticipated by prior art, e.g., the '038 patent or by the Chinese publication here), the question of patent validity (i.e., that a patent is valid over every piece of prior art, and satisfied all other conditions of patentability) is not proper for summary judgment before an accused infringer has an opportunity to conduct discovery. Therefore, pursuant to Fed. R. Civ. P. 56(f), Wal-Mart submits the Declaration of its counsel, Peter. T. Cobrin (the "Cobrin Declaration"), setting forth the nature of the discovery necessary to fully and properly oppose Reebok's cross-motion.

For example, Wal-Mart is entitled to discovery regarding the prosecution history of the '127 patent. To date, discovery has not even begun. As stated in the Cobrin Declaration, Wal-Mart must have an opportunity to inquire into the prosecution history, as well as prior art submitted, or not submitted, to the U.S. Patent Office. (Cobrin Dec. at ¶ 5). If Reebok asserts it

#101187 v1
105210-52957

is entitled to summary judgment that that the '127 patent is valid, then Wal-Mart clearly is entitled to discovery on anticipation and obviousness issues. Additionally, Wal-Mart is entitled to depose the inventors of the '127 patent, including seeking testimony regarding the invention, conception, reduction to practice, design, disclosure, drawings, prior art, and what was or was not submitted to the Patent Office. Each of these issues relates to questions of anticipation, obviousness and compliance with the various requirements of 35 U.S.C. § 112, and thus clearly must be discovered before summary judgment of validity can be granted.

The question of a patent's invalidity over particular prior art can be determined on a motion for summary judgment. See, e.g., *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) (anticipation is properly decided on summary judgment where there is no genuine issue of material fact). Applied here, there is no genuine issue of material fact that each of the '038 patent and the Chinese publication discloses every novel element of the '127 patent, even as construed by Reebok. As a result, summary judgment of patent invalidity for anticipation is warranted. Likewise, given Reebok's proffered four-element claim construction of the '127 patent, this Court can determine on summary judgment whether the two figures in the '127 patent adequately disclose the elements of the claimed design. Se, e.g., *Christianson v. Colt. Indus. Operating Corp.*, 609 F.Supp. 1174, (C.D. Ill. 1985) (holding on summary judgment that manufacturer's disclosures in parts patents were insufficient to satisfy either "enablement" or "best mode" requirements of patent application statute). Claim construction and the adequacy of the patent disclosure, are matters of law for the court to decide, and the court can so decide them on a motion for summary judgment. By contrast, common sense dictates that determining as a matter of law that a patent is valid should not be done without affording an accused infringer a reasonable opportunity to conduct discovery on validity-related issues (i.e., prior art, reduction to practice).

#101187 v1
105210-52957

**2.   There is No Genuine Issue of Material Fact that Wal-Mart's Accused Product Does Not Infringe the '127 Patent.**

Reebok's motion for summary judgment of infringement also must be denied, and Wal-Mart's cross-motion for summary judgment of noninfringement granted. As shown above, Reebok took the Wal-Mart product, decided that it had four specific features and then argued those features to be claim construction for the '127 patent. Even if this were proper -- which it is not -- Reebok still has not established the absence of genuine issues of material fact with respect to infringement. First, if the court were to adopt Reebok's claim construction, at least the third element is not in the '127 patent nor could be determined from the figures of the '127 patent and therefore the patent would be invalid for inadequate disclosure. (35 U.S.C. § 112; 35 C.F.R. § 1.152; Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶13). Alternatively, if the court construes the '127 patent not to include the third element -- because it is impossible to determine from figures 1 and 2 of the '127 patent that the ridges are raised in height at the rear of the midsole compared to the rest of the midsole -- the '127 patent is anticipated by the '038 patent as well as by the Chinese publication.

More to the point, there is no genuine issue of material fact that the accused Wal-Mart product does not infringe the '127 patent. The first proffered element is missing because, at the rear portion of the midsole, the ridges of the Wal-Mart product are coplanar. (Cobrin Dec. Ex. E; compare Reebok Mem. at 5). That is, throughout the midsole in the Wal-Mart product, one ridge does not protrude further than the other ridge. Specifically, in the rear of the shoe, one ridge does not extend further in an outwardly direction than the other because both ridges extend to, but not beyond, the raised sole. (*Id.*). Accordingly, as design patent infringement requires appropriation of **all** points of novelty, the Wal-Mart product cannot infringe. *Goodyear*, 168 F.3d at 1117.

Alternatively, if the court adopts Reebok's claim construction, an additional element must be present. Specifically, Reebok argues that the second element, the rounding of the corners in the front and the back of the midsole, is depicted in figure 1 of the '127 patent by vertical hash

#101187 v1
105210-52957

marks. (Reebok Mem. at 5; Cornwell Dec. Ex. A., Fig. 1). Obviously, Reebok hopes that this Court then find that the curvature of the ridges in the drawing at the front and the rear does not just further depict curvature or roundness of the ridges, but rather an increase in height. (*Id.*). Based upon the view provided in figure 1, the curvature of the ridges in the drawing merely depicts curvature or roundness. (Id.; Sindle Dec. ¶¶11-12). However, if, indeed, hash marks also depict the curvature, then the hash marks in the center of the midsole also depict concave curvature of the ridges in the center of the midsole (i.e. the missing element). (*Id.*). Thus, figure 1 of the '127 patent shows that the ridges are curved in the rear, perhaps curved in the front and curved in the middle of the midsole. (*Id.*).

Significantly, the ridges of the accused Wal-Mart product are not curved in the center of the midsole. (Cobrin Dec. Ex. E). The Wal-Mart product thus does not have the missing element, and there is no infringement. *Goodyear*, 168 F.3d at 1117.

### D.     Point IV - The '127 Patent is Anticipated by the '038 Patent.

Reebok argues that the '127 patent contains the four elements, some of which are missing from the '038 patent. However, all elements except the third element are disclosed by the '038 patent. But the third element is missing from the '127 patent as well. That is, no one looking at figure 1 of the '127 patent would deduce that the height in the rear of the ridges is greater than in the center. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶13). Accordingly, construing the '127 patent to include the third element renders the patent invalid because of inadequate disclosure. As every other element is disclosed in the '038 patent, the '038 patent anticipates and thus invalidates the '127 patent.

The '038 patent has stepped ridges where one ridge protrudes further than the other throughout the midsole. (Cornwell Dec. Ex. G, Fig. 1). The '038 patent thus discloses the first Reebok element.

#101187 v1
105210-52957

The '038 patent also discloses the second Reebok element, which is that the ridges are rounded or curved at the front and rear corners of the midsole portion. Clearly, as admitted by Reebok, the '038 patent discloses rounding in the rear. (Reebok Mem. at 7). As to the failure of the '038 patent to disclose rounding at the front, a review of figure 1 of the '127 patent shows that any rounding at the front is only partially disclosed and is simply insignificant. (Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶¶11, 13). That is, curvature/rounding at the front portion of the midsole is not a material aspect of that drawing (i.e. figure 1) nor of the claimed design. "Design patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *Door-Master*, 256 F.3d at 1312, quoting *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461, 43 USPO2d 1887, 1890 (Fed. Civ. 1997). To that extent, the second Reebok element is disclosed in the '038 patent.

As shown above, the third Reebok element is not in the '127 patent. Therefore, whether it is in the '038 patent is not important.

Finally, the fourth element, that each ridge has a height which in relation to its overall length, forms a long slender visual aspect ratio is clearly shown in the '038 patent. (Cornwell Dec. Ex. G, Fig. 1). The '038 patent shows ridges which are substantially smaller in height to the overall length and provide a long slender visual aspect ratio. (*Id.*).

Thus, the '038 patent discloses every element of the '127 patent, is identical to it in all material respects, and therefore anticipates the '127 patent. See *Door-Master*, 256 F.3d at 1312.

IV.    **Point V - The Chinese Publication Anticipates The '127 Patent.**

In light of Reebok's four-element construction of the '127 patent, Wal-Mart asserts that the Chinese publication, dated January 28, 2003, and submitted as Exhibit D to the Xu Declaration, discloses every material element of the '127 patent is identical to it in all material respects, and therefore anticipates the '127 patent. The Chinese publication predates the filing of the '127 patent. 35 U.S.C. § 102(a). (See Xu Dec. Ex. D; compare Cornwell Dec. Ex. A.)

#101187 v1
105210-52957

The publication depicts stepped ridges of a midsole where one ridge protrudes further than the other ridge throughout the midsole. The stepped ridges are clearly rounded at the rear of the midsole portion. (Xu Dec. Ex. D). Likewise, the stepped ridges begin to round at the front in exactly the same way that figure 1 of the '127 patent depicts a very slight rounding at the front of the midsole design of the '127 patent. (*Id*; Cornwell Dec. Ex. A, Fig. 1; Sindle Dec. ¶13). This satisfies the first and second elements of Reebok's construction. (Reebok Mem. at 4-5).

The Chinese publication also shows that the ridges increase in height in the rear of the midsole portion, satisfying Reebok's third element. (Xu Dec. Ex. D; Reebok Mem. at 5).

Finally, each ridge of the Chinese publication has a height which, in relation to its overall length, forms a long slender visual aspect ratio. (Xu Dec. Ex. D). Thus, the fourth Reebok element is also present. (Reebok Mem. at 5).

The Chinese publication thus discloses each and every Reebok-proffered element of the '127 patent, is identical to the claimed design in all material aspects, and therefore anticipates the '127 patent.

## V.    CONCLUSION

Based on the four elements proffered by Reebok as the '127 patent's claim construction, Wal-Mart cross moves for invalidity under 35 U.S.C. § 112 and by virtue of anticipation under 35 U.S.C. § 102(a) by the Chinese publication. Specifically, the Chinese publication discloses all four elements. Further, if the third element is part of the claim construction of the '127 patent, figure 1 of the '127 patent does not adequately depict that the ridges increase in height at the rear portion of the midsole. An insufficient number of views are provided to show the change in height. Therefore, the '127 patent is invalid under 35 U.S.C. § 112.

If this Court accepts the claim construction arguments of Reebok, then this Court must further construe the claims to include the missing element. As the missing element cannot be found in the Wal-Mart product, there is no infringement. Furthermore, the first element cannot

#101187 v1
105210-52957

be found in the Wal-Mart product because the Wal-Mart product has a sole which extends up in the rear portion such that it provides a plane where both ridges end at the same point. Therefore, the first element, that one ridge protrudes further than the other ridge throughout the midsole, is not found in the Wal-Mart product throughout the midsole portion. Significantly, at the rear, there is no such protrusion. Likewise, the Wal-Mart product does not include the third element, which requires the ridges to be higher in the center of the midsole than in the middle. The ridges of the Wal-Mart product are higher in the center and rear of the midsole.

Finally, if this Court construes the third element not to be part of the '127 patent claim construction, then the '127 patent is not infringed by the Wal-Mart product because the Wal-Mart product does not have the first element nor the missing element. Moreover, the '038 patent would then render the '127 patent invalid as it anticipates every element except the third element.

Respectfully submitted,

Dated: May <u>20</u>, 2005

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: _/s/ Peter T. Cobrin_____
Irving H. Picard (BBO # 398820)
Peter T. Cobrin (pro hac vice)
pcobrin@gibbonslaw.com
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
(212) 649-4700 ph
(212) 333-5980 fax

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

#101187 v1
105210-52957

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed via Federal Express in compliance with Local Civil Rule 5.2. As such, a copy of this DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S CROSS MOTION AND MOTION FOR SUMMARY JUDGMENT OF PATENT VALIDITY AND INFRINGEMENT, RESPECTIVELY, AND IN SUPPORT OF DEFENDANT'S CROSS MOTIONS FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND NON-INFRINGEMENT was served electronically upon the following counsel of record for Plaintiff Reebok International, Ltd.:

> Victoria L. Walton (BBO #650999)
> BURNS & LEVINSON LLP
> 125 Summer Street
> Boston, Massachusetts 02110-1624
> (617) 345-3000
> (617) 345-3299 facsimile
> vwalton@burnslev.com
>
> Donald R. Banowit (pro hac vice)
> STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
> 1100  New York Avenue, N.W.
> Washington, D.C. 20005
> (202) 371-2600
> (202) 371-2540 facsimile
> dbanowit@skgf.com

>                          /s/ Peter T. Cobrin
>                          Peter T. Cobrin (pro hac vice)

#101187 v1
105210-52957