## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL LTD., | |
| Plaintiff, | |
| v. | Civil Action No. 04-12668 (RGS) (RBC) |
| | Honorable Richard G. Stearns |
| WAL-MART STORES, INC., | |
| Defendant. | |

### PLAINTIFF REEBOK'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT WAL-MART'S CROSS-MOTIONS FOR SUMMARY JUDGMENT OF PATENT INVALIDITY AND NONINFRINGEMENT

Plaintiff Reebok International Ltd. ("Reebok") hereby provides its opposition to Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment of Patent Invalidity and Noninfringement. The undisputed evidence in this case establishes that, as a matter of law, Reebok's U.S. Patent No. Des. 495,127 to Marvin *et al.* ("the Reebok patent") is infringed by the offer for sale and sale of certain shoes marketed under the name "Oxide" ("the Oxide shoes") and sold by Wal-Mart throughout the United States. In addition, as a matter of law, Wal-Mart has failed to meet its heavy burden of proving invalidity. Wal-Mart's motions for summary judgment of invalidity and non-infringement must, therefore, be denied.

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   THE SCOPE OF THE CLAIMED DESIGN IS A QUESTION OF LAW ........................ 3

    A.    THE REEBOK PATENT CLAIMS THE ORNAMENTAL APPEARANCE OF *A PORTION OF A MIDSOLE* AND NOT THE ENTIRE MIDSOLE, OR THE ENTIRE SHOE, SHOWN IN THE FIGURES OF THE REEBOK PATENT ................................. 4

    B.    THE REEBOK PATENT DOES NOT REQUIRE A CONCAVE CURVATURE IN THE CENTRAL PORTION OF THE CLAIMED DESIGN ....................................... 5

III.  THE CLAIMED DESIGN IS FULLY SUPPORTED BY THE FIGURES OF THE REEBOK PATENT AND THE DISCLOSURE OF THE PARENT APPLICATION ................. 8

IV.   THE REEBOK PATENT IS INFRINGED BY WAL-MART'S OXIDE SHOES ............ 9

    A.    THE DESIGNS OF THE REEBOK PATENT AND THE OXIDE SHOES HAVE SUBSTANTIALLY THE SAME OVERALL APPEARANCE ........................................ 9

    B.    THE OXIDE SHOES APPROPRIATE THE POINTS OF NOVELTY THAT DISTINGUISH THE REEBOK PATENT FROM THE PRIOR ART ........................... 10

V.    WAL-MART HAS FAILED TO MEET ITS BURDEN OF PROOF WITH RESPECT TO ITS CLAIM OF INVALIDITY ..................................................................... 13

    A.    THE DE WERTH PATENT DOES NOT DISCLOSE EACH AND EVERY FEATURE OF THE REEBOK PATENT ........................................................... 14

    B.    THE CHINESE LEATHER NEWS PUBLICATION DOES NOT DISCLOSE EACH AND EVERY FEATURE OF THE REEBOK PATENT ................................... 16

    C.    WAL-MART HAS FAILED TO DEMONSTRATE THAT FURTHER DISCOVERY WOULD ALLOW IT TO OBTAIN EVIDENCE OF INVALIDITY ...... 18

VI.   CONCLUSION ........................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1565 (Fed. Cir. 1988) ................................................................................................................ 3

Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1376 (Fed. Cir. 2004) ........................................................................................ 3, 13, 16, 18

Canon Computer Sys. v. Nu-Kote Int'l., 134 F.3d 1085 (Fed. Cir. 1998) ................... 14

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) ................................................ 14

Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370 (Fed. Cir. 2002) ........................ 4, 15

Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308 (Fed. Cir. 2001) ........................... 4, 13, 16

Durling v. Spectrum Furniture Co., 101 F.3d 100 (Fed. Cir. 1996) ................................ 4

Eastern Am. Trio Prods. v. Tang Elec. Corp., 97 F. Supp. 2d 395, 405 (S.D.N.Y. 2000) ................................................................................................................ 11

Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc., 162 F.3d 1113, 1121 (Fed. Cir. 1998) ......................................................................................... 11

Gorham Co. v. White, 81 U.S. 511, 528 (1871) .......................................... 1, 2, 3

In re Salmon, 705 F.2d 1579, 1582 (Fed. Cir. 1983) ................................................... 15

In re Zahn, 617 F.2d 261, 267 (Cust. & Pat.App. 1980) .............................................. 4

Jack Schwartz Shoes v. Skechers U.S.A., 233 F. Supp. 2d 512 (S.D.N.Y. 2002) ........................ 3

KeyStone Retaining Wall Sys. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993) ................................................................................................................ 15

Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423 (Fed. Cir. 1984) ................................ 2, 3, 11

Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 988 (1st Cir, 1988) ........................................................................................ 19

Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990 (Fed. Cir. 1993) ...................... 2

Racing Strollers, Inc. v. Tri Industries, Inc., 878 F.2d 1418, 1420-21 (Fed. Cir. 1989) (en banc) ................................................................................................. 8

Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189, 193 (S.D.N.Y. 1999) ...................... 3

Schwabel Corp. v. Conair Corp., 122 F. Supp. 2d 71 (D. Mass. 2000) ........................................ 13

Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1585 (Fed. Cir. 1996) ............................ 3

STATUTES

35 U.S.C. § 102(a) ....................................................................................................... 16

35 U.S.C. § 112, first paragraph ................................................................................... 8

35 U.S.C. § 282 ........................................................................................................... 13

OTHER AUTHORITIES

37 C.F.R. § 1.152. ......................................................................................................... 6

37 C.F.R. § 1.84(m). ............................................................................................... 3, 6, 7

Jack Lo et al., How to Make Patent Drawings Yourself: Prepare Formal Drawings
    Required by the U.S. Patent Office, 3d edition, NOLO Publishing (2002) ........................... 7

The United States Patent Office publication Guide for Preparation of Patent
    Drawings (June 2002) .............................................................................................. 7

## I.    PRELIMINARY STATEMENT

Contrary to established Supreme Court precedent, Wal-Mart argues that in order for the accused Oxide shoes to infringe Reebok's patented design, each and every feature of the patented design must be present in the accused shoes.  In light of Wal-Mart's gross misstatement of the law, Wal-Mart's motion for summary judgment of non-infringement must be denied.

The test for design patent infringement was set forth by the United States Supreme Court over a century ago in Gorham v. White, which held that to infringe a design patent an accused product must have the sameness of effect upon the eye of an ordinary observer as the patented design.   Gorham Co. v. White, 81 U.S. 511, 528 (1871).   The Supreme Court in Gorham understood that to the eye of a trained expert, an infringing product would never be identical to a patented design and, therefore, required that the sameness of effect relate to the eye of an ordinary observer, rather than an expert.  Id. at 527-28 ("human ingenuity has never yet produced a design, in all its details, exactly like another, so like that an expert could not distinguish them. No counterfeit bank note is so identical in appearance with the true that an experienced artist cannot discern a difference.").   Thus, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  Id. at 528.    While differences in the accused product and the patented design may exist, "the question remains, is the effect of the whole design substantially the same?"  Id. at 530.

Considering the accused Oxide shoes and Reebok's patented design as an ordinary observer would, no reasonable jury could conclude that the appearance of a portion of the midsoles of the accused Oxide shoes is not substantially the same as Reebok's patented design.

As an adjunct to the <u>Gorham</u> test, the Federal Circuit in 1984 recognized that some design patents would be similar in many ways to the designs of the prior art. <u>Litton Systems, Inc. v. Whirlpool Corp.</u>, 728 F.2d 1423, 1443 (Fed. Cir. 1984). Therefore, in order to infringe, the accused product must also misappropriate the novelty of the patent design. <u>Id</u>. at 1444. This second test is a safety mechanism to ensure that the accused product is closer in appearance to the patented design than it is to prior product designs. <u>Id</u>. It is unquestionable that the accused Oxide shoes misappropriate the novelty of Reebok's patented design. The accused Oxide shoes are much closer in appearance to Reebok's patented design than to any of the other designs that were before the United States Patent and Trademark Office when it granted Reebok's patent and the accused Oxide shoes are much closer in appearance to Reebok's patented design than to the designs disclosed in the DeWerth patent and the Chinese Leather News Publication asserted in Wal-Mart's motions for summary judgment of invalidity. Accordingly, no reasonable jury could conclude that the similarity between the accused Oxide shoes and Reebok's patented design is not attributable to the novelty which distinguishes Reebok's patent design from the prior art.

In its defense, Wal-Mart has asked the Court to focus on differences between the Reebok patent and the accused Oxide shoes. However, as discussed below, the features Wal-Mart insists are missing from the accused Oxide shoes are in most cases not even part of the claimed design and therefore cannot be used to distinguish the accused Oxide shoes from the claimed design. See <u>Payless Shoesource, Inc. v. Reebok Int'l Ltd.</u>, 998 F.2d 985, 990 (Fed. Cir. 1993) (vacating a district court decision that was improperly influenced by features extraneous to the claimed design). Nevertheless, even if Wal-Mart were correct, regarding what is shown by the Reebok patent, the Reebok patent would still be valid and infringed. The case law is clear, minor

differences do not avoid infringement or preclude the grant of summary judgment. Litton, 728 F.2d at 1444; see also Jack Schwartz Shoes v. Skechers U.S.A., 233 F. Supp. 2d 512 (S.D.N.Y. 2002); Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189, 193 (S.D.N.Y. 1999). For example, the exclusion of several features and the modification of others on an accused shoe sole did not avoid grant of summary judgment of infringement (and affirmation by the Federal Circuit) when it was found that an accused shoe sole had the same overall appearance as the patented shoe sole in the Avia case. See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1565 (Fed. Cir. 1988). Simply put, the Oxide shoes satisfy the two part test for infringement, because they have the same overall appearance as Reebok's patented design (Gorham) and the Oxide shoes misappropriate novel features of the Reebok patent (Litton).

## II.    THE SCOPE OF THE CLAIMED DESIGN IS A QUESTION OF LAW

Resolution of the parties' dispute as to the scope of the claimed design is proper on summary judgment, as the scope of a design patent claim is a question of law to be determined by the Court, not a jury. Bernhardt, L.L.C. v. Collezione Europa USA, Inc., 386 F.3d 1371, 1376 (Fed. Cir. 2004).[1] Because the scope of a design patent lies in the drawings, words are rarely, if ever an appropriate mechanism to describe what is protected by a design patent. "[T]he

---

[1]    The Declaration of Thomas Sindle included with Wal-Mart's Cross Motions for Invalidity and Non-Infringement appears to be nothing more than an opinion on claim construction and should be afforded little deference. See Sindle Decl. ¶¶ 7-15. The Federal Circuit has cautioned that "opinion testimony on claim construction should be treated with the utmost caution." See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1585 (Fed. Cir. 1996)("expert testimony, whether it be of an attorney, a technical expert, or the inventor, on the proper construction of a disputed claim term. . . may only be relied upon if the patent documents, taken as a whole, are insufficient to enable the court to construe disputed claim terms. Such instances will rarely, if ever, occur."). Further, as discussed below, Mr. Sindle's testimony evidences a fundamental lack of understanding of the drawing rules as outlined by the United States Patent and Trademark Office. See e.g., 37 C.F.R. §1.84(m). Finally, Reebok has not been given an opportunity to discredit Mr. Sindle's testimony. For example, Mr. Sindle's testimony may be biased in that he has likely performed work for Wal-Mart and/or its attorneys in the past and may be hopeful for similar work in the future.

scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual appearance it creates." Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) (quoting Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-105 (Fed. Cir. 1996)).

### A. THE REEBOK PATENT CLAIMS THE ORNAMENTAL APPEARANCE OF *A PORTION OF A MIDSOLE* AND NOT THE ENTIRE MIDSOLE, OR THE ENTIRE SHOE, SHOWN IN THE FIGURES OF THE REEBOK PATENT

As with all design patents, the Reebok patent includes a single claim. See Cornwell Declartion in support of Reebok's Motion for Summary Judgment of Infringement and Cross-Motion for Summary Judgment of Validity ("Cornwell Decl. I"), Ex. A, coverpage. That claim reads, "The ornamental design for a ***portion of a midsole***, as shown and described." (emphasis added). Id. The Reebok patent includes two figures. Id. Fig. 1 is "a side view of a portion of a midsole showing [the claimed] design." Id. Fig. 2 is "a cross sectional view taken along line 2--2" of Fig. 1. Id. Fig. 1 of the claimed invention is provided below. Id., Fig. 1.

The claimed design is the portion of the midsole, of the shoe depicted in Fig. 1, provided in full lines. Id. The remainder of the shoe depicted in Fig. 1, including the remaining portion of the midsole, is *not* claimed, but is provided in broken lines as an indication of the visible environmental structure in which the claimed invention can be found. Id. Broken lines have been interpreted as "for illustrative purposes only and form no part of the claimed design." Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1310 (Fed. Cir. 2001).[2]

---

[2]  Claiming the ornamental appearance of only a portion of an article of manufacture is permitted in a design patent. *See* In re Zahn, 617 F.2d 261, 267 (Cust. & Pat.App. 1980) ("a design for an article of manufacture may be embodied in less than all of an article of manufacture.") In Zahn, for example, the claimed design was found to consist of the ornamental appearance of only the shank portion of a masonry drill bit, where the shank portion was provided in full lines in the application drawings and the twist drill or cutting portion of the drill bit was provided in broken lines. Zahn, 617 F.2d at 262.



**FIG.1**

Contrary to Wal-Mart's contention, there is no requirement that the claimed design continue around the entire perimeter of the heel portion of the midsole. See Wal-Mart's Memorandum in Support of its Cross-Motions for Summary Judgment of Infringement and Invalidity ("Wal-Mart Memo. II"), at 13. Indeed, as the claim language suggests, the claimed design is for a ***portion of a midsole.*** Cornwell Dec. I, Ex. A, coverpage. The dot-dash-dot lines around the perimeter of the claimed design show that the entire design can be seen in Fig. 1. Id., Fig. 1.

### B. THE REEBOK PATENT DOES NOT REQUIRE A CONCAVE CURVATURE IN THE CENTRAL PORTION OF THE CLAIMED DESIGN

An enlarged view of the claimed portion as shown in Fig. 1 is provided below for the Court's benefit with added notations to illustrate the features discussed below. Id.



Spacing of hash lines show curvature

Evenly spaced hash lines representative of a flat surface (no curvature)

Spacing of hash lines show curvature

As Reebok indicated in its previously filed Memorandum in Support of Reebok's Motion for Summary Judgment of Infringement and Cross-Motion for Summary Judgment of Validity ("Reebok Memo."), the vertical hash lines provided at the front and rear of the claimed design are provided to illustrate curvature in these areas. Reebok Memo., at 5. Wal-Mart's contention that the hash lines provided at the center of the claimed design are provided to illustrate curvature is not only wrong, it is unfathomable that Wal-Mart would proffer such an argument. See Wal-Mart Memo. II, at 3 and 5-6. Wal-Mart's argument fails to appreciate that curvature is not apparent from the hash lines alone, but also from the particular spacing of the hash lines. As shown above, at the front and rear of the claimed design, the hash lines are unevenly spaced, such that the hash lines are spaced far apart in the foreground and become closer together as the curvature is directed towards the background. Cornwell Decl. I, Ex. A, Fig. 1. Such indication of curvature is not provided in the hash lines in the central portion of the claimed design. Id. Rather, the hash lines in the central portion of the claimed design are evenly spaced, to illustrate flatness (no curvature). Id.

The patent rules require that drawings in design patents include "[a]ppropriate and adequate surface shading . . . to show the character or contour of the surfaces represented." 37 C.F.R. § 1.152. "Spaced lines for shading are preferred." 37 C.F.R. § 1.84(m). An example of

6

such "line shading" is shown in FIG. 1 of Example 10 on page A4-23[3] of The United States

Patent Office publication <u>Guide for Preparation of Patent Drawings</u> (June 2002), reproduced

below (with added notations to illustrate the features discussed below). <u>See</u> Cornwell

Declaration submitted herewith ("Cornwell Dec. II"), Ex. K, at A4-23. As shown below,

unevenly spaced line shading is used to illustrate curvature, while flat areas are illustrated with

hash lines that are evenly spaced. <u>Id</u>.



Similarly, Illustration 7.7, entitled "Linear Shading," from Jack Lo et al., <u>How to Make</u>

<u>Patent Drawings Yourself: Prepare Formal Drawings Required by the U.S. Patent Office</u>, 3d

edition, NOLO Publishing (2002) teaches the use of unevenly spaced hash lines to indicate

curvature and equally spaced hash lines to illustrate flat surfaces. Cornwell Decl. II, Ex. L, at

7/13.

Accordingly, the Reebok patent does not require a concave curvature in the central

portion of the claimed design.

---

[3] Page A4-22 describes the drawing requirements identified in the figure of Example 10 and states that "most of the spaced lines in Example 10 are examples of the technique of shading as described in Paragraph (m) [of 37 C.F.R. § 1.84]."

### III.    THE CLAIMED DESIGN IS FULLY SUPPORTED BY THE FIGURES OF THE REEBOK PATENT AND THE DISCLOSURE OF THE PARENT APPLICATION

Wal-Mart has also asserted that the Reebok patent is invalid under 35 U.S.C. § 112, first paragraph, for failure to adequately disclose the claimed design. Wal-Mart Memo. II, at 10. However, Wal-Mart's argument is based in its failure to appreciate that only a *portion* of the midsole depicted in the figures of the Reebok patent is claimed. As discussed above, the claimed design is the *portion* of the midsole of the shoe depicted in Fig. 1 provided in full lines. Cornwell Decl. I, Ex. A, coverpage and Fig. 1. The remainder of the shoe depicted in Fig. 1, including the remaining portion of the midsole provided in broken lines, is *not* claimed. Id. As such, the entire claimed design is visible in Fig. 1 of the Reebok patent. Id. Although not necessary, Fig. 2 of the Reebok patent was provided to show a cross sectional view of the claimed design, to illustrate that in the claimed design, one ridge protrudes further than the other. No additional views are required for a full understanding of the claimed design. Id., Fig. 2. A rear view, for example, would not be necessary since the claimed design does not extend to the rear of the shoe. An opposing side view is also not necessary, since the claimed design does not continue around the entire perimeter of the heel portion of the midsole. The Reebok patent is, therefore, adequately disclosed under 35 U.S.C. § 112, first paragraph.

Support for the claimed design is also evident from the prosecution history of the Reebok patent. The Reebok patent issued from U.S. Application No. 29/203,335, filed April 14, 2004 as a divisional application of U.S. Application No. 10/607,541 ("the '541 application"), filed June 27, 2003. Cornwell Decl. I, Ex. A, coverpage. A design patent application may be filed as a divisional of an earlier utility patent application and is entitled to the benefit of the earlier filing date of the utility application. Racing Strollers, Inc. v. Tri Industries, Inc., 878 F.2d 1418, 1420-21 (Fed. Cir. 1989) (en banc). A copy of Fig. 7 of the '541 application as filed is provided

8

herewith as Exhibit I to the Cornwell Declaration. Cornwell Decl. II, Ex. I.    The photograph submitted as Fig. 7 of the '541 application is reproduced below, with reference markings removed. Cornwell Decl. II, Exhibit J. The claimed design of the Reebok patent is adequately disclosed in Fig. 7 of the '541 application.



## IV.    THE REEBOK PATENT IS INFRINGED BY WAL-MART'S OXIDE SHOES

### A. THE DESIGNS OF THE REEBOK PATENT AND THE OXIDE SHOES HAVE SUBSTANTIALLY THE SAME OVERALL APPEARANCE

Considering the accused Oxide shoes and Reebok's patented design as an ordinary observer would, a simple visual comparison of the Reebok patent with the Oxide shoes readily reveals that a portion of the midsoles of the Oxide shoes has substantially the same overall appearance as Reebok's patented design. Reproduced below, for the Court's convenience, are the relevant portions of Fig. 1 of the Reebok patent and a photograph of an accused Oxide shoe. Cornwell Decl. I, Ex. A, Fig. 1 and Ex. H.




**FIG. 1 OF THE REEBOK PATENT**        **SIDE VIEW OF OXIDE SHOE**

The midsole of the Oxide shoes includes so many features which are identical to features of the design of the Reebok patent that the two designs create the same overall appearance to the eye of an ordinary observer.  Side-by-side they appear to be nearly identical.

### B. THE OXIDE SHOES APPROPRIATE THE POINTS OF NOVELTY THAT DISTINGUISH THE REEBOK PATENT FROM THE PRIOR ART

To the extent that Reebok can articulate some of the points of novelty of what is shown in the drawings of the Reebok patent, they are at least the elements identified in Reebok's prior Memorandum that are not found in prior footwear designs; that is, the design includes a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge, and where (1) the stepped ridges are rounded at both the front and rear corners of the midsole portion, (2) each stepped ridge is slightly inclined at the rear of the midsole portion, and (3) each ridge has a height which in relation to its overall length forms a long, slender visual aspect ratio. These points of novelty of the Reebok patent are found in the Oxide shoes.  Reebok Memo., at 16.  Nevertheless, logic dictates that every novel element of a design patent need not be

misappropriated to find infringement, otherwise the more novel an invention, the harder it would be to infringe.[4]  The fundamental question is whether the accused product is closer in appearance to the patented design than to prior product designs.  <u>Litton</u>, 728 F.2d at 1444.

Wal-Mart has admitted that the Oxide shoes include a stair-stepped ridged portion of a midsole, where one ridge protrudes further than the other ridge.  Wal-Mart Memo. II, at 8.  This feature is also evident by reference to the photograph above and the shoe sample provide by Wal-Mart.  Cornwell Decl. I, Ex. H; Cobrin Declaration submitted with Wal-Mart's Cross-Motions for Summary Judgement of Non-infringement and Invalidity ("Cobrin Decl. II"), Ex. E.  As discussed above, there is no requirement that the claimed design continue around the entire length and circumference of the sole.  Accordingly, the accused design appropriates this point of novelty.

Wal-Mart also admits that the Oxide shoes are rounded at both the front and rear corners of the midsole portion.  Wal-Mart Memo. II, at 8.  This feature is also evident by reference to the photograph above and the shoe sample provide by Wal-Mart.  Cornwell Decl. I, Ex. H; Cobrin Decl. II, Ex. E.  As discussed above, there is no curvature in the center of the claimed design.  Accordingly, the accused design appropriates this point of novelty.

As stated in Reebok's prior memorandum, at the rear of the claimed design, the stepped ridges appear to *incline* slightly with respect to the ground, such that the *top* of each stepped ridge appears slightly higher at the rear of the claimed design than at the middle of the claimed

---

[4]  Contrary to the assertion by Wal-Mart (Wal-Mart Memo. II, at 16), the <u>Goodyear</u> case does not state or suggest that *all* points of novelty must be found to find infringement of a design patent.  Instead, the Court applied weight to the various points of novelty and found the tire not infringing where "several significant points of novelty" were not found. <u>See</u> <u>Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.</u>, 162 F.3d 1113, 1121 (Fed. Cir. 1998); <u>see also</u>, <u>Eastern Am. Trio Prods. v. Tang Elec. Corp.</u>, 97 F. Supp. 2d 395, 405 (S.D.N.Y. 2000)("the 'point of novelty' test does not require that the infringing item appropriate every point of novelty of the patented design.").

design. Reebok Memo., at 5. An enlarged view of the claimed portion as shown in Fig. 1 is provided below for the Court's benefit with identification of this feature. Cornwell Decl. I, Ex. A, Fig. 1.



Incline visible in claimed design and unclaimed outsole

As can be seen above, the stepped ridges begin to angle with respect to the ground toward the rear of the claimed design. Id. The incline of the ridges is evident by comparison with the incline of the unclaimed outsole shown in broken lines. Id. While the claimed portion inclines less severely, it is obvious that there is indeed an incline at the rear of the claimed portion. Id. This feature is also evident in the accused Oxide shoes, as can be seen in the photograph above and the shoe sample provide by Wal-Mart. Cornwell Decl. I, Ex. H; Cobrin Decl. II, Ex. E. Further, Wal-Mart has admitted that the Oxide shoe "slopes up at the rear." Wal-Mart Memo. II, at 13. Accordingly, the accused design appropriates this point of novelty.

Finally, Wal-Mart does not dispute that each stepped ridge of the Oxide shoes has a height which in relation to its overall length forms a long, slender visual aspect ratio. This feature is also evident by reference to the photograph above and the shoe sample provide by Wal-Mart. Cornwell Decl. I, Ex. H; Cobrin Decl. II, Ex. E. Accordingly, the accused design appropriates this point of novelty.

The accused Oxide shoes clearly are closer in appearance to Reebok's patented design than to prior footwear designs. No reasonable jury could conclude that the similarity between

the accused Oxide shoes and Reebok's patented design is not attributable to the novelty which distinguishes Reebok's patented design from prior footwear designs.

Reebok is, therefore, entitled to summary judgment of infringement.  Wal-Mart's motion for summary judgment of non-infringement must be denied.

## V.     WAL-MART HAS FAILED TO MEET ITS BURDEN OF PROOF WITH RESPECT TO ITS CLAIM OF INVALIDITY

Reebok's patent is presumed valid.  See 35 U.S.C. § 282.  This presumption may only be overcome by clear and convincing evidence of invalidity.  Bernhardt, 386 F.3d at 1378.  The burden for establishing invalidity of the Reebok patent lies with Wal-Mart.  Id.  Reebok need not produce any additional affirmative evidence of validity, but may rest on the presumption of validity provided under 35 U.S.C. § 282.  See Schawbel Corp. v. Conair Corp., 122 F. Supp. 2d 71, 81 (D. Mass. 2000) ("the patentee's obligation is not independently to produce affirmative evidence bolstering its patent's validity; rather, the patentee must clearly show that it can disprove the challenger's bases for invalidity.").

"The tests for determining the validity of a design patent issued pursuant to 35 U.S.C. § 171 are identical to those tests currently espoused by [the Federal Circuit] for determining the validity of a utility patent issued pursuant to 35 U.S.C. § 101." Bernhardt, 386 F.3d at 1377-1378.  This means that the prior art reference must be "identical in all material respects" to the claimed invention.  Door-Master, 256 F.3d at 1308.[5]

---

[5] The Federal Circuit has noted that "that which infringes, if later, would anticipate, if earlier." See Door-Master, 256 F.3d at 1308.  Under this tenet, the Federal Circuit has held that the proper analysis of invalidity of a design patent, like the analysis of infringement of a design patent, must "discuss or explain whether [the prior art designs] were substantially similar in appearance in the eyes of an ordinary observer to the claimed design or appropriated the points of novelty of the patented design." Bernhardt, 386 F.3d at 1378.

Despite filing two separate motions for summary judgment of invalidity, Wal-Mart has failed to show that it can meet an essential element of its claim, namely that each and every feature of the claimed design is present in the prior art. Accordingly, summary judgment of validity is proper and Wal-Mart's motion for summary judgment of invalidity must be denied. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)("rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). As discussed in detail below, no reasonable jury could find that the Reebok patent is anticipated by the De Werth patent or the Chinese Leather News Publication, for at least the reason that neither of the cited references discloses a portion of a midsole having stepped ridges that are rounded at *both the front and rear corners* thereof. Thus, Reebok is entitled to summary judgment of validity. See Canon Computer Sys. v. Nu-Kote Int'l., 134 F.3d 1085, 1088 (Fed. Cir. 1998) ("where the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue.").[6]

## A. THE DE WERTH PATENT DOES NOT DISCLOSE EACH AND EVERY FEATURE OF THE REEBOK PATENT

Wal-Mart states that "[a]lthough the '038 patent does not show rounding in the front portion of the midsole, this is not a material aspect of the Reebok patent, as evidenced by the very limited rounding of the front corner of the Reebok patent design." Wal-Mart Memo. II, at 7. First, by this statement, Wal-Mart admits that the De Werth patent (i.e., the '038 patent) does not teach rounding in the front portion of the midsole. Id. Second, Wal-Mart's disregard of the

---

[6] At the very least, the Reebok is entitled to summary judgment that the Reebok patent is not anticipated by and therefore valid over the De Werth patent and the Chinese Leather News Publication. Also, at the very least, Reebok is entitled to summary judgment that the Reebok patent is valid under 35 U.S.C. § 112, first paragraph.

front curvature of the claimed portion as immaterial, or "insignificant" as Wal-Mart describes this portion elsewhere, is a distortion of the law by Wal-Mart.  Id., at 3-4, 7, 18; See In re Salmon, 705 F.2d 1579, 1582 (Fed. Cir. 1983)(a "design is a unitary thing and all its portions are material").  Each part of a claimed design is material and significant. Contessa, 282 F.3d at 1378 ("Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement.  This is because '[a] patented design is defined by the drawing in the patent, not just by one feature of the claimed design.')(quoting KeyStone Retaining Wall Sys. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993)).  Regardless of the degree of rounding, there must be at least some rounding present in the front portion, which is not and cannot be taught by the De Werth patent due to the explicit description of the heel illustrated in Fig. 2 of the De Werth patent, as illustrated below.  Cornwell Decl. I, Ex. G, Fig. 2.



**FIG. 2 OF THE DE WERTH PATENT**

Further, as discussed in detail in Reebok's previously filed Memorandum, additonal features of the Reebok patent are also not present in the De Werth patent.  See Reebok Memo., at 6-10.  In light of the differences between the designs of the Reebok patent and the De Werth patent, a reasonable jury could not conclude that Wal-Mart has met its burden of showing anticipation by clear and convincing evidence.

**B. THE CHINESE LEATHER NEWS PUBLICATION DOES NOT DISCLOSE EACH AND EVERY FEATURE OF THE REEBOK PATENT**

As an initial matter, Wal-Mart has not established that the Chinese Leather News Publication is prior art to the invention claimed in the Reebok patent.  The publication date of the Chinese Leather News Publication appears to be January 28, 2003, which is less than one year before the priority date  (June 27, 2003) of the Reebok patent.  See Yiping Decl., ¶ 4; Cornwell Decl. I, Ex. A, coverpage.  Publications less than a year before the earliest priority date of a patent application (the earliest filing date of the priority application) can only be prior art if before the date of invention by Reebok.  35 U.S.C. § 102(a) ("[a] person shall be entitled to a patent unless…the invention was … described in a publication in this or a foreign country, before the invention thereof by the applicant for patent.").  Wal-Mart has not shown and will not be able to show that the Chinese Leather News Publication was published before the date of invention by Reebok, since Reebok can establish an invention date prior to the publication date of the Chinese Leather News Publication.  For example, the Declaration of Robert Rich, attached hereto, indicates that a Reebok shoe incorporating the claimed design was the subject of performance testing  as early as July 17, 2002. See Rich Decl., ¶ 4 and Ex. A.  This Reebok shoe is pictured in Fig. 7 of the '541 application.  See Cornwell Decl, ¶ 5 and Ex. J.

Nevertheless, an inquiry as to the availability of the Chinese Leather News Publication as prior art under 35 U.S.C. § 102(a) is not necessary, as the skate shown therein bearing the trademark "HYPNO" ("the HYPNO skate") is not identical in all material aspects to the Reebok patent.  See Door-Master, 256 F.3d at 1308.  The HYPNO skate does not teach each and every feature of the claimed design and does not provide the same overall appearance as the claimed design.  See Bernhardt, 386 F.3d at 1378.  In light of the differences between the design of the

Reebok patent and the HYPNO skate, a reasonable jury could not conclude that Wal-Mart has met its burden of showing anticipation by clear and convincing evidence.

A side-by-side comparison of the relevant portions of Fig. 1 of the Reebok patent and the HYPNO skate is reproduced below.  Yiping Decl., Ex. C; Cornwell Decl. I, Ex. A, Fig. 1.




**FIG. 1 OF THE REEBOK PATENT**          **THE HYPNO SKATE**

Although Wal-mart asserts that "the stepped ridges begin to round at the front in exactly the same way that figure 1 of the [Reebok] patent depicts a very slight rounding at the front of the midsole design of the [Reebok] patent," a curvature at the front corner of the midsole portion of the HYPNO skate is not disclosed.  Wal-Mart Memo. II, at 19; Yiping Decl., Ex. C.  In fact, the front portion of the midsole is not visible, as it is concealed by a strap of the skate portion.[7]  As such, the HYPNO skate does not disclose a midsole portion having stepped ridges that are rounded at *both the front and rear* corners of the midsole portion, as claimed in the Reebok patent.  Yiping Decl., Ex. C.

---

[7]  Included with this opposition is a sample of the HYPNO skate shown in the Chinese Leather News Publication.  Cornwell Decl. II, Ex. M.  While it is the publication and not the shoe itself which is being asserted as prior art to the Reebok patent and, as such, the publication itself must teach each and every feature of the invention, reference to the actual product will allow the Court to see what cannot be seen in the publication, namely that the front portion of the midsole is not rounded as in the Reebok patent.

Further, it does not appear that the HYPNO skate has stepped ridges similar to those shown in the Reebok patent.  Id.  As shown above, the ridges of the HYPNO skate do not appear to be stair-stepped, but instead appear to be rounded, such that the middle of each ridge protrudes further than either the top or bottom of the ridge.  Id.

Additionally, when the heel of the HYPNO skate is compared in about the same proportion to the design claimed in the Reebok patent, as shown above, the visual aspect ratio (apparent height to length) of the stepped ridges of the HYPNO skate is not substantially similar to the visual aspect ratio of the stepped ridges of the Reebok patent.  Id., Cornwell Decl. I, Ex. A, Fig. 1.  Each ridge of the Reebok patent appears longer and thinner than that of the HYPNO skate.

Since at least these features are not present in the HYPNO skate, the present invention is not anticipated.  When shown side-by-side as discussed above, the HYPNO skate is not substantially similar in its overall appearance in the eyes of an ordinary observer to the claimed design.  Also, the differences pointed to above illustrate points of novelty that render the Reebok patent valid over the HYPNO skate.

### C. WAL-MART HAS FAILED TO DEMONSTRATE THAT FURTHER DISCOVERY WOULD ALLOW IT TO OBTAIN EVIDENCE OF INVALIDITY

Wal-Mart asserts that while summary judgment of invalidity is proper without discovery, summary judgment is not proper as to validity without discovery. Wal-Mart's Memo. II, at 14-15.  This statement is not correct.  Wal-Mart specifically pled invalidity as an affirmative defense in its Answer and has filed two separate motions for summary judgment of invalidity.  The burden for establishing invalidity of the Reebok patent lies with Wal-Mart.  Bernhardt, 386 F.3d at 1378.  To date, the only evidence of invalidity that Wal-Mart has offered are the DeWerth patent and the Chinese Leather News Publication.  As discussed above, neither of these

references invalidate the claimed design.    Further, it appears that Wal-Mart has combed the

globe, even going as far as China,[8] to find invalidating art, but has been unable to do so.

Rule 56(f) discovery should not be granted to allow Wal-Mart to conduct a fishing

expedition for prior art that may be similar to Reebok's claimed design.  The First Circuit has

held that a request for further discovery under 56(f):

> should articulate some plausible basis for the party's belief that
> specified 'discoverable' material facts likely exist which have not
> yet come in from the cold. There must also be shown some
> realistic prospect that the facts can be obtained within a reasonable
> (additional) time, and will, if obtained, suffice to engender an issue
> both genuine and material. Last, the litigant must demonstrate
> good cause for failure to have conducted the discovery earlier.

Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co., 840 F.2d 985, 988 (1st

Cir, 1988).  Wal-Mart has not demonstrated that it has a plausible basis to believe that the further

discovery it requests will result in evidence of invalidity, nor has Wal-Mart indicated that it has a

reasonable basis to believe that such evidence can be obtained in a reasonable time, nor why

such evidence has not been obtained to date.  Delaying this action in the hope that Wal-Mart will

some day find evidence to support its case would not only cause additional expense for the

parties, but would be wasteful of this Court's resources.

Reebok is, therefore, entitled to summary judgment of validity.  Wal-Mart's motions for

summary judgment of invalidity must be denied.

## VI.    CONCLUSION

The undisputed evidence establishes that the Oxide shoes have the same overall

ornamental appearance as the design protected by the Reebok patent and the Oxide shoes have

---

[8] Along with the Declaration of Xu Yiping, Wal-Mart submitted to the Court ten pages of shoe designs provided by the Shanghai attorney, yet Wal-Mart only asserts the HYPNO skate illustrated in the Chinese Leather News Publication against the validity of the Reebok patent. Yiping Decl., ¶ 4 and Ex. C; Wal-Mart Memo. II, at 18-19.

misappropriated the novel features of the Reebok patent. Therefore, the Oxide shoes infringe Reebok's patent as a matter of law. Wal-Mart's Motion for Summary Judgment of Noninfringement must be denied and Reebok's Motion for Summary Judgment of Infringement granted. Further, Wal-Mart has failed to provide clear and convincing evidence of invalidity. Wal-Mart's Motion and Cross-Motion for Summary Judgment of Invalidity must be denied, and Reebok's Cross-Motion for Summary Judgment of Validity granted.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.
By its attorneys,

  /s/ David K.S. Cornwell

| | |
|---|---|
| Shepard Davidson (BBO#557082) | David K.S. Cornwell (*pro hac vice*) |
| sdavidson@burnslev.com | Donald R. Banowit (*pro hac vice*) |
| Victoria L. Walton (BBO#650999) | Rae Lynn P. Guest (*pro hac vice*) |
| vwalton@burnslev.com | |
| BURNS & LEVINSON LLP | STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C. |
| 125 Summer Street | 1100 New York Avenue, N.W. |
| Boston, MA 02110-1624 | Washington, D.C. 20005 |
| Telephone: 617-345-3000 | Telephone: 202-371-2600 |
| Facsimile: 617-345-3299 | Facsimile: 202-371-2540 |

Dated: June 9, 2005

408611_1.DOC