UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL LTD., <br><br> Plaintiff, <br> v. <br><br> WAL-MART STORES, INC., <br><br> Defendant. | Civil Action No. 04-12668 (RGS) (RBC) <br> Honorable Richard G. Stearns |

PLAINTIFF REEBOK'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT WAL-MART'S MOTION TO STRIKE AND
MOTION FOR LEAVE TO FILE A REPLY BRIEF

Plaintiff Reebok International Ltd. ("Reebok") hereby provides its opposition to Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion to Strike certain of the declarations and exhibits submitted by Reebok in opposition to Wal-Mart's cross-motions for summary judgment of patent invalidity and noninfringement. Reebok also provides herein its opposition to Wal-Mart's Motion for Leave to file a reply to Reebok's opposition to Wal-Mart's cross-motions for summary judgment of patent invalidity and noninfringement. For the reasons discussed herein, Wal-Mart's motions must be denied.

Wal-Mart's two page Motion fails to specify which of the declarations and exhibits submitted by Reebok that Wal-Mart is requesting the Court strike or its basis for such request. Rather, Wal-Mart requires that Reebok and the Court make a detailed review of Wal-Mart's unauthorized Reply Brief to ascertain the scope of Wal-Mart's Motion to Strike. Wal-Mart's arguments in support of its Motion to Strike are so intertwined with its Reply Brief that it is difficult, if not impossible, to separate such arguments from the remainder of Wal-Mart's Reply Brief. As a result, Wal-Mart's filing amounts to nothing more than a clever attempt to avoid the

1

restriction under Local Rule 7.1(b)(3) against the filing of a Reply Brief without leave of court and restate its previously presented arguments in support of its cross-motions for summary judgment of patent invalidity and noninfringement. Nevertheless, even considering the arguments made in Wal-Mart's Reply Brief, Wal-Mart has presented no new arguments that would necessitate the granting of its leave to file a Reply Brief and Wal-Mart fails to present a valid basis for striking any of the declarations and exhibits submitted by Reebok. Wal-Mart's motions must be denied.

I. REEBOK IS PERMITTED TO SUBMIT TO THE COURT EXHIBITS FROM THE PROSECUTION HISTORY OF THE REEBOK PATENT AND DRAWING GUIDES TO ASSIST THE COURT IS DETERMINING THE SCOPE OF THE CLAIMED DESIGN

Wal-Mart contends that the design claimed in Reebok's patent includes a concave curvature in the center of the claimed midsole portion. Reebok contends that the center of the claimed midsole portion is flat. This dispute is a question of law for the Court to decide.

Wal-Mart contends that the evenly spaced hash lines depicted in the center of the claimed midsole portion are indicative of curvature. Reebok contends that the evenly spaced hash lines in the center of the claimed midsole portion are indicative of a flatness (no curvature). Again, resolution of this dispute is a question of law.

The Federal Circuit has held that construction of a patent claim requires reviewing the specification of the patent and its prosecution history. <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The prosecution history of the Reebok patent also includes U.S. Application No. 10/607,541 ("the '541 application") to which the Reebok patent claims priority. The Court is entitled to take judicial notice of the contents of the '541 application including Fig. 7 thereof, provided by Reebok as Exhibit I. <u>Fed. Rules Evid</u>. Rule 201. As stated in the Cornwell Declaration, Exhibit I is a true and accurate copy of Fig. 7 of the '541

application as filed at the U.S. Patent and Trademark Office on June 27, 2003. Further, considering the quality of the reproduced photograph in Fig. 7 of the '541 application, Reebok also provided a copy of the color photograph reproduced in Fig. 7 of the '541, as Exhibit J. As stated in the Cornwell Declaration, Exhibit J is a true and accurate color copy of the photograph used in Fig. 7 of the '541 application. Exhibits I and J have been provided to aid in the Court's claim construction analysis. Accordingly, Exhibits I and J should not be stricken.

Routinely, Courts rely on technical and general-usage dictionaries and learned treatises to assist in claim construction in utility patent cases where words, rather than drawings, define the scope of the claims. See e.g. Tex. Digital Sys., Inc. v. Telegenix, Inc., 308 F.3d 1193, 1204 (Fed.Cir.2002). Such resources are merely guides to help the Court "come to the proper understanding of the claims." Vitronics, 90 F.3d at 1584. However, the use of extrinsic evidence, including expert testimony, while permitted, if considered by the Court, should not be used to contradict the plain meaning of the claimed invention apparent from the intrinsic evidence, i.e., the claim itself, the specification and the prosecution history. Id.

Much like a dictionary, the United States Patent Office publication Guide for Preparation of Patent Drawings (June 2002) ("USPTO Guide") and the text of Chapter 7 of Jack Lo et al., How to Make Patent Drawings Yourself: Prepare Formal Drawings Required by the U.S. Patent Office, 3d edition, NOLO Publishing (2002) ("Lo and Pressman Book") have been provided by Reebok to aid the Court in determining the proper construction of the Reebok patent, including the determination of the meaning of the vertical hash lines used in Fig. 1 of the Reebok patent. As supported by the USPTO Guide and the Lo and Pressman Book, the vertical hash lines in the central portion of the claimed design are evenly spaced, to illustrate flatness, not curvature. Quite clearly, page 7/13 of the Lo and Pressman Book states that "Shade lines gradually increase

3

in spacing from the edge inward on a round object or curved surface," while it refers to "Equally spaced straight shade lines on lower right portion of flat top." Cornwell Decl. II, Ex. L, at 7/13. The USPTO guide also exhibits the use of unevenly spaced line shading to illustrate curvature, while flat areas are illustrated with hash lines that are evenly spaced. See e.g., Cornwell Dec. II, Ex. K, at A4-23.

These guides are provided simply to assist the Court in its claim construction analysis. They are not submitted to prove a material fact at issue in this case. As discussed above, claim construction is a question of law, not a question of fact. Reebok submits that the USPTO Guide and Lo and Pressman Book provide clearly unbiased insights on the use of line shading in drawings submitted to the U.S. Patent and Trademark Office, much like a dictionary does for a word in a utility patent case. Wal-Mart's retained "expert[1]," Mr. Sindler, does not appreciate in his analysis the practices disclosed in either of these references. Notwithstanding Mr. Sindler's likely bias, the contrary statements in the USPTO Guide and Lo and Pressman Book draw into question the weight that the Court should afford Mr. Sindler's testimony. Accordingly, Exhibits I and J should not be stricken. Of course, neither Reebok's references nor the Declaration of Mr. Sindle need be relied on by the Court, if the Court is able to construe the claimed design based solely on the claim, the specification and the prosecution history of the Reebok patent.

---

[1] Despite labeling Mr. Sindle as an "expert" in their Reply Brief, to date, the credentials and credibility of Mr. Sindle have not been provided by Wal-Mart. Wal-Mart has not taken any measure to ensure that Mr. Sindle is any more or less credible than the individuals that authored Reebok's references. In fact, the potential that Mr. Sindle has likely performed work for Wal-Mart and/or its attorneys in the past and may be hopeful for similar work in the future draws Mr. Sindle's credibility into question, whereas Reebok's authorities are clearly unbiased.

**II.   REEBOK IS PERMITTED TO PROVIDE NOTATED EXCERPTS OF THE FIGURES OF THE REEBOK PATENT TO ASSIST THE COURT IS DETERMINING THE SCOPE OF THE CLAIMED DESIGN**

Wal-Mart also criticizes Reebok's Opposition Memorandum as focusing only on a portion of the shoe shown in Fig. 1 of Reebok's patent. However, Reebok's Memorandum in Opposition to Wal-Mart's Motion for Summary Judgment of Noninfringement and Invalidity is not, as Wal-Mart contends, deceptive. Reebok's Opposition Memorandum focuses the Court's attention only on a portion of Fig. 1 of the Reebok patent, because only a portion of the figure is claimed. The claimed design is the portion of the midsole, of the shoe depicted in Fig. 1 of the Reebok patent, provided in full lines. Fig. 1 of the Reebok patent is provided in its entirety below for the Court's convenience.[2] The remainder of the shoe depicted in Fig. 1, including the remaining portion of the midsole, is not claimed, but is provided in broken lines as an indication of the visible environmental structure in which the claimed invention can be found.



FIG.1

---

[2] Contrary to Wal-Mart's contention, the Court has had an opportunity to review the figures of the Reebok patent in their entirety. True and accurate copies of the Reebok patent at issue in this matter were submitted by Reebok as Exhibit A to Reebok's Complaint (paper no. 1) and as Exhibit A to the Declaration of David K.S. Cornwell filed in support of Reebok's Opposition to Wal-Mart's first Motion for Summary Judgment of Invalidity (paper no. 18).

There is no requirement that the design claimed in the Reebok patent continue around the entire perimeter of the heel portion of the midsole. Indeed, as the claim language suggests, the claimed design is for only a *portion* of a midsole. The dot-dash-dot lines around the claimed design show that the entire design can be seen in Fig. 1. The claimed portion of Fig. 1 is provided below, enlarged for the Court's convenience. The rear of the shoe, including the rear of the midsole, is not shown in Fig. 1, and is not part of the claimed design.



The illustrations in Reebok's Opposition Memorandum that focus on the claimed portion of Fig. 1 of the Reebok patent, omitting the unclaimed environmental structure, should not be stricken. Additionally, the notations added to the illustrations in Reebok's brief are simply to aid the Court with respect to Reebok's arguments. Such notations also must not be stricken.

### III. WAL-MART HAS NOT SHOWN THAT THE CHINESE LEATHER NEWS PUBLICATION IS PRIOR ART TO THE REEBOK PATENT OR THAT THE REEBOK PATENT IS ANTICIPATED BY THE HYPNO SKATE DISCLOSED IN THE CHINESE LEATHER NEWS PUBLICATION

Wal-Mart also objects to the Declaration of Robert Rich filed in support of Reebok's Opposition to Wal-Mart's Motion for Summary Judgment of Noninfringement and Invalidity as insufficient to swear behind the Chinese Leather News Publication provided in Wal-Mart's Motion for Summary Judgment. However, the Rich Declaration was not provided as conclusive

evidence of the date of invention of the design claimed in the Reebok patent. Rather, the Rich declaration was provided simply to show that Wal-Mart has not established that the Chinese Leather News Publication is prior art to the Reebok patent.

Wal-Mart's Motion for Summary Judgment provides no evidence that the Chinese Leather News Publication was published before the date of invention by Reebok. This fact is an essential element of Wal-Mart's invalidity case. Publications less than a year before the earliest priority date of a patent application (the earliest filing date of the priority application) can only be prior art if before the date of invention. 35 U.S.C. § 102(a) ("[a] person shall be entitled to a patent unless…the invention was … described in a publication in this or a foreign country, before the invention thereof by the applicant for patent."). For at least this reason, summary judgment of invalidity must be denied. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)("rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").[3]

In fact, Wal-Mart provides no evidence as to the date of publication of the Chinese Leather News Publication.[4] Rather, Wal-Mart has provided only the statement of Xu Yiping that the Chinese Leather News Publication "dated January 28, 2003, is prior art to the '127 patent." See Decl. of Yiping at ¶¶ 6. Without personal knowledge as to the date of invention of the design claimed in the Reebok patent and/or the date of publication of the Chinese Leather News Publication, Mr. Yiping cannot possibly testify as to whether the Chinese Leather News

---

[3] In the unlikely event that the Court is inclined to agree with Wal-Mart that the Reebok patent is anticipated by the Chinese Leather News Publication, the Rich Declaration at least is sufficient to raise an issue of fact as to whether the Chinese Leather News Publication is actually prior art to the Reebok patent and, as such, summary judgment of invalidity is improper.

[4] For example, Wal-Mart has not provided a statement from the publisher of the Chinese Leather News Publication attesting to the publication date.

Publication is prior art to the Reebok patent. Wal-Mart has not shown that Mr. Yiping has such personal knowledge. Accordingly, to the extent that Wal-Mart relies on Mr. Yiping's statement alone, Wal-Mart has not met its burden of establishing the existence of an element essential to its invalidity case, namely that the Chinese Leather News Publication is prior art to the Reebok patent. As such, Wal-Mart's Motion for Summary Judgment of Invalidity must be denied.

Nevertheless, as discussed in Reebok's Opposition Memorandum, an inquiry as to the availability of the Chinese Leather News Publication as prior art under 35 U.S.C. § 102(a) is not necessary. See Reebok's Memorandum in Opposition to Wal-Mart's Cross-Motions for Summary Judgment of Patent Invalidity and Noninfringement at 16-18. The skate shown in the Chinese Leather News Publication bearing the trademark "HYPNO" ("the HYPNO skate") is not identical in all material aspects to the Reebok patent. The HYPNO skate does not teach each and every feature of the claimed design and does not provide the same overall appearance as the claimed design. See Bernhardt, 386 F.3d at 1378. Wal-Mart has not objected to the inclusion of a physical sample of the HYPNO skate as Exhibit M to the Cornwell Declaration. While it is the publication and not the shoe itself which is being asserted as prior art to the Reebok patent and, as such, the publication itself must teach each and every feature of the invention, by reference to the actual product, the Court can see what cannot be seen in the publication, namely that the front portion of the midsole is not rounded as shown in the midsole portion claimed in the Reebok patent. In light of the differences between the design of the Reebok patent and the HYPNO skate, a reasonable jury could not conclude that Wal-Mart has met its burden of showing anticipation by clear and convincing evidence.

## IV.  CONCLUSION

Wal-Mart has presented no new arguments that would necessitate the granting of its leave to file a Reply Brief and has failed to present a valid basis for striking any of the declarations and exhibits submitted by Reebok in opposition to Wal-Mart's cross-motions for summary judgment of patent invalidity and noninfringement.  Wal-Mart's motions must be denied.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.
By its attorneys,

   /s/ David K.S. Cornwell   

| | |
|---|---|
| Shepard Davidson (BBO#557082) | David K.S. Cornwell (*pro hac vice*) |
| sdavidson@burnslev.com | Donald R. Banowit (*pro hac vice*) |
| Victoria L. Walton (BBO#650999) | Rae Lynn P. Guest (*pro hac vice*) |
| vwalton@burnslev.com | |
| BURNS & LEVINSON LLP | STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C. |
| 125 Summer Street | 1100 New York Avenue, N.W. |
| Boston, MA 02110-1624 | Washington, D.C. 20005 |
| Telephone: 617-345-3000 | Telephone: 202-371-2600 |
| Facsimile: 617-345-3299 | Facsimile: 202-371-2540 |

Dated: July 6, 2005

418309_1.DOC