**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

REEBOK INTERNATIONAL LTD.,

                    Plaintiff,

         v.

WAL-MART STORES, INC.,

                    Defendant.

Civil Action No. 04-12668 (RGS) (RBC)
Honorable Richard G. Stearns

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
REEBOK'S EXPEDITED MOTION FOR CLARIFICATION OF THE
SCOPE OF PERMITTED DISCOVERY

Immediate assistance from the Court is required to resolve a fundamental discovery dispute between the parties over the relevance of testimony and evidence requested by Reebok International Ltd. ("Reebok") of the defendant Wal-Mart, Inc. ("Wal-Mart") and of Leif Ostberg, Inc. ("LJO"), a company which, by Wal-Mart's counsel's admission, is indemnifying Wal-Mart in this action. In response to Reebok's Subpoena Duces Tecum of LJO (attached hereto as Exhibit A), counsel for Wal-Mart, acting on behalf of LJO, has objected to each of Reebok's requests as "not reasonably calculated to lead to the discovery of admissible evidence." Reebok disagrees. Reebok expects that similar objections will be made to the discovery requested by Reebok of Wal-Mart. Accordingly, Reebok respectfully requests that the Court issue an order clarifying the scope of discovery permitted prior to the November 7, 2005 trial.

By this motion, Reebok is not asking this Court to compel LJO to produce documents. Such a motion, if necessary, will be filed by Reebok in the U.S. District Court for the District of New Jersey. Rather, Reebok is asking this Court to clarify that the issues of willfulness, copying and commercial success are relevant inquiries in this litigation and that discovery on such issues

1

is proper prior to the November 7, 2005 trial. An Order from this Court will provide clarity to the parties regarding the scope of permitted discovery prior to the November 7, 2005 trial and, if necessary, will allow Reebok to bring a Motion in the U.S. District Court for the District of New Jersey to compel LJO to respond to Reebok's subpoena and/or a separate Motion in this Court to compel Wal-Mart to respond to Reebok's discovery requests.

On September 20, 2005, Reebok's attorneys conduced a telephonic meet-and-confer conference with Wal-Mart's counsel to resolve the issues presented herein. Wal-Mart's counsel continued to take the position that the issues of willfulness, commercial success and copying were not relevant areas of inquiry prior to the November 7, 2005 trial.

## I.      PROCEDURAL BACKGROUND

On December 20, 2004, Reebok charged Wal-Mart, Inc. ("Wal-Mart") with willful infringement of Reebok's U.S. Patent No. Des. 495,127 to Marvin et al. ("the Reebok patent"). The Reebok patent is directed to the ornamental design for a portion of a midsole.

During a May 17, 2005 scheduling conference before the Court, the parties and the Court agreed that no discovery was to be conducted by either party prior to the Court's Hearing on the parties' pending Summary Judgment Motions. As a result, as of August 5, 2005, no discovery had been conducted in this matter.

During the August 5, 2005 Motion Hearing, the Court denied Wal-Mart's Motion for Summary Judgment of Invalidity and Wal-Mart's Cross-Motion for Summary Judgment of Non-Infringement. The Court also denied Reebok's Motion for Summary Judgment of Infringement and denied as moot Reebok's Motion for summary Judgment of Validity.

Pursuant to the Court's Order of August 5, 2005, trial has been set for this case beginning on November 7, 2005 on the issues of infringement and validity. It is Reebok's understanding

that the Court has decided to bifurcate the issue of damages, pending a decision on the issues of infringement and validity.

To facilitate discovery prior to trial, the parties have agreed to the following discovery schedule.

| Initial Disclosures Due | 9/16/05 |
|---|---|
| Affirmative Expert Reports Due | 10/7/05 |
| Rebuttal Expert Reports Due | 10/21/05 |
| Fact and Expert Depositions Completed | 10/28/05 |
| File Joint Pre-Trial Report | 11/2/05 |

While the parties have been able to reach agreement as to the above discovery schedule, the parties have not been able to agree on the scope of discovery permitted prior to the November 7, 2005 trial. The Court's August 5, 2005 Order placed no restrictions on the scope of discovery allowed by either party. To the extent that the Court believes there should be a limitation on the scope of permitted discovery, Reebok respectfully requests that the Court issue an order clarifying the scope of discovery permitted prior to the November 7, 2005 trial. Reebok recognizes that there are issues, such as damages, that are not the subject of the November 7, 2005 trial and, as such, may require additional discovery after the November 7, 2005 trial. However, the mere fact that discovery sought by either party may be relevant to the issue of damages should not preclude that party from obtaining such discovery before the November 7, 2005 trial, especially were such discovery is also relevant to the issues to be tried.

A.     PARTY DISCOVERY

On August 23, 2005, Reebok served Document Requests, Interrogatories and Requests for Admission on Wal-Mart (attached hereto as Exhibit C). At that time, Reebok proposed that both sides adhere to a shortened period for response to discovery requests of 15 days from

service, rather than the 30 days provided for by Rule. (See August 23, 2005 letter, attached hereto as Exhibit D). Further, Reebok proposed that any documents to be produced pursuant to such discovery requests be produced and/or made available for inspection no later than 30 days from service of the request. *Id*. In response, on August 30, 2005, Wal-Mart insisted that the parties be allowed the full period of time allotted by the Federal Rules of Civil Procedure to respond to discovery requests. (See August 30, 2005 letter, attached hereto as Exhibit E). To date, Wal-Mart has not responded to Reebok's discovery requests. Reebok anticipates that Wal-Mart will provide such responses no later than September 22, 2004.

On September 9, 2005, Wal-Mart served Interrogatories and Document Demands on Reebok. (See September 9, 2005 email, attached hereto as Exhibit F). Pursuant to the Federal Rules of Civil Procedure, Reebok intends to respond to such requests no later than October 10, 2005.

At Wal-Mart's request, Reebok has agreed to produce the inventors of the Reebok patent, William Marvin and Brian Christensen, for deposition in Boston on October 7, 2005 at 9:30 AM.

### B.    THIRD PARTY DISCOVERY

On August 29, 2005, Reebok served a third party 30(b)(6) subpoena on LJO. (See Exhibit A). Wal-Mart's attorneys agreed to accept service on behalf of LJO and have indicated that they intend to defend LJO in this matter.

In a letter dated August 30, 2005 (attached hereto as Exhibit E), counsel for Wal-Mart argued that "there appears to be no relevance for Reebok to conduct the deposition of . . . the third parties responsible for sourcing shoes [to Wal-Mart]." In response, Reebok explained that such discovery was necessary to respond to Wal-Mart's planned testimony as to the validity of the Reebok patent. (See Letter of August 30, 2005, attached hereto as Exhibit G). Thereafter, during a telephone conversation between the parties' counsel on September 6, 2005, counsel for

Wal-Mart, on behalf of LJO, indicated that they planned to file a Motion to Quash Reebok's subpoena of LJO. However, on September 9, 2005, Wal-Mart's counsel formally responded to the subpoena of LJO, Inc. objecting to each of Reebok's requests (attached hereto as Exhibit B). During a telephone conversation between the parties' counsel on September 9, 2005, counsel for Wal-Mart indicated that they decided not to file a Motion to Quash Reebok's subpoena of LJO and instead argued that Reebok would need to file a Motion to Compel to obtain such discovery. To date, Wal-Mart's counsel has not identified which individuals at LJO are most qualified to testify as to the matters requested of Reebok and has not agreed to produce anyone for deposition in response to Reebok's subpoena.

## II.     FACTUAL BACKGROUND

The Reebok patent is directed to the ornamental design for a portion of the midsole of its DMX Reflex product. The DMX Reflex product was released publicly by Reebok in 2003.

Reebok first became aware of the accused shoes when they appeared in an advertisement in the April 5, 2004 issue of Footwear News (attached hereto as Exhibit H). As shown in the advertisement, the midsole design of the accused shoe is nearly identical to the midsole design of the DMX Reflex product.

On April 15, 2004, Reebok contacted Mary Gleason of Group 3 Design regarding the accused shoes. (See April 15, 2004 letter, attached hereto as Exhibit I). In response, Group 3 Design informed Reebok that Group 3 Design had not designed, manufactured, sold or imported the accused shoes. Further, Group 3 Design informed Reebok that the accused shoes were a product of International Footwear Holdings (IFH), located at 410 Hamburg Turnpike, Wayne, NJ 07470. Reebok's letter to Group 3 Design was forwarded to Barbara Koetsier of LJO, Inc., also located at 410 Hamburg Turnpike, Wayne, NJ 07470. (See April 26, 2004 letter, attached hereto as Exhibit J).

Less than a week later, Reebok received a letter from the attorney's for IFH. (See April 30, 2004 letter, attached hereto as Exhibit K). This letter was copied to Barbara Koetsier of LJO, Inc. as well as Peter Cobrin (attorney for Wal-Mart in this action) and Mary Gleason of Group 3 Design.

Based on these communications, it is believed that LJO, doing business as IFH, is the company responsible for sourcing the accused shoes to Wal-Mart.

The Reebok patent issued on August 31, 2004. A copy of the issued patent was forwarded to counsel for IFH on September 7, 2004. (See September 7, 2004 letter, attached hereto as Exhibit L). A copy of the issued patent was also forwarded to Wal-Mart on September 7, 2004. (See September 7, 2004 letter, attached hereto as Exhibit M). On September 14, 2004, Reebok received a letter from Peter Cobrin (counsel for Wal-Mart in this action) on behalf of IFH. (See September 14, 2004 letter, attached hereto as Exhibit N). Mr. Cobrin indicated that the accused shoes were no longer being manufactured and that their design had been discontinued. Further, Mr. Cobrin represented that the manufacture of the accused shoes was stopped before the issuance of the Reebok patent. On information and belief, however, Wal-Mart continues to sell the accused shoes today.

## III. ACTIVITIES PRIOR TO THE ISSUANCE OF THE REEBOK PATENT ARE RELEVANT

As discussed above, counsel for Wal-Mart, acting on behalf of LJO, has objected to each of Reebok's discovery requests of LJO as "not reasonably calculated to lead to the discovery of admissible evidence." Further, Wal-Mart's attorneys have objected to requests 3-11, 13, 14 and 16-28 of LJO on the basis that "activities prior to patent issuance are not relevant." There is no basis in the law for these objections. As discussed below, the discovery requested by Reebok,

including discovery as to activities prior to the issuance of the Reebok patent, is likely to lead to evidence admissible at the November 7, 2005 trial as to the validity of the Reebok patent.

### A.    OBJECTIVE    EVIDENCE    OF    NONOBVIOUSNESS    INCLUDES COMMERCIAL SUCCESS AND COPYING BY OTHERS

While the question of patent validity is a question of law, the Supreme Court in *Graham v. John Deere Co.* established four factual inquiries that underlie the determination of patent validity under 35 U.S.C. § 103(a) (obviousness).  383 U.S. 1 (1966).  These inquiries include (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) the objective evidence of nonobviousness.  *Id.* at 17-18.  As to the fourth inquiry, the factors recognized as objective evidence of nonobviousness, also referred to as secondary considerations, include commercial success and copying by others.  *See  Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1323 (Fed. Cir. 2004).  "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness. Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record." *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272 (Fed. Cir. 2000) (citations omitted).

The Federal Circuit has held that "the [commercial] success of an infringing product is considered to be evidence of the commercial success of the claimed invention."  *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). "[C]opying requires the replication of a specific product. This may be demonstrated either through internal documents; direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a virtually identical

replica; or access to, and substantial similarity to, the patented product (as opposed to the patent)." *Iron Grip*, 392 F.3d at 1323 (citations omitted).

In *Advanced Display Systems*, the Federal Circuit remanded a lower court's decision for a new trial on the issue of obviousness where the accused infringer failed to turn over evidence of secondary considerations, including evidence of copying. 212 F.3d. at 1284-87. Only through discovery of a third party, was the patentee able to obtain such evidence. *Id*. at 1286.

### B. THE DESIGN AND MANUFACTURE OF THE ACCUSED SHOES BY LJO IS RELEVANT

Wal-Mart is not the manufacturer of the accused shoes. Upon information and belief, as discussed above, the accused shoes were sourced to Wal-Mart by LJO, doing business as IFH. As such, Wal-Mart is unlikely to have first-hand knowledge of the design and/or manufacture of the accused shoes. More particularly, Wal-Mart is unlikely to have first-hand knowledge as to whether the accused shoes were copied from the design of Reebok's DMX Reflex product. LJO, on the other hand, is likely to have access to such information or at least have access to information that is likely to lead to evidence of whether the accused shoes were copied from the design of Reebok's DMX Reflex product.

Request Nos. 3-6 of Reebok's subpoena of LJO seek documents and things which refer or relate to the design and/or manufacture of the accused shoes.

Additionally, as discussed above, while Wal-Mart's attorney has represented that the manufacture of the accused shoes was discontinued prior to the issuance of Reebok's patent, Wal-Mart continues to sell such shoes. During the submission of the parties Joint Proposed Pre-trial Schedule on May 11, 2005, counsel for Wal-Mart represented that Wal-Mart is indemnified by LJO for such infringing sales.

Request Nos. 1 and 2 of Reebok's subpoena of LJO seek documents and things which refer or relate to the indemnification agreement between LJO/IFH and Wal-Mart. Response to these requests may also lead to admissible evidence of copying.

Request Nos. 11-17 and 23-28 of Reebok's subpoena of LJO seek documents and things which refer or relate to Reebok's DMX Reflex shoe, the Reebok patent and/or the patent application from which it issued; any comparison of the accused shoes to the products sold by Reebok; any analysis done with respect to the validity, enforceability and/or infringement of the '127 patent; opinions of counsel requested or obtained by LJO, IFH and/or Wal-Mart concerning the Reebok patent and/or the accused shoe; as well as all documents which refer or relate to decisions by LJO, IFH and/or Wal-Mart to continue to make, use, sell and/or offer for sale the accused shoes after the issuance of the Reebok patent; and any communications involving LJO, IFH and/or Wal-Mart regarding the Reebok patent, the accused shoes and/or this lawsuit. Response to these requests may also lead to admissible evidence of copying.

### C.     SALES OF THE ACCUSED SHOES BY LJO IS RELEVANT

Upon information and belief, the accused shoes were sourced to Wal-Mart by IFH. Considering that the accused shoes may also have been sourced to other retailers by IFH, Wal-Mart is unlikely to have first-hand knowledge as to all sales of the accused shoes and, as such, Wal-Mart is unlikely to have complete first-hand knowledge of the commercial success of the accused products. LJO, on the other hand, is likely to have access to such information or at least have access to information that is likely to lead to evidence of the commercial success of the accused products.

Request Nos. 7-10 and 18-22 of Reebok's subpoena of LJO seek documents and things relating to the sale and offer for sale of the accused shoes as well as the sourcing of the accused shoes to Wal-Mart.

## IV.    EVIDENCE AS TO THE ISSUE OF WILLFULNESS IS RELEVANT

While not specifically addressed by the Court's August 5, 2005 Order, the issue of willfulness is so intertwined with the issues of infringement and validity that a separate trial on the issue of willfulness is unwarranted. *See Nitinol Medical Technologies, Inc. v. AGA Medical Corp.*, 135 F.Supp.2d 212, 216 (D. Mass 2000) ("many courts have found that the issue of willfulness is inextricably intertwined with issues of liability"). Accordingly, the scope of the November 7, 2005 trial, should include, in addition to the issues of validity and infringement, an inquiry as to whether Wal-Mart's infringement was willful.

Much of the discovery sought by Reebok of LJO and Wal-Mart is also relevant to the issue of willfulness, such as documents and things which refer or relate to the indemnification agreement between LJO/IFH and Wal-Mart, as well as documents and things which refer or relate to Reebok's DMX Reflex shoe, the Reebok patent and/or the patent application from which it issued; any comparison of the accused shoes to the products sold by Reebok; any analysis done with respect to the validity, enforceability and/or infringement of the '127 patent; opinions of counsel requested or obtained by LJO, IFH and/or Wal-Mart concerning the Reebok patent and/or the accused shoe; all documents which refer or relate to decisions by LJO, IFH and/or Wal-Mart to continue to make, use, sell and/or offer for sale the accused shoes after the issuance of the Reebok patent; and any communications involving LJO, IFH and/or Wal-Mart regarding the Reebok patent, the accused shoes and/or this lawsuit. Responses to these requests may also lead to admissible evidence on the issue of willfulness.

## V.    CONCLUSION

Reebok should be given an opportunity to take discovery reasonably calculated to lead to admissible evidence of nonobviousness, including evidence of commercial success and copying by others. Wal-Mart's attorneys' refusal to provide such discovery, on behalf of LJO, is

unwarranted. The Court's August 5, 2005 Order placed no restrictions on the scope of discovery allowed by either party. To the extent that the Court believes there should be a limitation on the scope of permitted discovery, Reebok respectfully requests that the Court issue an order clarifying the scope of discovery permitted prior to the November 7, 2005 trial. Considering the limited time available for discovery prior to the November 7, 2005 trial, Reebok's need for a resolution of this dispute is urgent. An expedited Order from this Court clarifying the scope of discovery permitted prior to the November 7, 2005 trial and confirming the relevance of Reebok's requested discovery will greatly expedite the discovery process.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.
By its attorneys,

_____
Shepard Davidson (BBO#557082)
sdavidson@burnslev.com
Victoria L. Walton (BBO#650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

David K.S. Cornwell (*pro hac vice*)
Donald R. Banowit (*pro hac vice*)
Rae Lynn P. Guest (*pro hac vice*)

STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-2600
Facsimile: 202-371-2540

Dated:    9/21/05

442760_1.DOC

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

**REEBOK INTERNATIONAL LTD.**

v.

SUBPOENA IN A CIVIL CASE

**WAL-MART STORES, INC.**

CASE NUMBER:    **1:04-cv-12668-RGS**
**Pending in the United States District Court, District of Massachusetts (Boston)**

TO:    **LJO, INC.**

☐   YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.    **SEE EXHIBIT A ATTACHED HERETO**

| PLACE OF DEPOSITION<br>**DOERNER & GOLDBERG, INC.**<br>**5 Becker Farm Rd., 4th Floor, Roseland, NJ 07068** | DATE AND TIME<br>**September 19, 2005 at 9:00 a.m.** |
|---|---|

☒   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**SEE EXHIBIT B ATTACHED HERETO**

| PLACE    **DOERNER & GOLDBERG, INC.**<br>**5 Becker Farm Rd., 4th Floor**<br>**Roseland, NJ 07068** | or STERNE, KESSLER, GOLDSTEIN & FOX<br>**1100 New York Ave., NW**<br>**Washington, DC 20005** | DATE AND TIME<br>**September 12, 2005 at 9:00 a.m.** |
|---|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE<br>8-29-05 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Donald R. Banowit (Attorney for Plaintiff), STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.,**
**1100 New York Ave., NW, Washington, D.C. 20005, Tel: (202) 371-2600, Fax: (202) 371-2540**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Next Page)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                      DATE

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

**Rule 45, Federal Rules of Civil Procedure, Parts C & D**

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A

### Definitions And Instructions

As used herein, the following terms have the meanings stated:

(A)     "Reebok" shall mean the entity doing business as Reebok International Ltd., organized and existing under the laws of the Commonwealth of Massachusetts, having its principal place of business at 1895 J.W. Foster Boulevard, Canton, Massachusetts 02021; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(B)     "Wal-Mart" shall mean the entity doing business as Wal-Mart Stores, Inc., organized and existing under the laws of the state of Delaware, having its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(C)     "LJO" shall mean the entity doing business as LJO, Inc., having its principal place of business at 401 Hamburg Turnpike, Wayne, NJ 07470; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly

controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(D)   "IFH" shall mean the entity doing business as International Footwear Holdings, Inc., having its principal place of business at 401 Hamburg Turnpike, Wayne, NJ 07470; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(E)   "Accused Shoe" shall mean any shoes made, used, sold and/or offered for sale by Wal-Mart which are referred to by the model name "OXIDE" and/or which has a sole having the same general appearance (regardless of color) as at least the heel midsole portion of the shoes in Exhibits C-E attached hereto.

(F)   "The '127 Patent" shall mean U.S. Patent No. Des. 495,127.

(G)   "Document" shall mean the original and all copies of any written, graphic, printed, typed, photocopied, photographic, or illustrative material of any kind or character, and any recorded material however produced or reproduced, regardless of whether approved, signed, sent, received, redrafted, or executed, prepared by or for you, in your possession, custody, or control. The term "document" includes, but is not limited to, the following: contracts, court pleadings, papers and forms filed with courts or other governmental bodies,

diaries, calendars, appointment books, desk pads, correspondence, communications, file folders, telegrams, statistics, teletypes, memoranda, messages, notices, notes, records, studies, surveys, reports, summaries, jottings, books, newspaper or magazine articles, analyses, drawings, graphs, charts, sketches, viewgraphs, photographs, film, videotapes, microfilms, slides, x-rays, magnetic and electronic records, tapes, discs, CD-ROM or other storage media, computer disks, computerized records, electronic messages, electronic mail, e-mail, phone or voice mail, sound recordings, lists, minutes and other formal or informal memoranda of meetings, transcriptions of verbal conversations or statements however made, checks, and entries in books of account relating to or referring in any way to the subject matter of the request, and copies of documents that are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto). The term "document" shall also include any and all drafts or revisions of each document. The term "document" shall also mean any physical specimen or other tangible item. The term "document" shall include, but not be limited to, "writings and recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence and "documents" as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

(H)     "Person" shall mean any natural person, firm, association, partnership, government agency or other entity and its officers, directors, partners, employees, representatives and agents.

(I)     The term "relating to" or any derivation thereof shall mean consisting of, referring to, constituting, reflecting, supporting, undermining, contradicting, prepared in connection with, used in preparation for, or being in any way legally, logically or factually

connected with the matter discussed.

(J)   "Communication" shall mean or refer to all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, advertisements, or other forms of information exchanged, whether oral, electronic or written.

## Topics to be covered at Deposition

LJO, Inc. ("LJO") is requested to designate one or more officers, directors, managing agents or other persons most qualified to testify on its behalf as to the following matters:

1.   The design and manufacture of the accused shoe.

2.   The supply chain of the accused shoe, including, but not limited to, the suppliers, distributors, buying agents, factories, intermediaries and/or other parties involved in Wal-Mart's acquisition of the accused shoe.

3.   The documents produced in response to the requests in Exhibit B of this Subpoena.

## EXHIBIT B

### Definitions And Instructions

As used herein, the following terms have the meanings stated:

(A)    "Reebok" shall mean the entity doing business as Reebok International Ltd., organized and existing under the laws of the Commonwealth of Massachusetts, having its principal place of business at 1895 J.W. Foster Boulevard, Canton, Massachusetts 02021; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(B)    "Wal-Mart" shall mean the entity doing business as Wal-Mart Stores, Inc., organized and existing under the laws of the state of Delaware, having its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(C)    "LJO" shall mean the entity doing business as LJO, Inc., having its principal place of business at 401 Hamburg Turnpike, Wayne, NJ 07470; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly

controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(D)    "IFH" shall mean the entity doing business as International Footwear Holdings, Inc., having its principal place of business at 401 Hamburg Turnpike, Wayne, NJ 07470; any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with it, including any and all predecessors thereof; as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on its behalf.

(E)    "Accused Shoe" shall mean any shoes made, used, sold and/or offered for sale by Wal-Mart which are referred to by the model name "OXIDE" and/or which has a sole having the same general appearance (regardless of color) as at least the heel midsole portion of the shoes in Exhibits C-E attached hereto.

(F)    "The '127 Patent" shall mean U.S. Patent No. Des. 495,127.

(G)    "Document" shall mean the original and all copies of any written, graphic, printed, typed, photocopied, photographic, or illustrative material of any kind or character, and any recorded material however produced or reproduced, regardless of whether approved, signed, sent, received, redrafted, or executed, prepared by or for you, in your possession, custody, or control.  The term "document" includes, but is not limited to, the following: contracts, court pleadings, papers and forms filed with courts or other governmental bodies,

- 2 -

diaries, calendars, appointment books, desk pads, correspondence, communications, file folders, telegrams, statistics, teletypes, memoranda, messages, notices, notes, records, studies, surveys, reports, summaries, jottings, books, newspaper or magazine articles, analyses, drawings, graphs, charts, sketches, viewgraphs, photographs, film, videotapes, microfilms, slides, x-rays, magnetic and electronic records, tapes, discs, CD-ROM or other storage media, computer disks, computerized records, electronic messages, electronic mail, e-mail, phone or voice mail, sound recordings, lists, minutes and other formal or informal memoranda of meetings, transcriptions of verbal conversations or statements however made, checks, and entries in books of account relating to or referring in any way to the subject matter of the request, and copies of documents that are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto). The term "document" shall also include any and all drafts or revisions of each document. The term "document" shall also mean any physical specimen or other tangible item. The term "document" shall include, but not be limited to, "writings and recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence and "documents" as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

(H)    "Person" shall mean any natural person, firm, association, partnership, government agency or other entity and its officers, directors, partners, employees, representatives and agents.

(I)    The term "relating to" or any derivation thereof shall mean consisting of, referring to, constituting, reflecting, supporting, undermining, contradicting, prepared in connection with, used in preparation for, or being in any way legally, logically or factually

connected with the matter discussed.

(J)    "Communication" shall mean or refer to all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, advertisements, or other forms of information exchanged, whether oral, electronic or written.

In responding to the following document requests, you are requested to furnish all documents that are in your possession, custody, control or otherwise available to you, including all documents in the possession of your attorneys, agents, investigators, representatives or anyone acting in cooperation or in concert with you or on your behalf, including experts consulted or retained.

If a request cannot be responded to in full, it should be responded to in the fullest extent possible, with an explanation as to why the remainder cannot be responded to and a statement as to the nature of the documents that cannot be furnished.

## Categories of Information and Documents to be Produced

1.    All documents and things which refer or relate to any indemnification agreement between LJO and Wal-Mart and any other agreements between LJO and Wal-Mart relating to the design, manufacture, offer for sale and sale of the accused shoe, including any drafts of such agreements.

2.    All documents and things which refer or relate to any indemnification agreement between IFH and Wal-Mart and any other agreements between IFH and Wal-Mart relating to the design, manufacture, offer for sale and sale of the accused shoe, including any

drafts of such agreements.

3.      All documents and things which refer or relate to the design and manufacture of the accused shoe, including but not limited to any proposals, samples, drawings and/or prototypes of the accused shoe; any communications between Wal-Mart and the designer(s) of the accused shoe; any communications between LJO and the designer(s) of the accused shoe; and any communications between IFH and the designer(s) of the accused shoe.

4.      All documents and things referring or relating to any discussion, agreement, or other communications between LJO and any other person or entity regarding the design and/or manufacture of the accused shoe.

5.      All documents and things referring or relating to any discussion, agreement, or other communications between IFH and any other person or entity regarding the design and/or manufacture of the accused shoe.

6.      All documents and things which refer or relate to the offer for sale and sale of the accused shoe.

7.      All documents and things referring or relating to any discussion, agreement, or other communications between LJO and any other person or entity regarding the offer for sale and/or sale of the accused shoe.

8.      All documents and things referring or relating to any discussion, agreement, or other communications between IFH and any other person or entity regarding the offer for sale and/or sale of the accused shoe.

9.      Invoices, receipts, order forms and shipping documentation used in connection with the supply of the accused shoe to Wal-Mart.

- 5 -

10.    All catalogs, advertisements, specification sheets or other promotional materials that depict the accused shoe.

11.    All documents and things referring or relating to any comparison of the accused shoe to the products sold by Reebok.

12.    All documents which refer or relate to any search performed or analysis done with respect to the validity, enforceability and/or infringement of the '127 patent.

13.    All documents which refer or relate to all opinions of counsel requested or obtained by LJO, IFH and/or Wal-Mart concerning the '127 patent and/or the accused shoe.

14.    All documents which refer or relate to the '127 patent or to U.S. Patent Application No. 29/203,335.

15.    All documents which refer or relate to any Reebok shoe referred to as a "REFLEX" or "DMX REFLEX" model shoe.

16.    All documents which refer or relate to all decisions by LJO, IFH and/or Wal-Mart to continue to make, use, sell and/or offer to sell the accused shoe after August 31, 2004.

17.    All documents which refer or relate to all decisions by LJO, IFH and/or Wal-Mart to continue to make, use, sell and/or offer to sell the accused shoe after September 7, 2004.

18.    All documents which refer or relate to the sourcing of the accused shoe to Wal-Mart, including but not limited to all proposals, presentations, drawings, specification sheets, prototypes, samples, figures, advertisements or other promotional items provided to Wal-Mart.

19.    All documents which refer or relate to the total and per pair cost to Wal-Mart to acquire the accused shoe.

20.    All documents which refer or relate to importation of the accused shoe into the United States.

21.    All documents which refer or relate to communications between LJO and any suppliers, distributors, buying agents, factories, intermediaries or other parties regarding Wal-Mart's acquisition of the accused shoe.

22.    All documents which refer or relate to communications between IFH and any suppliers, distributors, buying agents, factories, intermediaries or other parties regarding Wal-Mart's acquisition of the accused shoe.

23.    All documents which refer or relate to communications between or on behalf of LJO and Wal-Mart regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of LJO and Wal-Mart and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

24.    All documents which refer or relate to communications between or on behalf of IFH and Wal-Mart regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of IFH and Wal-Mart and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

25.    All documents which refer or relate to communications between or on behalf of LJO and any owner of the STARTER trademark regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of LJO and any owner of the STARTER trademark and/or their attorneys regarding

this lawsuit, the '127 patent and/or the accused shoe.

26.     All documents which refer or relate to communications between or on behalf of IFH and any owner of the STARTER trademark regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of IFH and any owner of the STARTER trademark and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

27.     All documents and things referring or relating to any discussions, agreements, or other communications between LJO and any other person referring or relating in any way to Reebok, the '127 patent, or Reebok's lawsuit against Wal-Mart.

28.     All documents and things referring or relating to any discussions, agreements, or other communications between IFH and any other person referring or relating in any way to Reebok, the '127 patent, or Reebok's lawsuit against Wal-Mart.

EXHIBIT C



## EXHIBIT D



EXHIBIT E



**From:**        "Cobrin, Peter T." <PCobrin@gibbonslaw.com>
**To:**          <dbanowit@skgf.com>
**Date:**        9/9/05 12:05PM
**Subject:**     Response to Subpoena for LJO

Peter T. Cobrin, Esq.
Gibbons, Del Deo, Dolan, Griffinger
 & Vecchione
One Pennsylvania Plaza, 37th Fl.
New York, NY  10119-3701
phone: (212) 649-4700
fax:    (973) 639-8381
email:  pcobrin@gibbonslaw.com

The contents of this message, together with any attachments, are
intended only for the use of the individual or entity to which they are
addressed and may contain information that is legally privileged,
confidential and exempt from disclosure. If you are not the intended
recipient, you are hereby notified that any dissemination, distribution,
or copying of this message, or any attachment, is strictly prohibited.
If you have received this message in error, please notify the original
sender or the Gibbons, Del Deo Help Desk (Tel: 973.596.4500 EXT 3900;
Email: HelpDesk@gibbonslaw.com ) immediately and delete this message,
along with any attachments, from your computer. Thank you.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REEBOK INTERNATIONAL LTD.,<br><br>                Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC.,<br><br>                Defendant. | Case No. 1:04-cv-12668-RGS<br><br>Pending in the United States District<br>Court, District of Massachusetts<br>(Boston) |

## RESPONSE TO SUBPOENA SERVED ON LJO, INC.

To:    Victoria L. Walton (BBO #650999)
        BURNS & LEVINSON LLP
        125 Summer Street
        Boston, Massachusetts 02110-1624

        Donald R. Banowit (*pro hac vice*)
        STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
        1100  New York Avenue, N.W.
        Washington, D.C. 20005

        *ATTORNEYS FOR PLAINTIFF,*
        *REEBOK INTERNATIONAL LTD.*

Leif Ostberg, Inc. ("LJO") by its undersigned counsel, Gibbons, Del Deo, Dolan,

Griffinger & Vecchione, P.C., objects to the subpoena pursuant to Rules 30, 34 and 45 of

the Federal Rules of Civil Procedures as follows:

1

### General Objections

**A.**    LJO objects to these requests to the extent that the same go beyond the scope of relevant discovery.

**B.**    LJO objects to these requests to the extent that they seek to enlarge and or expand the scope of discovery as set forth by Fed. R. Civ. P. 26-37.  Specifically, LJO objects to these requests to the extent that they seek information that is neither relevant nor reasonably calculated to lead to relevant or admissible evidence, as those terms are defined by Fed. R. Civ. P. 26.  LJO will construe and respond to these requests in a manner consistent with the Federal Rules of Civil Procedure and the Local Civil Rules, and not otherwise.

**C.**    LJO objects to each and every request to the extent that the request is unreasonable in terms of the time allowed to respond and permit inspection under Fed. R. Civ. P. 45.  LJO was given less than 14 days to respond.  This is not reasonable.

**D.**    LJO objects to the extent that the information requested could be provided by the defendant in this action.  It is burdensome and harassing to a non-party to seek information from a non-party which should be sought from the party.

**E.**    LJO objects to each and every request to the extent that the "Definitions" and "Instructions" by plaintiff Reebok International Ltd. (collectively, "Reebok") purport to impose burdens on LJO that are inconsistent with, or not otherwise authorized by, the Federal Rules of Civil Procedure or the Local Civil Rules.  LJO will construe and respond to the requests in a manner consistent with the Federal Rules of Civil Procedure and the Local Civil Rules, and not otherwise.

2

**F.**    LJO objects to these requests to the extent that they are harassing, overly broad, onerous, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant evidence, or otherwise lack sufficient precision to permit LJO to formulate a response or provide information.

**G.**    LJO objects to these requests to the extent that they require LJO to provide responses regarding the relationship of person(s) over whom LJO has no control. Likewise, LJO objects to these requests on the ground that they seek information in Reebok's possession but are obtainable from a source more convenient, less burdensome and less expensive.

**H.**    LJO objects to these requests to the extent that they call for information that is subject to the attorney-client privilege, the work-product doctrine or any other applicable privilege or that derives therefrom, in that such material is not properly discoverable.

**I.**    A response to any request, despite any objection made thereto, does not obligate a continued response or a response to other interrogatories or document requests to which objections have been made.

**J.**    A response indicating that no responsive information is known to LJO does not waive any rights to objections, at a later date, should relevant documents or information or other materials become known to LJO.

**K.**    The foregoing general objections are incorporated by reference into <u>each</u> and/or <u>all</u> of the following responses.  However, LJO may reiterate specific objections to the interrogatories without waiver of any objection not specifically stated.

**L.**    LJO reserves the right to supplement responses to these requests.

#1012459 v3
105210-52957

**M.**     A response to any request herein, despite any objection made thereto, does not

obligate a continued response to that request or a response to other interrogatories to

which objections have been made.  To be clear, LJO stands by its objections in the

first instance.

**N.**     LJO objects to the entirety of the subpoena on the grounds that it is improper

under Fed. R. Civ. P. 45(a)(1).

**O.**      LJO objects to the entirety of the subpoena under Fed. R. Civ. P. 45(c)(3)(A) (i)

because the date by which production of documents is requested does not give LJO a

reasonable amount of time to search, gather, inspect, review, copy and produce the

documents requested.  Pursuant to Rule 34 of the Federal Rules of Civil Procedure,

thirty days is a minimum reasonable time afforded to a party in litigation upon which

to demand production of documents.  There is no justification for attempting to

impose a shorter response time when seeking discovery of a non-party to the

underlying litigation.

**P.**     LJO objects to the subpoena to the extent that it imposes obligations or

requirements on LJO which are greater than, inconsistent with and/or different from

those imposed on a non-party to a litigation by the Federal Rules of Civil Procedure.

**Q.**     LJO objects to the document requests in the subpoena to the extent they request

documents that are not within the ownership, possession, or control of LJO.

**R.**     LJO further objects to the document requests in the subpoena to the extent they

are cumulative, unduly burdensome, overly broad, duplicative, oppressive, harassing,

and seek irrelevant or publicly available documents and/or information.  See Fed. R.

Civ. P. 45(c)(3)(A)(iv).  LJO will produce documents responsive to the subpoena to

4

the extent it is able to identify such documents without incurring substantial cost or expending undue effort and to the extent such production is not otherwise objectionable.

**S.**     LJO objects to the document requests as unduly burdensome and cumulative to the extent they seek information within the ownership, possession, or control of one or more parties to the underlying litigation.

**T.**     LJO objects to the document requests because they seek information subject to confidentiality agreements with other persons and that confidentiality has not been waived. See Fed. R. Civ. P. 45(c)(3)(A)(iii).

**U.**     LJO objects to the document requests in the subpoena to the extent they request documents (or portions of documents) and testimony protected by the attorney work-product doctrine, the attorney-client privilege and/or any other applicable privilege or protection under the laws of any applicable jurisdiction and there is no exception or waiver. See Fed. R. Civ. P. 45(c)(3)(A)(iii). Any disclosure of privileged or protected information or documents shall be deemed to be inadvertent unless specifically stated in writing by LJO to the contrary. Any production, inadvertent or otherwise, of any information or documents protected by any privilege or protection shall not be deemed a waiver of that privilege or protection and shall not prejudice LJO's right to object to any subsequent use of such information or documents.

**V.**     LJO objects to the document requests in the subpoena to the extent they are not limited in time.

**W.**     LJO objects to the document requests in the subpoena to the extent they call for irrelevant evidence or evidence not likely to lead to the discovery of relevant

#1012459 v3
105210-52957

evidence, or are otherwise inconsistent with or impose duties and obligations beyond

the requirements of the Federal Rules of Civil Procedure.

Subject to and without waiver of the general objections above, each and every one

of which is incorporated into each and every response below, and subject to LJO's right

to amend and supplement these responses as discovery continues, LJO responds to each

request as follows:

#1012459 v3
105210-52957

## RESPONSES TO CATEGORIES OF INFORMATION
## AND DOCUMENTS TO BE PRODUCED

As a preliminary to the response to each and every request, LJO notes that the issues which are to be tried in this case, at the present time, are infringement and validity. Infringement is determined by comparing the accused product to the claimed design in the patent-in-suit. Validity is determined by comparing the claimed design to the prior art. Information relating to damages or willfulness are not relevant to infringement and validity. Therefore, this information is not reasonably calculated to lead to discovery of admissible evidence.

**Request No. 1.**    All documents and things which refer or relate to any indemnification agreement between LJO and Wal-Mart and any other agreements between LJO and Wal-Mart relating to the design, manufacture, offer for sale and sale of the accused shoe, including any drafts of such agreements.

**Response**:    LJO objects because the request is not reasonably calculated to lead to the discovery of admissible evidence. The relevant comparison for infringement purposes is the accused product to the claimed design. Moreover, any indemnification agreement and the discovery thereof has nothing whatsoever to do with infringement or validity and is therefore not likely to lead to the discovery of admissible evidence.

7

**Request No. 2.**        All documents and things which refer or relate to any

indemnification agreement between IFH and Wal-Mart and any other

agreements between IFH and Wal-Mart relating to the design,

manufacture, offer for sale and sale of the accused shoe, including any

drafts of such agreements.

**Response**:        LJO objects because the request is not reasonably calculated to lead to the

discovery of admissible evidence.  The relevant comparison for infringement purposes is

the accused product to the claimed design.  Moreover, any indemnification agreement

and the discovery thereof has nothing whatsoever to do with infringement or validity and

is therefore not likely to lead to the discovery of admissible evidence.

**Request No. 3.**        All documents and things which refer or relate to the design and

manufacture of the accused shoe, including but no limited to any

proposals, samples, drawings and/or prototypes of the accused shoe; any

communications between Wal-Mart and the designer(s) of the accused

shoe; any communications between LJO and the designer(s) of the

accused shoe; and any communications between IFH and the designer(s)

of the accused shoe.

**Response**:        Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

8

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.

**Request No. 4.**        All documents and things referring or relating to any discussions, agreement or other communications between LJO and any other person or entity regarding the design and/or manufacturer of the accused shoe.

**Response**:        Objection.  To the extent responsive documents even exist, this request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design. Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.

**Request No. 5.**        All documents and things referring or relating to any discussions, agreement or other communications been IFH and any other person or entity regarding the design and/or manufacturer of the accused shoe.

**Response**:        Objection.  To the extent responsive documents even exist, this request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design. Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

9

prior to patent issuance are not relevant. Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.

**Request No. 6.**        All documents and things which refer or relate to the offer for sale and sale of the accused shoe.

**Response**:        Objection. To the extent responsive documents even exist, this request is not reasonably calculated to lead to the discovery of admissible evidence. As to infringement, the comparison is between the accused shoe itself and the claimed design. Based on information, Wal-Mart has produced the accused shoe. Moreover, activities prior to patent issuance are not relevant. Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial. The defendant in this action is Wal-Mart. LJO further objects to this request as this request is proper of Wal-Mart and not a third party. Clearly, the information that is relevant would be related to Wal-Mart's sales and not the sales of LJO. Moreover, any sales by LJO were prior to issuance of the patent-in-suit.

10

**Request No. 7.**        All documents and things referring or relating to any discussion,

agreement, or other communications between LJO and any other person or

entity regarding the offer for sale and/or the accused shoe.

**Response**:        Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

**Request No. 8.**        All documents and things referring or relating to any discussion,

agreement, or other communications between IFH and any other person or

entity regarding the offer for sale and/or the accused shoe.

**Response**:        Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

11

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

**Request No. 9.**       Invoices, receipts, order forms and shipping documentation used in

connection with the supply of the accused shoe to Wal-Mart.

**Response**:       Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

#1012459 v3
105210-52957

**Request No. 10.**    All catalogs, advertisements, specification sheets or other

promotional materials that depict the accused shoe.

**Response**:    Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

**Request No. 11.**    All documents and things referring or relating to any comparison

of the accused shoe to the products sold by Reebok.

**Response**:    Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

#1012459 v3
105210-52957

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

> If this request seeks attorney-client communication or attorney work product, LJO

objects on the basis of privilege.

**Request No. 12.**     All documents which refer or relate to any search performed or

> analysis done with respect to the validity, enforceability and/or

> infringement of the '127 patent.

**Response**:     Objection.  To the extent responsive document even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Any of the other

information requested is not likely to lead to the discovery of admissible evidence and is

irrelevant to the issues for trial.  The defendant in this action is Wal-Mart.  LJO further

objects to this request as this request is proper of Wal-Mart and not a third party.  Clearly,

the information that is relevant would be related to Wal-Mart's sales and not the sales of

LJO.  Moreover, any sales by LJO were prior to issuance of the patent-in-suit.

> LJO will produce search results.

#1012459 v3
105210-52957

**Request No. 13.**      All documents which refer or relate to all opinions of counsel

requested or obtained by LJO, IFH and/or Wal-Mart concerning the '127

patent and/or the accused shoe.

**Response**:      Objection.  To the extent responsive documents even exist, this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities

prior to patent issuance are not relevant.  Any of the other information requested is not

likely to lead to the discovery of admissible evidence and is irrelevant to the issues for

trial.  The defendant in this action is Wal-Mart.  LJO further objects to this request as this

request is proper of Wal-Mart and not a third party.  Clearly, the information that is

relevant would be related to Wal-Mart's sales and not the sales of LJO.  Moreover, any

sales by LJO were prior to issuance of the patent-in-suit.

**Request No. 14.**      All documents which refer or relate to the '127 patent or to U.S.

Patent Application No. 29/203,335.

**Response**:      Objection.  This request is overly broad and unduly burdensome.  A non-

party should not be subject to such an overly broad request.  Moreover,  this request is

not reasonably calculated to lead to the discovery of admissible evidence.  As to

infringement, the comparison is between the accused shoe itself and the claimed design.

As to validity, LJO will produce prior art.  Based on information, Wal-Mart has produced

the accused shoe.  Moreover, activities prior to patent issuance are not relevant.  Any of

15

the other information requested is not likely to lead to the discovery of admissible

evidence and is irrelevant to the issues for trial.

**Request No. 15.**    All documents which refer or relate to any Reebok shoe referred to

as a "REFLEX" or "DMX REFLEX" model shoe.

**Response**:    Objection.  This request is not reasonably calculated to lead to the

discovery of admissible evidence.  As to infringement, the comparison is between the

accused shoe itself and the claimed design.  Based on information, Wal-Mart has

produced the accused shoe.  Any of the other information requested is not likely to lead

to the discovery of admissible evidence and is irrelevant to the issues for trial.

**Request No. 16.**    All documents which refer or relate to all decisions by LJO, IFH

and/or Wal-Mart to continue to make, use, sell and/or offer to sell the

accused shoe after August 31, 2004.

**Response**:    Objection.  This request is not reasonably calculated to lead to the

discovery of admissible evidence.  As to infringement, the comparison is between the

accused shoe itself and the claimed design.  Based on information, Wal-Mart has

produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover,

activities prior to patent issuance are not relevant.  Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

16

**Request No. 17.**      All documents which refer or relate to all decisions by LJO, IFH

and/or Wal-Mart to continue to make, use, sell and/or offer to sell the

accused shoe after September 7, 2004.

**Response**:      Objection.  This request is not reasonably calculated to lead to the

discovery of admissible evidence.  As to infringement, the comparison is between the

accused shoe itself and the claimed design.  Based on information, Wal-Mart has

produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover,

activities prior to patent issuance are not relevant.  Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.


**Request No. 18.**      All documents which refer or relate to the sourcing of the accused

shoe to Wal-Mart, including but not limited to all proposals, presentations,

drawings, specification sheets, prototypes, samples, figures,

advertisements or other promotional items, provided to Wal-Mart.

**Response**:      Objection.  This request is not reasonably calculated to lead to the

discovery of admissible evidence.  As to infringement, the comparison is between the

accused shoe itself and the claimed design.  Based on information, Wal-Mart has

produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover,

activities prior to patent issuance are not relevant.  Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

17

**Request No. 19.**     All documents which refer or relate to the total and per pair cost to Wal-Mart to acquire the accused shoe.

**Response**:     Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has produced the accused shoe.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.  The defendant in this action is Wal-Mart.

**Request No. 20.**     All documents which refer or relate to importation of the accused shoe into the United States.

**Response**:     Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

18

**Request No. 21.**    All documents which refer or relate to communications between LJO and any suppliers, distributors, buying agents, factories, intermediaries or other parties regarding Wal-Mart's acquisition of the accused shoe.

**Response**:    Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

**Request No. 22.**    All documents which refer or relate to communications between IFH and any suppliers, distributors, buying agents, factories, intermediaries or other parties regarding Wal-Mart's acquisition of the accused shoe.

**Response**:    Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information

19

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial. LJO did not sell the accused shoe after August 31, 2004.

**Request No. 23.**    All documents which refer or relate to communications between or on behalf of LJO and Wal-Mart regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of LJO and Wal-Mart and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

**Response**:    Objection. This request is not reasonably calculated to lead to the discovery of admissible evidence. As to infringement, the comparison is between the accused shoe itself and the claimed design. Based on information, Wal-Mart has produced the accused shoe. As to validity, LJO is producing prior art. Moreover, activities prior to patent issuance are not relevant. Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial. LJO did not sell the accused shoe after August 31, 2004.

**Request No. 24.**    All documents which refer or relate to communications between or on behalf of IFH and Wal-Mart regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of IFH and Wal-Mart and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

**Response**:    Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover, activities prior to patent issuance are not relevant.  Any of the other information requested is not likely to lead to the discovery of admissible evidence and is irrelevant to the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

**Request No. 25.**    All documents which refer or relate to communications between or on behalf of LJO and any owner of the STARTER trademark regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between or on behalf of LJO and any owner of the STARTER trademark and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

**Response**:    Objection.  This request is not reasonably calculated to lead to the discovery of admissible evidence.  As to infringement, the comparison is between the accused shoe itself and the claimed design.  Based on information, Wal-Mart has

21

produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover,

activities prior to patent issuance are not relevant.  Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.


**Request No. 26.**          All documents which refer or relate to communications between or

on behalf of IFH and any owner of the STARTER trademark regarding

this lawsuit, the '127 patent and/or the accused shoe, including, but not

limited to, all correspondence between or on behalf of IFH and any owner

of the STARTER trademark and/or their attorneys regarding this lawsuit,

the '127 patent and/or the accused shoe.

**Response**:          Objection.  This request is not reasonably calculated to lead to the

discovery of admissible evidence.  As to infringement, the comparison is between the

accused shoe itself and the claimed design.  Based on information, Wal-Mart has

produced the accused shoe.  As to validity, LJO is producing prior art.  Moreover,

activities prior to patent issuance are not relevant.  Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.

#1012459 v3
105210-52957

**Request No. 27.**　　All documents and things referring or relating to any discussions,

agreements, or other communications between LJO and any other person

referring or relating to any way to Reebok, the '127 patent, or Reebok's

lawsuit against Wal-Mart.

**Response**:　　Objection. This request is not reasonably calculated to lead to the

discovery of admissible evidence. As to infringement, the comparison is between the

accused shoe itself and the claimed design. Based on information, Wal-Mart has

produced the accused shoe. As to validity, LJO is producing prior art. Moreover,

activities prior to patent issuance are not relevant. Any of the other information

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial. LJO did not sell the accused shoe after August 31, 2004.

**Request No. 28.**　　All documents and things referring or relating to any discussions,

agreements, or other communications between IFH and any other person

referring or relating to any way to Reebok, the '127 patent, or Reebok's

lawsuit against Wal-Mart.

**Response**:　　Objection. This request is not reasonably calculated to lead to the

discovery of admissible evidence. As to infringement, the comparison is between the

accused shoe itself and the claimed design. Based on information, Wal-Mart has

produced the accused shoe. As to validity, LJO is producing prior art. Moreover,

activities prior to patent issuance are not relevant. Any of the other information

#1012459 v3
105210-52957

requested is not likely to lead to the discovery of admissible evidence and is irrelevant to

the issues for trial.  LJO did not sell the accused shoe after August 31, 2004.


                                        Respectfully submitted,

                                        GIBBONS, DEL DEO, DOLAN,
                                        GRIFFINGER & VECCHIONE, P.C.

Dated:  September ___, 2005             By: _____
                                        David W. Denenberg (DWD 9951)
                                        One Pennsylvania Plaza, 37th Floor
                                        New York, NY 10119
                                        (212) 649-4700 ph
                                        (212) 333-5980 fax

                                        *Attorneys for Defendant*
                                        *Wal-Mart Stores, Inc.*

#1012459 v3
105210-52957

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

REEBOK INTERNATIONAL LTD.,

                              Plaintiff,

        v.                                    Civil Action No. 04-12668 (RGS)(RBC)
                                              Honorable Richard G. Stearns
WAL-MART STORES, INC.,

                              Defendant.

## PLAINTIFF REEBOK 'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS FROM DEFENDANT WAL-MART

Plaintiff, Reebok International Ltd. ("Reebok"), pursuant to Rule 34, Federal Rules of Civil Procedure, requests that defendant Wal-Mart Stores, Inc. ("Wal-Mart") respond to the following request for documents and things in writing and under oath within 30 days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are in addition to those uniform definitions and instruction particularly recited in the Local Rules and the Fed. R. Civ. P.

(A) <u>Document or documents</u>. As used herein, the term "document" or "documents" means the original and all copies of any written, printed, typed, photocopied, photographic, and recorded matter of any kind or character, and any recorded material however produced or reproduced, including, without limiting the generality of the foregoing, all contracts, court pleadings, diaries, calendars, desk pads, correspondence, communications, file folders, telegrams, statistics, teletypes, memoranda, messages, notes, studies, reports, summaries, newspaper or magazine articles, analyses, drawings, graphs, charts, sketches, viewgraphs,

photographs, film, videotapes, microfilms, slides, x-rays, magnetic and electronic records, tapes, discs, CD-ROM or other storage media, electronic messages, phone or voice mail, sound recordings, lists, minutes, checks, and entries in books of account relating to or referring in any way to the subject matter of the request. The term "document" or "documents" shall also include any and all drafts or revisions of each document. The term "document" or "documents" shall include, but not be limited to, "writings and recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence and "documents" as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

(B)  Defendant.  As used herein, the terms "defendant" or "Wal-Mart" means (1) the named defendant, Wal-Mart Stores, Inc.; (2) any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with the named defendant, and including any and all predecessors thereof; (3) as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on behalf of defendant.

(C)  Plaintiff.  As used herein, the terms "Plaintiff" or "Reebok" means (1) the named plaintiff, Reebok International Ltd.; (2) any and all of its present and former divisions and subsidiaries, parents and other business entities directly or indirectly controlled by, or affiliated with the named plaintiff, and including any and all predecessors thereof; (3) as well as all present and former directors, officers, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on behalf of plaintiff.

(D)  Accused Shoe.  As used herein, the term "accused shoe" means any shoes made, used, sold and/or offered for sale by Wal-Mart which are referred to by the model name

"OXIDE" and/or which has a sole having the same general appearance (regardless of color) as at least the heel midsole portion of the shoes in Exhibits C-E of the Complaint filed in this action.

(E)  '127 Patent.  As used herein, the term "'127 patent" means U.S. Patent No. Des. 495,127.

(F)  "And" as well as "or" shall be construed to mean disjunctively or conjunctively, as necessary to bring within the scope of these requests, any information which might otherwise be construed to be outside the scope.

(G)  In responding to the following document requests, Wal-Mart is requested to furnish all documents in Wal-Mart's possession, under Wal-Mart's control or that are otherwise available to Wal-Mart, including all documents in the possession of Wal-Mart's attorneys, agents, investigators, representatives or anyone acting in cooperation or in concert with Wal-Mart or on Wal-Mart's behalf, including experts consulted or retained.

(H)  If a request cannot be responded to in full, it should be responded to in the fullest extent possible, with an explanation as to why the remainder cannot be responded to and a statement as to the nature of the documents that cannot be furnished.

(I)  If Wal-Mart claims privilege as a ground for not responding to any request, state the privilege being claimed and the basis for such a claim, and identify all persons to whom the withheld document or information has been disclosed.  In addition,

(1)  For each document as to which Wal-Mart asserts the attorney-client privilege, state the name of the attorney and the name of the client, and describe the circumstances surrounding the communication as to which the privilege is being asserted;

(2)  For each document as to which Wal-Mart asserts the work-product doctrine, state the litigation in anticipation of which the withheld information was generated, and identify

the person(s) who generated such information, the person(s) or entity who employed or retained them, the date on which they were employed or retained, and the purpose for which they were employed or retained.

(J)  These requests are to be regarded as continuing in nature.  Wal-Mart is requested to provide, by way of supplementary responses thereto, such additional information as Wal-Mart or any other person on Wal-Mart's behalf may hereafter obtain which changes or supplements Wal-Mart's answers to these requests.

## REQUEST NO. 1

All documents identified in defendant's answers to PLAINTIFF REEBOK'S FIRST SET OF INTERROGATORIES TO DEFENDANT WAL-MART, served concurrently herewith.

## REQUEST NO. 2

All catalogs, advertisements, specification sheets or other promotional materials that depict the accused shoe.

## REQUEST NO. 3

All documents in Wal-Mart's custody or control which refer or relate to any license, settlement and or other agreement, to which Wal-Mart is a party involving allegations of patent, copyright, trademark and/or trade dress infringement.

## REQUEST NO. 4

All court judgments in which Wal-Mart was a defendant in a claim of patent, copyright, trademark and/or trade dress infringement.

REQUEST NO. 5

All documents in Wal-Mart's custody or control which refer or relate to costs or other revenue deductions Wal-Mart has attributed to the sale of the accused shoe.

REQUEST NO. 6

One sample of each model or style of the accused shoe which has ever been offered for sale by or for Wal-Mart.

REQUEST NO. 7

All documents which refer or relate to the manufacture of the accused shoe by or for Wal-Mart.

REQUEST NO. 8

All documents which refer or relate to the sale of the accused shoe by or for Wal-Mart.

REQUEST NO. 9

All documents which refer or relate to the offer for sale of the accused shoe by or for Wal-Mart.

REQUEST NO. 10

All documents which refer or relate to all decisions by Wal-Mart to continue to make, use, sell and/or offer to sell the accused shoe after August 31, 2004.

REQUEST NO. 11

All documents which refer or relate to all decisions by Wal-Mart to continue to make, use, sell and/or offer to sell the accused shoe after September 7, 2004.

REQUEST NO. 12

All documents which refer or relate to any search performed or analysis done with respect to the validity, enforceability and/or infringement of the '127 patent.

REQUEST NO. 13

All documents which refer or relate to all opinions of counsel requested or obtained by Wal-Mart concerning the '127 patent and/or the accused shoe.

REQUEST NO. 14

All documents which refer or relate to the '127 patent or to U.S. Patent Application No. 29/203,335.

REQUEST NO. 15

All documents which refer or relate to any Reebok shoe referred to as a "REFLEX" or "DMX REFLEX" model shoe.

REQUEST NO. 16

All documents which refer or relate to the purchase of the accused shoe by Wal-Mart, including but not limited to all proposals, presentations, drawings, specification sheets, prototypes, samples, figures, advertisements or other promotional items provided to Wal-Mart by any supplier, distributor, manufacturer or other source of inventory of the accused shoe to Wal-Mart.

REQUEST NO. 17

All documents which refer or relate to the total and per pair cost to Wal-Mart to acquire the accused shoe.

REQUEST NO. 18

All documents which refer or relate to importation of the accused shoe into the United States.

REQUEST NO. 19

All documents which refer or relate to the design of the accused shoe, including but not limited to any proposals, samples, drawings and/or prototypes of the accused shoe; and any communications between Wal-Mart and the designer(s) of the accused shoe.

REQUEST NO. 20

All documents which refer or relate to communications between Wal-Mart and any suppliers, distributors, buying agents, factories, intermediaries or other parties regarding Wal-Mart's acquisition of the accused shoe.

REQUEST NO. 21

All documents on which Wal-Mart relies to support Wal-Mart's Answer to the Complaint in this action.

REQUEST NO. 22

All documents which refer or relate to any indemnification agreements with any parties regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited, to any indemnification agreements between Wal-Mart and International Footwear Holdings, Inc. (IFH) or LJO, Inc. regarding this lawsuit, the '127 patent and/or the accused shoe.

REQUEST NO. 23

All documents which refer or relate to communications between Wal-Mart and International Footwear Holdings, Inc. (IFH) and/or LJO, Inc. regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between Wal-Mart and International Footwear Holdings, Inc. (IFH), LJO, Inc. and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

REQUEST NO. 24

All documents which refer or relate to communications between Wal-Mart and any owner of the STARTER trademark regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between Wal-Mart and any owner of the STARTER trademark and/or their attorneys regarding this lawsuit, the '127 patent and/or the accused shoe.

REQUEST NO. 25

All documents which refer or relate to communications between Wal-Mart and any third party regarding this lawsuit, the '127 patent and/or the accused shoe, including, but not limited to, all correspondence between Wal-Mart and any third party regarding this lawsuit, the '127 patent and/or the accused shoe.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.

By its attorneys

Shepard Davidson (BBO#557082)
sdavidson@burnslev.com
Victoria L. Walton (BBO#650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

David K.S. Cornwell (*pro hac vice*)
Donald R. Banowit (*pro hac vice*)
Rae Lynn P. Guest (*pro hac vice*)

STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-2600
Facsimile: 202-371-2540

Dated: **8/23/05**

399469_1.DOC

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August, 2005, a copy of PLAINTIFF REEBOK'S FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS FROM DEFENDANT WAL-MART was served by Federal Express upon:

Peter T. Cobrin, Esq.
GIBBONS, DEL DEO, DOLAN, GRIFFINGER
  & VECCHIONE
One Pennsylvania Plaza, 37th Fl.
New York, NY  10119-3701
(212) 649-4700

Donald R. Banowit, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

REEBOK INTERNATIONAL LTD.,

                    Plaintiff,

    v.                                          Civil Action No. 04-12668 (RGS)(RBC)
                                                Honorable Richard G. Stearns
WAL-MART STORES, INC.,

                    Defendant.

## PLAINTIFF REEBOK'S FIRST SET OF
## INTERROGATORIES TO DEFENDANT WAL-MART

Plaintiff, Reebok International Ltd. ("Reebok"), pursuant to Rule 33, Federal Rules of

Civil Procedure, requests that defendant Wal-Mart Stores, Inc. ("Wal-Mart") answer the

following interrogatories in writing and under oath within 30 days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are in addition to those uniform definitions and

instruction particularly recited in the Local Rules and the Fed. R. Civ. P.

(A) Person. As used herein, the term "person" means juristic person and includes both

natural persons and business, government or other legal entities; and the "acts" of a person

include the acts of directors, officers, partners, owners, members, employees, agents, attorneys or

representatives, and all other persons acting or purporting to act on behalf of the person.

(B) Identify.

(1) To "identify" a person means to state (a)the person's full name (including any

other form(s) of the person's name to be used in answering the following interrogatories) and

present or last known principal business address and telephone number, and, in the case of a

natural person, his or her present or last known home address and telephone number, and his or

1

her occupation or job title, and, in the case of a person not a natural person, the type of legal entity; (b)the business relationship of each such person to Defendant. If one or more of the persons to be identified is a partnership (general or limited), identify each partner, other than limited partner(s). If one or more of the persons to be identified is an unincorporated company, unincorporated association, unincorporated joint venture, export association, cooperative or analogous entity, or the like, identify the persons who or which are members thereof. When a person is to be identified who did any act, made any statement or representation, or the like, and the act, statement, representation, or the like was done or made by a natural person on behalf of one or more legal entities or of one or more other natural persons, identify both the person and each entity or entities and/or natural person(s) on behalf of whom or which the person identified did any act, etc. Once a person has been identified in an answer to an interrogatory, it will be sufficient thereafter when identifying that person to merely state the name thereof.

(2) To "identify" a thing means to specify the nature of the thing, its manufacturer, title, model number, serial number and any other designation employed to identify it, and its present location and custodian.

(3) To "identify" an entity means to state the entity's full name (including any other form(s) of the entity's name to be used in answering the following interrogatories) and complete present or last known principal address and telephone number.

(C) <u>Document or documents</u>. As used herein, the term "document" or "documents" means the original and all copies of any written, printed, typed, photocopied, photographic, and recorded matter of any kind or character, and any recorded material however produced or reproduced, including, without limiting the generality of the foregoing, all contracts, court pleadings, diaries, calendars, desk pads, correspondence, communications, file folders,

2

telegrams, statistics, teletypes, memoranda, messages, notes, studies, reports, summaries, newspaper or magazine articles, analyses, drawings, graphs, charts, sketches, viewgraphs, photographs, film, videotapes, microfilms, slides, x-rays, magnetic and electronic records, tapes, discs, CD-ROM or other storage media, electronic messages, phone or voice mail, sound recordings, lists, minutes, checks, and entries in books of account relating to or referring in any way to the subject matter of the interrogatory. The term "document" or "documents" shall also include any and all drafts or revisions of each document. The term "document" or "documents" shall include, but not be limited to, "writings and recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence and "documents" as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

(D)  <u>Defendant</u>.  As used herein, the term "defendant" or "Wal-Mart" means (1) the named defendant, Wal-Mart Stores, Inc.; (2) any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with the named defendant, and including any and all predecessors thereof; (3) as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on behalf of defendant.

(E)  <u>'127 Patent</u>.  As used herein, the term "'127 patent" means U.S. Patent No. Des. 495,127.

(F)  <u>Accused Shoe</u>.  As used herein, the term "accused shoe" means any shoes made, used, sold and/or offered for sale by Wal-Mart which are referred to by the model name "OXIDE" and/or which has a sole having the same general appearance (regardless of color) as at least the heel midsole portion of the shoes in Exhibits C-E of the Complaint filed in this action.

(G)  "And" as well as "or" shall be construed to mean disjunctively or conjunctively, as necessary to bring within the scope of these interrogatories, any information which might otherwise be construed to be outside the scope.

(H)  In answering the following interrogatories, Wal-Mart is requested to furnish under oath all information that is available to Wal-Mart, including all information in the possession of Wal-Mart's attorneys, agents, investigators, representatives or anyone acting in cooperation or in concert with Wal-Mart or on Wal-Mart's behalf, including experts consulted or retained.

(I)  If an interrogatory cannot be answered in full, it should be answered to the fullest extent possible, with an explanation as to why the remainder cannot be answered and a statement as to the nature of the information or knowledge that cannot be furnished.

(J)  If Wal-Mart claims privilege as a ground for not answering any interrogatory, state the privilege being claimed and the basis for such a claim, and identify all persons to whom the withheld information has been disclosed.  In addition,

(1)  For each interrogatory as to which Wal-Mart asserts the attorney-client privilege, state the name of the attorney and the name of the client, and describe the circumstances surrounding the communication as to which the privilege is being asserted;

(2)  For each interrogatory as to which Wal-Mart asserts the work-product doctrine, state the litigation in anticipation of which the withheld information was generated, and identify the person(s) who generated such information, the person(s) or entity who employed or retained them, the date on which they were employed or retained, and the purpose for which they were employed or retained.

(K)  These interrogatories are to be regarded as continuing in nature.  Wal-Mart is requested to provide, by way of supplementary answers thereto, such additional information as

Wal-Mart or any other person on Wal-Mart's behalf may hereafter obtain which changes or supplements Wal-Mart's answers to these interrogatories.

INTERROGATORY NO. 1

Identify (a) all persons or entities who designed and/or created the accused shoe; (b) where and when the accused shoe was designed; and (c) all persons or entities who witnessed and/or can corroborate the designing of the accused shoe.

INTERROGATORY NO. 2

Identify separately the total number of the accused shoe which Wal-Mart

(a) took possession of prior to August 31, 2004;

(b) had in inventory on August 31, 2004;

(c) took possession of between August 31, 2004 and September 7, 2004;

(d) had in inventory on September 7, 2004;

(e) took possession of between September 7, 2004 and the date on which this interrogatory is answered;

(f) has in inventory as of the date on which this interrogatory is answered.

INTERROGATORY NO. 3

Identify all persons or entities, including but not limited to suppliers, distributors, manufacturers, factories, buying agents, and intermediaries, who manufactured, imported, supplied, sold or offered for sale the accused shoe to Wal-Mart.

INTERROGATORY NO. 4

Identify all Wal-Mart employees, including past employees, who were involved in the acquisition of the accused shoe on behalf Wal-Mart, including but not limited to, any Wal-Mart

employees who requested that the accused shoe be designed and/or manufactured; any Wal-Mart employees who were presented with a sample and/or drawing of the accused shoe and/or a prototype of the accused shoe; and any Wal-Mart employees who ordered and/or purchased the accused shoe on behalf of Wal-Mart.

INTERROGATORY NO. 5

For each individual listed in Wal-Mart's answer to Interrogatory No. 3, identify (a) when such individual first observed the Reebok "REFLEX" or "DMX REFLEX" model shoe; (b) where the Reebok "REFLEX" or "DMX REFLEX" model shoe was observed; (c) why the individual took notice of the Reebok "REFLEX" or "DMX REFLEX" model shoe; and (d) where, when and how the Reebok "REFLEX" or "DMX REFLEX" model shoe that was observed was obtained.

INTERROGATORY NO. 6

Identify (a) each opinion of counsel, whether oral or written, which Wal-Mart has requested and/or has received relating to the '127 patent and/or to the accused shoe; (b) who requested the opinion; and (c) when and to whom the request was made.

INTERROGATORY NO. 7

Identify the revenue Wal-Mart has received as a result of the sale of the accused shoe by identifying (a) the amount for which Wal-Mart sold each accused shoe to each customer and (b) any cost or other revenue deduction Wal-Mart has attributed to the sale of such shoe.

INTERROGATORY NO. 8

Separately identify (a) all dates Wal-Mart approached or was approached about purchasing, ordering or receiving the accused shoe, including the first such date; (b) all dates when Wal-Mart received or observed any designs of the accused shoe, include the first such date.

INTERROGATORY NO. 9

For interrogatories number one (1) to eight (8) inclusive, identify all persons having knowledge of facts that support Wal-Mart's answers thereto.

INTERROGATORY NO. 10

For interrogatories number one (1) to eight (8) inclusive, identify all documents which refer or relate to Wal-Mart's answers thereto.

INTERROGATORY NO. 11

Identify each person consulted and each document referred to, if not already identified or referred to, in preparing Wal-Mart's responses to interrogatories number one (1) to ten (10) inclusive.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.

By its attorneys,

Shepard Davidson (BBO#557082)
sdavidson@burnslev.com
Victoria L. Walton (BBO#650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

David K.S. Cornwell (*pro hac vice*)
Donald R. Banowit (*pro hac vice*)
Rae Lynn P. Guest (*pro hac vice*)

STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-2600
Facsimile: 202-371-2540

Dated: 8/23/05

399477_1.DOC

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2005, a copy of PLAINTIFF, REEBOK INTERNATIONAL LTD.'S, FIRST SET OF INTERROGATORIES TO DEFENDANT WAL-MART STORES, INC. was served by Federal Express upon:

      Peter T. Cobrin, Esq.
      GIBBONS, DEL DEO, DOLAN, GRIFFINGER
       & VECCHIONE
      One Pennsylvania Plaza, 37th Fl.
      New York, NY  10119-3701
      (212) 649-4700

                      Donald R. Banowit, Esq.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

REEBOK INTERNATIONAL LTD.,

      Plaintiff,

 v.

WAL-MART STORES, INC.,

      Defendant.

Civil Action No. 04-12668 (RGS)(RBC)
Honorable Richard G. Stearns

### PLAINTIFF REEBOK'S FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WAL-MART

Plaintiff, Reebok International Ltd. ("Reebok"), pursuant to Rule 36 Federal Rules of Civil Procedure, requests that defendant Wal-Mart Stores, Inc. ("Wal-Mart") answer the following requests for admission in writing and under oath within 30 days of service hereof.

### DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions are in addition to those uniform definitions and instruction particularly recited in the Local Rules and the Fed. R. Civ. P.

(A) <u>Document or documents</u>.  As used herein, the term "document" or "documents" means the original and all copies of any written, printed, typed, photocopied, photographic, and recorded matter of any kind or character, and any recorded material however produced or reproduced, including, without limiting the generality of the foregoing, all contracts, court pleadings, diaries, calendars, desk pads, correspondence, communications, file folders, telegrams, statistics, teletypes, memoranda, messages, notes, studies, reports, summaries, newspaper or magazine articles, analyses, drawings, graphs, charts, sketches, viewgraphs, photographs, film, videotapes, microfilms, slides, x-rays, magnetic and electronic records, tapes, discs, CD-ROM or other storage media, electronic messages, phone or voice mail, sound

1

recordings, lists, minutes, checks, and entries in books of account relating to or referring in any way to the subject matter of the request. The term "document" or "documents" shall also include any and all drafts or revisions of each document. The term "document" or "documents" shall include, but not be limited to, "writings and recordings" and "photographs" as defined in Rule 1001 of the Federal Rules of Evidence and "documents" as defined in Rule 34(a) of the Federal Rules of Civil Procedure.

(B)  <u>Defendant</u>.  As used herein, the terms "defendant" or "Wal-Mart" means (1) the named defendant, Wal-Mart Stores, Inc.; (2) any and all of its present and former divisions, subsidiaries, parents and other business entitles directly or indirectly controlled by, or affiliated with the named defendant, and including any and all predecessors thereof; (3) as well as all present and former directors, officers, partners, owners, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on behalf of defendant.

(C)  <u>Plaintiff</u>.  As used herein, the terms "Plaintiff" or "Reebok" means (1) the named plaintiff, Reebok International Ltd.; (2) any and all of its present and former divisions and subsidiaries, parents and other business entities directly or indirectly controlled by, or affiliated with the named plaintiff, and including any and all predecessors thereof; (3) as well as all present and former directors, officers, employees, sales representatives, consultants, contractors, attorneys, agents and all other persons acting or purporting to act on behalf of plaintiff.

(D)  <u>Accused Shoe</u>.  As used herein, the term "accused shoe" means any shoes made, used, sold and/or offered for sale by Wal-Mart which are referred to by the model name "OXIDE" and/or which has a sole having the same general appearance (regardless of color) as at least the heel midsole portion of the shoes in Exhibits C-E of the Complaint filed in this action.

(E)  '127 Patent.  As used herein, the term "'127 patent" means U.S. Patent No. Des. 495,127.

(F)  "And" as well as "or" shall be construed to mean disjunctively or conjunctively, as necessary to bring within the scope of these requests for admission, any information which might otherwise be construed to be outside the scope.

 (G)  If an admission cannot be responded to in full, it should be responded to in the fullest extent possible, with an explanation as to why the remainder cannot be admitted or denied.

(H)  If you claim privilege as a ground for not responding to any admission, state the privilege being claimed and the basis for such a claim, and identify all persons to whom the information has been otherwise disclosed.  In addition,

(1)  For each request as to which you assert the attorney-client privilege, state the name of the attorney and the name of the client, and describe the circumstances surrounding the communication as to which the privilege is being asserted;

(2)  For each request as to which you assert the work-product doctrine, state the litigation in anticipation of which the withheld information was generated, and identify the person(s) who generated such information, the person(s) or entity who employed or retained them, the date on which they were employed or retained, and the purpose for which they were employed or retained.

(I)  These requests are to be regarded as continuing in nature.  You are requested to provide, by way of supplementary responses thereto, such additional information as you or any other person on your behalf may hereafter obtain which changes or supplements your answers to these requests.

REQUEST FOR ADMISSION NO. 1

Admit that Wal-Mart received the letter dated September 7, 2004 (a copy of which is annexed hereto as Exhibit A) from Reebok enclosing a copy of the '127 patent.

REQUEST FOR ADMISSION NO. 2

Admit that Wal-Mart offered to sell at least one pair of the accused shoe on and/or after August 31, 2004.

REQUEST FOR ADMISSION NO. 3

Admit that Wal-Mart offered to sell at least one pair of the accused shoe on and/or after September 7, 2004.

REQUEST FOR ADMISSION NO. 4

Admit that Wal-Mart ordered at least one pair of the accused shoe on and/or after August 31, 2004.

REQUEST FOR ADMISSION NO. 5

Admit that Wal-Mart ordered at least one pair of the accused shoe on and/or after September 7, 2004.

REQUEST FOR ADMISSION NO. 6

Admit that Wal-Mart sold at least one pair of the accused shoe on and/or after August 31, 2004.

REQUEST FOR ADMISSION NO. 7

Admit that Wal-Mart sold at least one pair of the accused shoe on and/or after September 7, 2004.

REQUEST FOR ADMISSION NO. 8

Admit that all pairs of the accused shoe received by Wal-Mart were received by Wal-Mart prior to August 31, 2004.

REQUEST FOR ADMISSION NO. 9

Admit that all pairs of the accused shoe received by Wal-Mart were received by Wal-Mart prior to September 7, 2004.

REQUEST FOR ADMISSION NO. 10

Admit that International Footwear Holdings, Inc. sold at least one pair of the accused shoe to Wal-Mart.

REQUEST FOR ADMISSION NO. 11

Admit that International Footwear Holdings, Inc. was Wal-Mart's only source of the accused shoe.

REQUEST FOR ADMISSION NO. 12

Admit that the heel of the accused shoe was intended to have substantially the same appearance as the heel of a Reebok "REFLEX" or "DMX REFLEX" model shoe.

REQUEST FOR ADMISSION NO. 13

Admit that Reebok is the owner of the '127 patent.

Respectfully submitted,

REEBOK INTERNATIONAL LTD.

By its attorneys,

_____

Shepard Davidson (BBO#557082)
sdavidson@burnslev.com
Victoria L. Walton (BBO#650999)
vwalton@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

Dated: 8/23/05

399485_1.DOC

David K.S. Cornwell (*pro hac vice*)
Donald R. Banowit (*pro hac vice*)
Rae Lynn P. Guest (*pro hac vice*)

STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
1100 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: 202-371-2600
Facsimile: 202-371-2540

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of August, 2005, a copy of PLAINTIFF, REEBOK INTERNATIONAL LTD.'S, FIRST SET OF REQUESTS FOR ADMISSION TO DEFENDANT WAL-MART STORES, INC. was served by Federal Express upon:

> Peter T. Cobrin, Esq.
> GIBBONS, DEL DEO, DOLAN, GRIFFINGER
>   & VECCHIONE
> One Pennsylvania Plaza, 37th Fl.
> New York, NY  10119-3701
> (212) 649-4700

_____
Donald R. Banowit, Esq.



Sterne Kessler
Goldstein Fox
ATTORNEYS AT LAW

| | | | | |
|---|---|---|---|---|
| Robert Greene Sterne | Timothy J. Shea, Jr. | Christine M. Lhulier | Jyoti C. Iyer* | Michelle K. Holoubek |
| Edward J. Kessler | Patrick E. Garrett | Rae Lynn P. Guest | Laura A. Vogel | Simon J. Elliott |
| Jorge A. Goldstein | Jeffrey T. Helvey | George S. Bardmesser | Michael J. Mancuso | Julie A. Helder |
| David K.S. Cornwell | Heidi L. Kraus | Daniel A. Klein* | Bryan S. Wade | Mita Mukherjee |
| Robert W. Esmond | Albert L. Ferro* | Jason D. Eisenberg | Aaron L. Schwartz | Scott M. Woodhouse |
| Tracy-Gene G. Durkin | Donald R. Banowit | Michael D. Specht | Matthew E. Kelley* | Michael G. Penn |
| Michele A. Cimbala | Peter A. Jackman | Andrea J. Kamage | Nicole R. Kramer* | Christopher J. Walsh |
| Michael B. Ray | Teresa U. Medler | Tracy L. Muller* | | Peter A. Socarras |
| Robert E. Sokohl | Jeffrey S. Weaver | Jon E. Wright | Registered Patent Agents* | |
| Eric K. Steffe | Kendrick P. Patterson | LuAnne M. DeSantis | Karen R. Markowicz | Of Counsel |
| Michael Q. Lee | Vincent L. Capuano | Ann E. Summerfield | Nancy J. Leith | Kenneth C. Bass III |
| Steven M. Ludwig | Eldora Ellison Floyd | Aric W. Ledford* | Matthew J. Dowd | Evan R. Smith |
| John M. Covert | Thomas C. Fiala | Helene C. Carlson | Aaron L. Schwartz | Marvin C. Guthrie |
| Linda E. Alcorn | Brian J. Del Buono | Cynthia M. Bouchez | Katrina Yujian Fei Quach | |
| Robert C. Millonig | Virgil Lee Beaston | Timothy A. Doyle* | Bryan L. Skelton | *Admitted only in Maryland |
| Donald J. Featherstone | Theodore A. Wood | Gaby L. Longsworth | Robert A. Schwartzman | *Admitted only in Virginia |
| Lawrence B. Bugaisky | Elizabeth J. Haanes | Lori A. Gordon* | Teresa A. Colella | *Practice Limited to |
| Michael V. Messinger | Joseph S. Ostroff | Nicole D. Dretar | Jeffrey S. Lundgren | Federal Agencies |
| Judith U. Kim | Frank R. Cottingham | Ted J. Ebersole | Victoria S. Rutherford | |

FILE COPY

August 23, 2005

*WRITER'S DIRECT NUMBER:*
(202) 772-8538
*INTERNET ADDRESS:*
DBANOWIT@SKGF.COM

Peter T. Cobrin, Esq.                                              *via Facsimile*
**GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE**      (973) 639-8381
One Pennsylvania Plaza                                            26 Pages
37th Floor                                          *Confirmation via Federal Express*
New York, NY 10119

     Re:   *Reebok International Ltd. v. Wal-Mart Stores, Inc.*
           U.S. District Court for the District of Massachusetts
           Civil Action No. 04-CV-12668 GRS
           Our Ref: 2073.008LIT1

Dear Peter:

    As you are aware, we will be trying this case on November 7, 2005. Given the short time frame provided to prepare for trial, we propose the following schedule.

    To date, the parties have not exchanged initial disclosures under Fed. R. Civ. P. Rule 26(a)(1). Accordingly, we propose that the parties exchange initial disclosures no later than September 2, 2005.

    Additionally, enclosed herewith are Document Requests, Interrogatories and Requests for Admission of Wal-Mart. Considering the circumstances, we propose that both sides adhere to a shortened period for response to discovery requests of 15 days from service, rather than the 30 days provided for by Rule. Further, we propose that any documents to be produced pursuant to such discovery requests be produced and/or made available for inspection no later than 30 days from service of the request.

Peter T. Cobrin, Esq.
August 23, 2005
Page 2

We intend to take the deposition of at least the following individuals: (1) Thomas Sindle; (2) the designer(s) of the accused shoes; (3) Wal-Mart's buyer(s) responsible for purchasing the accused shoes; (4) the third party(ies) responsible for sourcing the accused shoes to Wal-Mart; (5) Wal-Mart's accountant(s) having knowledge of each sale of the accused shoes; (6) the author(s) of any legal opinions Wal-Mart intends to rely on to defend against Reebok's allegation of willful infringement; and (7) the Wal-Mart representative(s) that relied upon such opinion.

We propose that all depositions be conducted no later than September 30, 2005.  By this letter, we confirm your prior agreement to accept service on behalf of International Footwear Holdings, Inc. and LJO, Inc.

We also anticipate that the parties will present the testimony of one or more experts at trial. We propose that affirmative expert reports shall be served on or before September 23, 2005; rebuttal expert reports shall be served on or before October 7, 2005; and all expert depositions shall be completed by October 14, 2005.

Finally, the Court's August 8, 2005 Order lists a number of items which must be submitted to the Court on or before November 2, 2005.  We propose that we have a conference no later than October 14, 2005 to discuss these issues and begin to prepare the necessary filings.

Please confirm you agreement with the above schedule.  Additionally, we will forward to you this week a draft Protective Order for your consideration.  If it meets with your approval, please execute the same and overnight it back to us for filing with the Court. Please contact us immediately should you have any questions or concerns regarding the above.

Sincerely,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Donald R. Banowit

DKSC/DRB:lna
434889_1.DOC

# GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

### A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

ONE PENNSYLVANIA PLAZA

37TH FLOOR

NEW YORK, NY 10119-3701

212-649-4700

WEB SITE
http://www.gibbonslaw.com

Peter T. Cobrin
Director
(212) 554-9603

DIRECT FACSIMILE
(973) 639-8381
PCobrin@gibbonslaw.com

August 30, 2005

**VIA EMAIL**

Donald R. Banowit, Esq.
Sterne Kessler Goldstein Fox
1100 New York Avenue, NW
Washington, DC  20005

> **Re:  Reebok International Ltd. v. Wal-Mart Stores, Inc.**
> **Civil Action No. 04-12668 RGS**
> **Our Ref.  105210-52957**

Dear Don:

This responds to your letter of August 23, 2005.

Unfortunately, we cannot agree to your request that responses to discovery be provided in a fifteen day period.  Rather, we intend to use the full period of time allotted by the Federal Rules of Civil Procedure, and will expect that Reebok will do the same.

You did not respond to us regarding the availability of the inventors – please do so at your earliest convenience.  Alternatively, if you prefer that we provide you with notices of deposition, please let us know.

As to the depositions that Reebok wishes to conduct, it appears that we have a disagreement about the scope of the trial and discovery.  It is our understanding that the trial will focus only on infringement and validity.  Damages and willfulness were not to be part of the trial.  As such, many of the proposed depositions appear irrelevant.  Specifically, beyond the issues of damages and/or willfulness, there appears to be no relevance for Reebok to conduct the depositions of: (1) Wal-Mart's buyers, (2) the third parties responsible for sourcing shoes, (3) Wal-Mart's accountants with knowledge of sales, (4) the author of any legal opinions, and/or (5) person(s) at Wal-Mart who relied on those opinions.  Indeed, even if damages and willfulness were at issue here, it is unclear how items (1) and (2) above would be relevant.  This is especially

#1011116 v1
105210-52957

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

Donald R. Banowit, Esq.
August 30, 2005
Page 2

true since all of the manufacturing at issue here occurred prior to the issuance of the patent-in-suit.

If you disagree with our position, please indicate the basis for your disagreement, as we may be willing to reconsider these points.

Overall, it is worthwhile to note that when we were in Court on August 5, 2005, Reebok indicated that it was prepared to proceed with trial that afternoon. The vast discovery demands proffered, and the depositions requested seem to indicate to the contrary. With all due respect, had Reebok explained that it intended to take at least seven depositions and engage in expert discovery the Court might have considered a later trial date.

As to the actual dates proposed, we will agree to the following: (1) we will serve Wal-Mart's initial disclosures on or before September 16, 2005, if you would like to serve Reebok's prior to that, we would be happy to accept the same; (2) as stated, we will be responding to discovery pursuant to the Federal Rules of Civil Procedure; (3) we suggest that affirmative expert reports be proffered on or before October 7, 2005, and rebuttal expert reports to be proffered on or before October 21, 2005; (4) all depositions, fact and expert, be completed by October 28, 2005. Frankly, while we believe that this schedule is ambitious, but, in all likelihood, the best that either party will be able to do under the circumstances.

We will review the protective order, and get back to you regarding the same this week.

Should you have any questions, comments or concerns regarding the foregoing, please do not hesitate to contact us.

Very truly yours,

Peter T. Cobrin

PTC:gs

cc:     Oren J. Warshavsky, Esq.
        David W. Denenberg, Esq.

#1011116 v1
105210-52957

**From:**       "Cobrin, Peter T." <PCobrin@gibbonslaw.com>
**To:**         <dbanowit@skgf.com>
**Date:**       9/9/05 2:19PM
**Subject:**    FW: INTERNATIONAL/REEBOK-- First Set of Interrogatories.DOC;REEBOOK -
Response to Subpoena documents to be produced of ThomasSindle.DOC;INTERNATIONAL/REEBOK--
First Set of Document Demands.DOC


-----Original Message-----
Subject: INTERNATIONAL/REEBOK-- First Set of Interrogatories.DOC;REEBOOK
- Response to Subpoena documents to be produced of Thomas
Sindle.DOC;INTERNATIONAL/REEBOK-- First Set of Document Demands.DOC


Peter T. Cobrin, Esq.
Gibbons, Del Deo, Dolan, Griffinger
  & Vecchione
One Pennsylvania Plaza, 37th Fl.
New York, NY  10119-3701
phone: (212) 649-4700
fax:    (973) 639-8381
email:  pcobrin@gibbonslaw.com


The contents of this message, together with any attachments, are
intended only for the use of the individual or entity to which they are
addressed and may contain information that is legally privileged,
confidential and exempt from disclosure. If you are not the intended
recipient, you are hereby notified that any dissemination, distribution,
or copying of this message, or any attachment, is strictly prohibited.
If you have received this message in error, please notify the original
sender or the Gibbons, Del Deo Help Desk (Tel: 973.596.4500 EXT 3900;
Email: HelpDesk@gibbonslaw.com ) immediately and delete this message,
along with any attachments, from your computer. Thank you.


**CC:**         "Denenberg, David W." <DDenenberg@gibbonslaw.com>, "Warshavsky, Oren J."
<OWarshavsky@gibbonslaw.com>

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REEBOK INTERNATIONAL LTD., <br><br>                    Plaintiff, <br><br> v. <br><br> WAL-MART STORES, INC., <br><br>                    Defendant. | Civil Action No. 04-12668 (RGS)(RBC) <br> Hon. Richard G. Stearns, U.S.D.J. |

---

**DEFENDANT WAL-MART STORES, INC.'S FIRST SET OF
INTERROGATORIES**

---

To:    Victoria L. Walton (BBO #650999)
        BURNS & LEVINSON LLP
        125 Summer Street
        Boston, Massachusetts 02110-1624

        Donald R. Banowit (*pro hac vice*)
        STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
        1100  New York Avenue, N.W.
        Washington, D.C. 20005

        *ATTORNEYS FOR PLAINTIFF,*
        *REEBOK INTERNATIONAL LTD.*

        Please Take Notice that pursuant to Rules 26 and 33 of the Federal Rules of the Civil

Procedure, and Local Civil Rules 26 through 37, Defendant WAL-MART STORES, INC. ("Wa-

Mart")   request that plaintiff REEBOK INTERNATIONAL LTD. ("Reebok") answer, under

oath, the following Interrogatories, and provide such answers to defendant's attorney at Gibbons,

Del Deo, Dolan, Griffinger & Vecchione, One Pennsylvania Plaza, New York, New York 10119

on or before October 10,  2005.

## Definitions and Instructions

### Instructions

*1.*    For all purposes herein, spelling, grammar, syntax, abbreviations, idioms and proper nouns shall be construed and interpreted to give proper meaning and consistency to its context.

*2.*    For all purposes herein, any word written in the singular herein shall be construed as plural or vice versa when necessary to bring within the scope of the request all responses that otherwise might be construed as outside its scope.

*3.*    For all purposes herein, the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

*4.*    These discovery requests shall be read reasonably in the recognition that the party serving them does not have the information being sought and the party and/or attorney receiving them generally does have such information or can obtain it from the client.

*5.*    With respect to each document to which an objection as to production is made, state the following:

*i.*    the nature of the document;

*ii.*    the date of the document;

*iii.*    the name and title of the person(s) to whom the document was addressed;

*iv.*    the name and title of the person(s) who prepared and/or sent the document;

*v.*    the general subject matter of the document;

*vi.*    all documents referred to or accompanying such documents;

*vii.*    the number of pages in the document;

*viii.*   the specific ground on which the objection is made.

*6.*   All documents shall be identified by the request(s) to which they are primarily responsive.

*7.*   To the extent a document sought herein was at one time, but is no longer, in your possession, or subject to your control, state whether it: (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred to others, and/or (iv) has been otherwise disposed of.   In each instance, explain the circumstances surrounding authorization for such disposition thereof; state the date or approximate date thereof; the contents of said document; and the person who authorized the transfer, destruction or other disposition of such document.  Documents prepared prior to, but which relate or refer to, the time period covered by these documents are to be identified.

*8.*   <u>Claims of Privilege</u>.  Please refer to Fed. R. Civ. P. 26-37 and Local Civil Rules 26-37, which is incorporated herein by reference, for all claims of privilege. Where a claim of privilege is asserted in objecting to any means of discovery or disclosure, and an answer is not provided on the basis of such assertion, identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and  the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

*i.*   <u>For documents</u>: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the

addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

*ii.* <u>For oral communications</u>: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

*9.* All requests herein implicitly seek responses that refer or otherwise relate to the subject matter of the requests, and each request shall be interpreted so as to encompass the liberal scope of discovery set forth in Fed. R. Civ. P. 26(b)(1), and defendants are expected to provide any supplementary answers, immediately, in compliance with Fed. R. Civ. P. 26.

*10.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

## <u>Definitions</u>

**A.** As used herein, the term "Reebok", "Plaintiff" and "plaintiff" shall refer to the named plaintiff, Reebok International Ltd., as well as any of their individual or collective affiliates, assigns, employees, companies, corporations, ventures, partnerships and/or any other affiliated persons or entities, as well as any agents or other persons acting in privity or concert therewith.

**B.**     As used herein, the term "Defendant", "defendant" or "Wal-Mart" refers to Defendant Wal-Mart Stores, Inc. as well as any of its affiliates, assigns, employees, companies, corporations, ventures, partnerships and/or any other affiliated persons or entities, as well as any agents or other persons acting in privity or concert therewith.

**C.**     As used herein, the term "the '127 Patent" refers to of U.S. Patent No. D495,127.

**D.**     As used herein, the term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules of Civil Procedure 26 and 34 and is used in its customary broad sense to include, without limitation, all permanent and/or semi-permanent records, writing, thing or document of every type, in any tangible medium, whether created by device or written by hand, of which Plaintiff (as that term is defined herein) has knowledge, whether or not in Plaintiff's possession, custody or control including without limitation: correspondence, facsimiles, telegrams, telexes, e-mail or other electronic communications, memoranda, stenographic and handwritten notes, summaries, records of personal conversations, diaries, reports, notebooks, surveys, statistical compilations, charts, graphs, plans, illustrations, photographs, diagrams, pictures, drawings of every type, blue lines, prints, films, studies, publications, books, pamphlets, recordings in any form (analog or digital, on cassette, compact disc, or any digital or computer recognizable format), checks, bank statements, income tax forms, other tax forms, minutes or records of meetings, reports and/or summaries of investigations, opinions or reports of consultants, contracts, memoranda of agreement(s), microfilm, microfiche, and electronic or computerized data compilations, computer records, computer tapes, disks, and printouts.  A draft or non-identical copy is a separate document within the meaning of this term.  Any such document on any sheet or side thereof, any marks, such as (but not limited to) stamped indicia, comments or notations, of any character and not a part of the

original text or photographic reproduction thereof; is to be considered and identified as a separate document.

 **E.** As used herein, the term "communication" shall refer to the transmittal of information (in the form of facts, ideas, inquiries or otherwise), in any manner and/or medium.

 **F.** As used herein, the term "concerning" shall mean relating to, referring to, describing, evidencing, comprising, constituting, discussing, evaluating, analyzing, evidencing, concerning and/or supporting in whole or in part.

 **G.** As used herein, the term "entity" means a partnership, corporation, proprietorship, association, government or any other government or business organization, whether formal or informal.

 **H.** When referring to a person, the term "to identify" means, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

 **I.** When referring to documents, the term "to identify" means, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

 **J.** As used herein, the term "the Action" refers to the current lawsuit between the parties.

 **K.** As used herein, the term "the Complaint" refers to Reebok's Complaint filed in this action.

 **L.** As used herein, the term "the Answer" refers to Wal-Mart's Answer, Affirmative Defenses and Counterclaim served in this action.

**M.**     As used herein, the term "fact" as used herein shall include, without limitation every relevant matter, occurrence, act, event, transaction, occasion, meeting, document, instance, circumstance, recitation, writing, or other happening.

**N.**     As used herein, the term "Oxide Shoe" refers to the one or more line(s) of shoes offered for sale and/or sold by Wal-Mart that Reebok alleges infringes the '127 Patent.

## Interrogatories

***Interrogatory No. 1.***      Identify each witness Reebok reasonably anticipates calling at trial, and describe the facts that each individual identified will testify to.

**_Interrogatory No. 2._**          Identify each witness that can state the basis for each of the allegations in Reebok's original complaint.  In responding, identify the scope of each witness's knowledge by specific reference to paragraph numbers employed in the original complaint.

**_Interrogatory No. 3._**        State the basis for Reebok's claim of patent infringement,

and state each point of novelty that Reebok asserts.

**_Interrogatory No. 4._**          Identify each individual that has helped in the

preparation of Reebok's responses to the discovery served by Wal-Mart in

this action, and specifically state what each individual has done in such

preparation.

**_Interrogatory No. 5._**          Identify each expert consulted by Reebok and/or its

counsel in preparing its motion for summary judgment.

**_Interrogatory No. 6._**            Identify all individuals that were involved with the

creation of the '127 Patent.

**_Interrogatory No. 7._**          Identify all individuals that have any knowledge

regarding the commercial success of any products that incorporate or

otherwise utilize the '127 Patent.

***Interrogatory No. 8.***          Identify each expert consulted by Reebok concerning

this action.

**_Interrogatory No. 9._**          Identify each individual consulted by Reebok

concerning Reebok's position that unevenly spaced hash lines in a design

patent denote curvature.

**_Interrogatory No. 10._**          Identify each individual consulted by Reebok

concerning Reebok's position that evenly spaced hash lines denote a flat

surface.

Respectfully submitted,

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

Dated:  September ___, 2005

By: _____
Irving H. Picard (BBO # 398820)
Peter T. Cobrin (pro hac vice)
Oren J. Warshavsky (pro hac vice)
One Pennsylvania Plaza, 37th Floor
New York, NY 10119
(212) 649-4700 ph
(212) 333-5980 fax

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| REEBOK INTERNATIONAL LTD.,<br><br>                          Plaintiff,<br>    v.<br><br>WAL-MART STORES, INC.,<br><br>                   Defendant. | Civil Action No. 04-12668 (RGS)(RBC)<br>Hon. Richard G. Stearns, U.S.D.J. |

**DEFENDANT WAL-MART STORES, INC.'S FIRST SET OF
DOCUMENT DEMANDS**

To:    Victoria L. Walton (BBO #650999)
        BURNS & LEVINSON LLP
        125 Summer Street
        Boston, Massachusetts 02110-1624

        Donald R. Banowit (*pro hac vice*)
        STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
        1100  New York Avenue, N.W.
        Washington, D.C. 20005

        *ATTORNEYS FOR PLAINTIFF,*
        *REEBOK INTERNATIONAL LTD.*

        Please Take Notice that pursuant to Rules 26 and 34 of the Federal Rules of the Civil

Procedure, and the Local Civil Rules, Defendant WAL-MART STORES, INC. ("Wa-Mart")

request that plaintiff REEBOK INTERNATIONAL LTD. ("Reebok") respond in writing and

produce documents responsive to the document requests set forth herein, and provide the same to

Wal-Mart on or before October ___, 2005, at the offices of Gibbons, Del Deo, Dolan, Griffinger

& Vecchione, P.C., One Pennsylvania Plaza, New York, New York 10119.

## <u>Definitions and Instructions</u>

Wal-Mart hereby incorporates by reference the definitions and instructions included in Wal-Mart's first set of interrogatories.

**Document Requests**

***Document Request No. 1*** All documents concerning the facts raised in Reebok's Complaint in this action.

***Document Request No. 2*** To the extent not already provided or provided responsive to the requests herein, all documents that are identified in Ingenium's initial disclosures and/or relate or refer to Ingenium's initial disclosures, but that have not been produced.

***Document Request No. 3*** All documents concerning the '127 Patent.

***Document Request No. 4*** All documents concerning each and every item commercialized by Reebok that in any way incorporates the claimed elements of the '127 Patent.

***Document Request No. 5*** All documents concerning the invention contained in the '127 Patent including, without limitation, all designs, rejected designs, drawing, sketches and prototypes.

***Document Request No. 6*** All prototypes which contain one or more of the elements of the '127 Patent.

***Document Request No. 7*** All licenses issued by Reebok for the '127 Patent.

***Document Request No. 8*** All documents concerning the relationship between Reebok on the one hand and William Marvin on the other.

***Document Request No. 9*** All documents, including without limitation designs, drawings, specifications and prototypes, concerning William Marvin's contribution to the '127 Patent.

***Document Request No. 10*** All documents concerning the relationship between Reebok on the one hand and Brian Christensen on the other.

**_Document Request No. 11_**   All documents, including without limitation designs, drawings, specifications and prototypes, concerning Brian Christensen's contribution to the '127 Patent.

**_Document Request No. 12_**   The prosecution history of the '127 Patent.

**_Document Request No. 13_**   All documents concerning any item made, used, sold, offered for sale or published by Reebok which contains one or more of the claimed elements of the '127 Patent.

**_Document Request No. 14_**   All documents relating and/or referring to the conception, due diligence and/or reduction to practice of the invention of the '127 patent.

**_Document Request No. 15_**   All documents concerning the date of creation and/or publication of the documents produced pursuant to Document Request No. 13.

**_Document Request No. 16_**   All documents concerning any relevant prior art searches undertaken by or on behalf of Reebok prior to the filing of the application for the '127 Patent.

**_Document Request No. 17_**   All documents concerning any relevant prior art searches undertaken by or on behalf of Reebok subsequent to the filing of the application for the '127 Patent but prior to the issuance of the '127 Patent.

**_Document Request No. 18_**   All documents concerning any relevant prior art searches undertaken by or on behalf of Reebok subsequent to the issuance of the '127 Patent.

**_Document Request No. 19_**   To the extent not already provided, all documents concerning the prior art relevant to the '127 Patent.

**_Document Request No. 20_**   All documents concerning Reebok's knowledge of the Oxide Shoe.

**_Document Request No. 21_**   To the extent not already provided, All documents concerning the Oxide Shoe.

**_Document Request No. 22_**   All documents concerning the distribution, by or on behalf of Reebok, prior to April 14, 2004, of shoes that incorporate one or more of the claimed elements of the '127 Patent.

**_Document Request No. 23_**   All documents concerning the distribution, by or on behalf of Reebok, subsequent to April 14, 2004 and prior to August 31, 2004, of shoes that incorporate one or more of the claimed elements of the '127 Patent.

**_Document Request No. 24_**   All documents concerning the distribution, by or on behalf of Reebok, subsequent to August 31, 2004, of shoes that incorporate one or more of the claimed elements of the '127 Patent.

**_Document Request No. 25_**   All documents concerning the manufacturing requirements and specifications, including without limitation, written instructions and drawings, for shoes that incorporate one or more of the claimed elements of the '127 Patent.

**_Document Request No. 26_**   All documents relied upon and/or reviewed by Reebok in responding to Wal-Mart's interrogatories.

**_Document Request No. 27_**   All documents concerning any alleged infringement of the '127 Patent.

Respectfully submitted,

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

Dated:  September ___, 2005          By: _____
                                     Irving H. Picard (BBO # 398820)
                                     Peter T. Cobrin (pro hac vice)
                                     Oren J. Warshavsky (pro hac vice)
                                     One Pennsylvania Plaza, 37th Floor

New York, NY 10119
(212) 649-4700 ph
(212) 333-5980 fax

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*



**Sterne Kessler Goldstein Fox**
ATTORNEYS AT LAW

Robert Greene Sterne
Edward J. Kessler
Jorge A. Goldstein
David K.S. Cornwell
Robert W. Esmond
Tracy-Gene G. Durkin
Michele A. Cimbala
Michael B. Ray
Robert E. Sokohl
Eric K. Steffe
Michael Q. Lee
Steven R. Ludwig
John M. Covert
Linda E. Alcorn
Robert C. Millonig
Donald J. Featherstone
Lawrence B. Bugaisky
Michael V. Messinger
Judith U. Kim

Timothy J. Shea, Jr.
Patrick E. Garrett
Jeffrey T. Helvey
Heidi L. Kraus
Albert L. Ferro*
Donald R. Banowit
Peter A. Jackman
Teresa U. Medler
Jeffrey S. Weaver
Kendrick P. Patterson
Vincent L. Capuano
Eldora Ellison Floyd
Thomas C. Fiala
Brian J. Del Buono
Virgil Lee Beaston
Theodore A. Wood
Elizabeth J. Haanes
Joseph S. Ostroff
Frank R. Cottingham

Christine M. Lhulier
Rae Lynn P. Guest
George S. Bardmesser
Daniel A. Klein*
Jason D. Eisenberg
Michael D. Specht
Andrea J. Kamage
Tracy L. Muller*
Jon E. Wright
LuAnne M. DeSantis
Ann E. Summerfield
Aric W. Ledford*
Helene C. Carlson
Cynthia M. Bouchez
Timothy A. Doyle*
Gaby L. Longsworth
Lori A. Gordon*
Nicole D. Dretar
Ted J. Ebersole

Jyoti C. Iyer*
Laura A. Vogel
Michael J. Mancuso
Bryan S. Wade
Aaron L. Schwartz
Matthew E. Kelley*
Nicole R. Kramer*

Registered Patent Agents∙
Karen R. Markowicz
Nancy J. Leith
Matthew J. Dowd
Aaron L. Schwartz
Katrina Yujian Pei Quach
Bryan L. Skelton
Robert A. Schwartzman
Teresa A. Colella
Jeffrey S. Lundgren
Victoria S. Rutherford

Michelle K. Holoubek
Simon J. Elliott
Julie A. Heider
Mita Mukherjee
Scott M. Woodhouse
Michael G. Penn
Christopher J. Walsh
Peter A. Socarras

Of Counsel
Kenneth C. Bass III
Evan R. Smith
Marvin C. Guthrie

*Admitted only in Maryland
*Admitted only in Virginia
∙Practice Limited to
  Federal Agencies

August 30, 2005

*WRITER'S DIRECT NUMBER:*
(202) 772-8538
*INTERNET ADDRESS:*
DBANOWIT@SKGF.COM

Peter T. Cobrin, Esq.
**GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE**
One Pennsylvania Plaza
37th Floor
New York, NY 10119

*via Facsimile*
(973) 639-8381
2 Pages

Re:  *Reebok International Ltd. v. Wal-Mart Stores, Inc.*
U.S. District Court for the District of Massachusetts
Civil Action No. 04-CV-12668 RGS
Our Ref: 2073.008LIT1

Dear Peter:

Further to your letter of August 30, 2005, we disagree as to your characterization of Reebok's proposed discovery. During the hearing on August 5, 2005, you indicated that Wal-Mart intends to provide testimony as to obviousness at trial to support its defense of invalidity. As you are no doubt aware, objective evidence of nonobviousness may include commercial success and copying by others. For at least this reason, Reebok's proposed depositions are necessary to counter Wal-Mart's invalidity defense. In fact, much of Reebok's proposed discovery is necessitated by Wal-Mart's insistence on raising invalidity at trial, despite the Court's finding to the contrary.

Further, the issue of willfulness is so intertwined with the issues of infringement and validity that we do not anticipate that the Court would empanel a second jury solely for the purpose of determining whether Wal-Mart's infringement was willful. Therefore, we intend to be prepared to try the issue of willfulness. Additionally, we do not agree that the Court has restricted discovery to any particular issues.

Peter T. Cobrin, Esq.
August 30, 2005
Page 2

We are disappointed that Wal-Mart is unwilling to agree to a shortened period for response to Reebok's discovery requests. Nevertheless, we look forward to receiving Wal-Mart's responses to Reebok's discovery requests, including any documents to be produced pursuant to such requests, on or before September 22, 2005.

As to the other dates, Reebok is willing to agree to your revised scheduled as follows:

| | |
|---|---|
| Initial Disclosures | 9/16/05 |
| Affirmative Expert Reports Due | 10/7/05 |
| Rebuttal Expert Reports Due | 10/21/05 |
| Fact and Expert Depositions Completed | 10/28/05 |

As we indicated in our letter of August 23, 2005, we are in the process of confirming the available dates for the deposition of William Marvin and Brian Christensen in Boston and will provide you with that information as soon as possible. To that end, please let us know if you would prefer to conduct both depositions on the same day.

Sincerely,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Donald R. Banowit

DKSC/DRB:lna
438029_1.DOC



BUILT FOR DETERMINED SOLES

**FOR MORE INFORMATION ABOUT STARTER FOOTWEAR CONTA**

BRYAN DELUCA OR ANDREA SUAREZ / GROUP 3 DESIGN / 1350 BROADWAY SUITE 300 / NEW YORK, NY 10018 / 212-56

STARTER IS A REGISTERED MARK OF OFFICIAL STARTER LLC. © 2004 OFFICIAL STARTER LLC.



# FOR MORE INFORMATION ABOUT STARTER FOOTWEAR CONTACT:
BRYAN DELUCA OR ANDREA SUAREZ / GROUP 3 DESIGN / 1350 BROADWAY SUITE 300 / NEW YORK, NY 10018 / 212-564-3443

STARTER IS A REGISTERED MARK OF OFFICIAL STARTER LLC. © 2004 OFFICIAL STARTER LLC.



## Sterne Kessler Goldstein Fox

| | | | | |
|---|---|---|---|---|
| Robert Greene Sterne | Judith U. Kim | Elizabeth J. Haanes | Timothy A. Doyle* | Eric D. Hayes |
| Edward J. Kessler | Timothy J. Shea, Jr. | Joseph S. Ostroff | Gaby L. Longsworth* | Michelle K. Holoubek |
| Jorge A. Goldstein | Patrick E. Garrett | Frank R. Cottingham | Nicole D. Dretar* | Robert H. DeSelms |
| David K.S. Cornwell | Heidi L. Kraus | Christine M. Lhulier | Ted J. Ebersole | Simon J. Elliott |
| Robert W. Esmond | Edward W. Yee | Rae Lynn Prengaman | Jyoti C. Iyer* | Julie A. Heider |
| Tracy-Gene G. Durkin | Albert L. Ferro* | Jane Shershenovich* | | Mita Mukherjee |
| Michele A. Cimbala | Donald R. Banowit | George S. Bardmesser | Registered Patent Agents• | Scott M. Woodhouse |
| Michael B. Ray | Peter A. Jackman | Daniel A. Klein* | Karen R. Markowicz | |
| Robert E. Sokohl | Teresa U. Medler | Jason D. Eisenberg | Nancy J. Leith | |
| Eric K. Steffe | Jeffrey S. Weaver | Michael D. Specht | Helene C. Carlson | Of Counsel |
| Michael Q. Lee | Kendrick P. Patterson | Andrea J. Kamage | Matthew J. Dowd | Kenneth C. Bass III |
| Steven R. Ludwig | Vincent L. Capuano | Tracy L. Muller* | Aaron L. Schwartz | Evan R. Smith |
| John M. Covert | Eldora Ellison Floyd | LuAnne M. DeSantis | Katrina Y. Pei Quach | Marvin C. Guthrie |
| Linda E. Alcorn | Thomas C. Fiala | John J. Figueroa | Bryan L. Skelton | |
| Robert C. Millonig | Brian J. Del Buono | Ann E. Summerfield | Robert A. Schwartzman | *Admitted only in Maryland |
| Donald J. Featherstone | Virgil Lee Beaston | Tiera S. Coston | Teresa A. Colella | *Admitted only in Virginia |
| Lawrence B. Bugaisky | Kimberly N. Reddick | Aric W. Ledford* | Jeffrey S. Lundgren | •Practice Limited to |
| Michael V. Messinger | Theodore A. Wood | Jessica L. Parezo | Victoria S. Rutherford | Federal Agencies |

April 15, 2004

FILE COPY

*WRITER'S DIRECT NUMBER:*
(202) 772-8580
*INTERNET ADDRESS:*
DAVIDC@SKGF.COM

Ms. Mary Gleason
President and CEO
**Group 3 Design**
1350 Broadway Suite 300
New York, NY 10018

**CERTIFIED MAIL**

*Respond by May 1, 2004.*

Re:      Our Ref:      2073.008EFN1

Dear Ms. Gleason:

We represent Reebok International Ltd. ("Reebok") in intellectual property matters. As you are no doubt aware, Reebok markets REEBOK shoes throughout the world. Reebok has expended substantial sums in designing its shoes and in promoting and protecting its technology and its designs. Reebok considers its intellectual property to be among its most valuable assets. Reebok is committed to protecting its rights in the technology incorporated in and the design of REEBOK shoes.

Group 3 Design is marketing and either currently selling or soon will be selling an athletic shoe under the Starter trademark which copies Reebok's proprietary trade dress. In addition, Reebok owns both design and utility patent applications protecting the design and underlying technology of Reebok's DMX Reflex running shoe. We expect that the design patent will issue in the very near future. The purpose of this letter is to give Group 3 Design a chance to stop its activities before it becomes economically difficult to do so.

A copy an advertisement from the April 5, 2004 issue of Footwear News, illustrating the Starter trademark shoe is attached hereto as Exhibit A. Upon issuance of Reebok's design patent, the unauthorized manufacture, use, sale and/or offer for sale of the Starter trademark shoe, shown in Exhibit A, will constitute infringement of Reebok's patent. As you may know, a design patent owner is statutorily entitled to an infringer's profits.

Reebok demands that Group 3 Design immediately cease all manufacturing, ordering, importing, distributing, promoting, advertising, selling and offering to sell these shoes and any shoes which have soles which look like the soles of the trade dress used in Reebok's DMX Reflex shoe. Reebok also demands that Group 3 Design provide Reebok with written assurance that it will not further manufacture, order, import, distribute, promote, advertise, offer for sale or

Ms. Mary Gleason
April 15, 2004
Page 2

sell these shoes and any other shoes which have a shoe sole which look like these shoe soles, or which otherwise infringe Reebok's trade dress.

In addition, Reebok demands that Group 3 Design deliver to us a written statement containing the following information:

1. A complete and accurate list of names and addresses of all sources from whom you obtained these shoes or shoe heel portions, the number of pairs of such heel portions obtained from each source and the date(s) on which such heel portions were received;

2. The total number of these shoes in inventory;

3. The total number of these shoes on order; and

4. Your per pair cost of these shoes.

We look forward to receiving your information and written assurance described above *by May 1, 2004.* At which time, we will contact you to discuss the nature and extent of the infringing activities and the damages which Reebok has suffered as a result.

Very truly yours,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

David K.S. Cornwell

DKSC/RLP/dbj

251603_1.DOC

251603-1





TWJ                    TWJ 4/28
DKSC                   [signature]
                       5/6/04

April 26, 2004

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

David K.S. Cornwell, Esq.
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005

> Re: Reebok International Ltd. ("Reebok")
> Your Ref: 2073.008EFN1

Dear Mr. Cornwell:

We are in receipt of your April 15, 2004 correspondence.

Please be advised that Group 3 Design does not design, manufacture, sell or import any footwear products sold under the STARTER trademark. The footwear that you allege in your letter to infringe Reebok's trade dress and potentially infringe Reebok's design and utility patents in the event that such do, in fact, issue, are products of IFH, 410 Hamburg Turnpike, Wayne, New Jersey 07470. We have forwarded your letter and the enclosure to Ms. Barbara Koetsier at IFH and expect that she will contact you concerning the allegations set forth in your letter.

Very truly yours,

Betsy Kain
COO

BK/slm

cc:    Ms. Barbara Koetsier

# SALON MARROW DYCKMAN & NEWMAN LLP

*2073.008EAN*

ATTORNEYS AT LAW

292 MADISON AVENUE • NEW YORK, NY 10017

Joel Salon
jsalon@salonmarrow.com
Ext. 913

Telephone  (212) 661-7100

Telecopier  (212) 661-3339

800 CORPORATE DRIVE
SUITE 208
FT. LAUDERDALE, FL 33334
TELEPHONE (954) 491-0099
TELECOPIER (954)491-1544

2 UNIVERSITY PLAZA
SUITE 210
HACKENSACK, NJ 07601
TELEPHONE (201) 662-0656
TELECOPIER (201)487-9054

April 30, 2004

**VIA E-MAIL AND REGULAR MAIL**

DavidC@skgf.com
David K.S. Cornwell, Esq.
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1100 New York Avenue, N.W.
Washington, D.C. 20005

RECEIVED
MAY - 3 2004
Sterne, Kessler, Goldstein & Fox,
P.L.L.C.

TWJ
DKSC

TWJ 5/3

           **Re:    Oxide Shoe**

Dear Mr. Cornwell:

The undersigned represent International Footwear Holdings, Inc. a licensee of the Starter® trademark and your letter of April 15, 2001 to Group 3 Design has been referred to us for reply.

Based upon the information in our possession at this time, we are of the opinion that the shoe referred to in your letter (the "Oxide Shoe") does not infringe upon Reebok's tradedress.

As to Reebok's claims that the Oxide Shoe will infringe the design and utility patents that may issue in the future, we are not in a position to form an opinion and will not be until you respond to our previous requests to provide us with copies of the relevant applications.

Very truly yours,

Joel Salon

JS\la
cc:   Barbara Koetsier (Barbara@ljoinc.com)
      Peter Cobrin (Pcobrin@gibbonslaw.com)
      Mary Gleason (mgleason@groupthreedesign.com)

Doc # 106574.1-Word



**Sterne Kessler Goldstein Fox**
ATTORNEYS AT LAW

| | | | | |
|---|---|---|---|---|
| Robert Greene Sterne | Judith U. Kim | Joseph S. Ostroff | Ted J. Ebersole | Julie A. Heider |
| Edward J. Kessler | Timothy J. Shea, Jr. | Frank R. Cottingham | Jyoti C. Iyer* | Mita Mukherjee |
| Jorge A. Goldstein | Patrick E. Garrett | Christine M. Lhulier | Laura A. Vogel | Scott M. Woodhouse |
| David K.S. Cornwell | Jeffrey T. Helvey | Rae Lynn P. Guest | | Michael G. Penn |
| Robert W. Esmond | Heidi L. Kraus | George S. Bardmesser | Registered Patent Agents• | Christopher J. Walsh |
| Tracy-Gene G. Durkin | Albert L. Ferro* | Daniel A. Klein* | Karen R. Markowicz | |
| Michele A. Cimbala | Donald R. Banowit | Jason D. Eisenberg | Nancy J. Leith | Of Counsel |
| Michael B. Ray | Peter A. Jackman | Michael D. Specht | Matthew J. Dowd | Kenneth C. Bass III |
| Robert E. Sokohl | Teresa U. Medler | Andrea J. Kamage | Aaron L. Schwartz | Evan R. Smith |
| Eric K. Steffe | Jeffrey S. Weaver | Tracy L. Muller* | Katrina Yujian Pei Quach | Marvin C. Guthrie |
| Michael Q. Lee | Kendrick P. Patterson | LuAnne M. DeSantis | Bryan L. Skelton | |
| Steven R. Ludwig | Vincent L. Capuano | Ann E. Summerfield | Robert A. Schwartzman | *Admitted only in Maryland |
| John M. Covert | Eldora Ellison Floyd | Aric W. Ledford* | Teresa A. Colella | * Admitted only in Virginia |
| Linda E. Alcorn | Thomas C. Fiala | Helene C. Carlson | Jeffrey S. Lundgren | •Practice Limited to |
| Robert C. Millonig | Brian J. Del Buono | Timothy A. Doyle* | Victoria S. Rutherford | Federal Agencies |
| Lawrence B. Bugaisky | Virgil Lee Beaston | Gaby L. Longworth | Michelle K. Holoubek | |
| Donald J. Featherstone | Theodore A. Wood | Lori A. Gordon* | Robert H. DeSelms | |
| Michael V. Messinger | Elizabeth J. Haanes | Nicole D. Dretar* | Simon J. Elliott | |

September 7, 2004

*WRITER'S DIRECT NUMBER:*
(202) 772-8580
*INTERNET ADDRESS:*
DAVIDC@SKGF.COM

Joel Salon, Esq.
**Salon Marrow Dyckman & Newman LLP**
292 Madison Avenue
New York, New York 10017

*Via Facsimile*

       Re:     Our Ref:     2073.008EFN1

FILE COPY

Dear Mr. Salon:

    This letter will serve as notice that U.S. design patent number Des.495,127 issued to Reebok International Ltd. ("Reebok") on August 31, 2004. A copy of the design patent is attached for your review. As you are also aware, International Footwear Holdings, Inc. ("IFH"), the licensee of the Starter® trademark, is selling a shoe (identified by you in your April 30, 2004 letter as "the Oxide Shoe"), which infringes Reebok's patent rights.

    For your review and analysis, we also enclose a side-by-side visual comparison between the figures of the design patent application and the Oxide shoe. Once you review this comparison, we are confident that you will agree that the Oxide shoe falls within the scope of Reebok's allowed design patent.

    Reebok demands that IFH immediately ceases manufacturing, selling and distributing the Oxide Shoe and any other products which infringe Reebok's design patent. In addition, Reebok demands that IFH immediately provide Reebok the following information:

    1.    The total number of Oxide shoes sole to Wal-Mart;

    2.    The total number of shoes that have the appearance of the Oxide shoe sold to any other party;

    3.    The name of the factory or factories that made the Oxide shoe; and

    4.    The landed cost of the Oxide shoe.

Joel Salon, Esq.
September 7, 2004
Page 2

     Please respond no later than September 9, 2004 at 5 o'clock p.m. EST.

            Very truly yours,

            STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

            David K. S. Cornwell

DKSC/rlp
Enclosures

307963_1.DOC

# Reebok

**John W. Banse**
*Corporate Counsel*

Direct Dial: (781) 401-5435
Direct Fax: (781) 401-4780
E-Mail: john.banse@reebok.com

September 7, 2004

<u>VIA FACSIMILE AND CERTIFIED MAIL</u>
Wade J. Savoy, Esq.
Assistant General Counsel of Intellectual Property
**Wal-Mart Stores, Inc.**
702 S.W. 8th Street
Bentonville, AR 72716

Re:   Reebok International Ltd.'s U.S. Design Patent No. D495,127

Dear Mr. Savoy:

We have been trying to reach you regarding a product being sold at Wal-Mart stores that infringes Reebok's U.S. Design Patent No. D495,127, issued Aug. 31, 2004 ("the '127 patent"). The infringing product sold under the Starter® trademark and bears the product name "Oxide." We have confirmed that stores are selling Men's, Women's, Youth's and Children's versions of this shoe. For example, the Women's shoe is sold as Starter Model No. 6086155 and product code 000528020883. We have attached for your review a copy of the '127 patent along with a side-by-side comparison of the Oxide shoe from starter and the claimed portion of a shoe.

We understand that International Footwear Holdings, Inc. ("IFH") is the supplier for the Oxide shoe. We suspect that Wal-Mart will be properly indemnified by IFH for any patent infringement. As such, Reebok hopes that Wal-Mart Stores, Inc. will cooperate with Reebok by withdrawing the shoes from the market until such time as this matter can be resolved with IFH. As a first step, Reebok would like Wal-Mart to provide Reebok the volume of shoes purchased from IFH and to confirm whether or not this was a special order particularly for Wal-Mart Stores.

REEBOK INTERNATIONAL LTD
1895 J.W. Foster Boulevard
Canton, Massachusetts 02021
781 401 5000
www.reebok.com

Wade J. Savoy, Esq.
September 7, 2004
Page 2


     Reebok considers Wal-Mart to be a valuable business partner. We hope that Wal-Mart will not tolerate companies who manufacture and sell infringing goods to retailers. Therefore, we are asking for your cooperation in this matter, and we look forward to hearing from you.

          Very truly yours,

          John Banse

Enclosures

# GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

### A PROFESSIONAL CORPORATION

**ATTORNEYS AT LAW**

ONE PENNSYLVANIA PLAZA

37TH FLOOR

NEW YORK, NY 10119-3701

212-649-4700

Peter T. Cobrin
Director
(212) 554-9603

DIRECT FACSIMILE
(973) 639-8381
PCobrin@gibbonslaw.com

WEB SITE
http://www.gibbonslaw.com



September 14, 2004

**VIA FACSIMILE AND REGULAR MAIL**

David K. S. Cornwell, Esq.
Sterne, Kessler, Goldstein & Fox, PLLC
1100 New York Avenue, N.W.
Washington, DC 20005

> Re:  Reebok's U.S. Patent No. D495,127
>       Our Ref. No.: 105210/51626

Dear Mr. Cornwell:

We are the patent counsel for International Footwear Holdings, Inc. ("IFH"). We reviewed the above referenced patent (the "Reebok patent") in light of the Oxide shoe (the "Oxide"). It is our opinion that the Oxide shoe does not infringe the Reebok patent due to the omission of claimed design features. Further, it is our opinion that the Oxide shoe does not infringe the patent because it is invalid in light of available prior art. I am enclosing copies of the prior art for your review.

For your information, the Oxide shoe is no longer being manufactured, because its design has been discontinued. The manufacturing stopped before the issuance of the Reebok patent. Hence, further demands to cease and desist the alleged infringement activity is pointless with respect to the Oxide shoe. Further, IFH will not provide confidential and proprietary information that you seek in your September 7, 2004 letter.

The following discussion outlines the reasoning behind our conclusion of non-infringement of the Reebok patent by the Oxide shoe and invalidity of the Reebok patent.

## THE REEBOK PATENT

The Reebok patent includes a claim reciting the ornamental design for a portion of a midsole, as shown and described in its two figures. Fig. 1 is a side view of the design and Fig. 2 is a cross-sectional view. The patent describes a portion of a shoe's heel between the outsole and

#88762 v2
105210-51626

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

David K. S. Cornwell, Esq.
September 14, 2004
Page 2

the upper. The portion includes a stair-step design having two steps of equal height. The steps' platforms appear to be angled with respect to a ground surface and parallel to each other throughout. The steps are uniform and do not curve upward or downward throughout the design. Further, as shown in Fig. 1, the claimed portion is substantially symmetrical about line 2-2. As shown in Fig. 2, the steps include smooth outside edges as the heights of the steps continue to their respective platforms.

## THE LAW OF PATENT INFRINGEMENT

A patent infringement analysis is a two step process. First the court must construe the claims as a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 1393 (1996). Second, the fact-finder must compare the properly construed claims to the accused design. *Id.*

### I.    Claim Construction

The Federal Circuit has recognized that: "[d]esign patents have almost no scope because the claim is limited to what is shown in the drawings." *In re Mann*, 861 F.2d 1581, 1582, (Fed. Cir. 1988) To determine what the drawings actually show, "reference is made to the prior art and the prosecution history in order to give appropriate weight to the factors that contributed to patentability." *L.A. Gear, Inc. v. Tom McAnn Shoe Co.*, 988 F.2d 1117, 1125, (Fed. Cir. 1993), *cert. denied*, 510 U.S. 908, 114 S. Ct. 291, 126 L.Ed. 2d 240 (1993).

### II.    Claim Comparison

A comparison of the construed claim to the accused design is another two step process. First the fact finder must "examine the overall similarity of the patented and accused designs." *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d. 1444, 1450 (Fed. Cir. 1993). As stated by the United States Supreme Court:

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, [and] if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other. *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871).

Next, if the designs are similar, the fact finder must determine if "the accused device [also] appropriates the novelty in the patented device which distinguishes it from the prior art." *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, (Fed. Cir. 1984). "Unless the *Gorham* standard for finding infringement is met by the accused device there is no need [to reach this

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

David K. S. Cornwell, Esq.
September 14, 2004
Page 3

second step]." *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995). A device can not infringe a design patent if it is not at least sufficiently similar to what is shown in the patent to deceive an "ordinary" person. *Id.*

## DISCUSSION

### I.    Non-infringement

Because the design patents have almost no scope, the design of the Oxide shoe is compared to the ornamental features shown in the Reebok patent's drawings. Further, according to *Elmer*, to establish infringement, the following must be shown:

(1)    the overall design of the Oxide shoe is so similar to the overall designs depicted in the Reebok patent that an "ordinary person" would be deceived into thinking that the two were the same; and only if this step is met,

(2)    the Oxide shoe incorporates the same ornamental features as those which distinguished the Reebok patent from the prior art of record (i.e., "point of novelty" standard).

The Oxide shoe does not infringe the Reebok patent's claim because it does not contain at least three design features claimed in Figs. 1-2 of the patent. Specifically, the Oxide shoe does not include: 1) steps having angled platforms, which are uniform throughout the design; 2) smooth outside edges of the steps; and 3) a symmetry in the design.

The Oxide shoe includes steps that incline and curve in an upward direction near the back of the shoe. The upward direction is attributed to a seal in the back of the Oxide that allows the steps to be raised. Thus, the Oxide shoe does not include the configuration and orientation of the Reebok patent's steps, which are uniform throughout the design. Further, the Oxide's platforms are parallel to the ground and to each other. This is different from the Reebok patent's Fig. 2, which shows platform steps disposed at an angle to a ground surface. Hence, the Oxide shoe does not include Reebok patent's angled steps, which are uniform throughout the design.

Further, the Oxide shoe includes steps having sharp edges. The edges are formed by the heights and platforms of the steps. This is contrary to the design claim of the Reebok patent, where the edges, formed by the heights and platforms, are smooth, as shown in Fig. 2 of the patent. Hence, the Oxide does not include Reebok patent's claimed steps with smooth outside edges.

Finally, the Oxide's design is not symmetrical. Because the back portion of the Oxide shoe is raised, symmetry cannot be found. This conveys a different design impression from the

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

David K. S. Cornwell, Esq.
September 14, 2004
Page 4

Reebok patent's design. Fig. 1 of the Reebok patent shows a symmetrical design of the stair-step portion about line 2-2. Thus, this design feature is not present in the Oxide shoe.

When considered together, all of these dissimilarities convey substantial differences in overall appearance and impression between the designs. Thus, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the designs would not be viewed as substantially the same. There is no resemblance between the designs that would deceive such purchaser into thinking that the Oxide shoe includes a midsole portion shown in the Reebok patent.

For the foregoing reasons, the Oxide shoe does not infringe the Reebok patent. The overall appearance of the patented midsole portion versus the Oxide shoe and the respective impressions created in the mind of an ordinary observer are substantially different. Such an observer would not be deceived into thinking that the Oxide shoe includes the features protected by the Reebok patent, and the Oxide shoe does not appropriate the combination of ornamental features of the Reebok patent which were used to distinguish the Reebok patent over the prior art.

## II.    Invalidity

The Oxide shoe does not infringe the design claim of the Reebok patent, because it is anticipated and/or rendered obvious in light of U.S. Patent No. 2,669,038 to Werth (the "'038 patent"), U.S. Des. 350,433 to Kilgore (the "'433 patent), and a Chinese publication "Chinese Leather News." The '038 patent was filed November 19, 1951, issued February 16, 1954, and titled "Shock absorbing shoe heel." The '433 patent was filed March 23, 1994, issued January 24, 1995, and titled "Heel insert for a shoe sole." The Chinese publication is dated January 28, 2003 and shows various designs for athletic shoes and roller skates. The references qualify as prior art because their filing/publication dates are before the earliest filing date of the Reebok patent.

FIG. 1 of the '038 patent shows a stair step design of a shoe's heel. The design includes at least two steps, where each step is smaller than its preceding step, as in the Reebok patent. Further, the '038 patent's design is symmetrical, also as in the Reebok patent. The steps are parallel to each other, as shown in FIG. 1. The same design feature is present in the Reebok patent. The '038 patent shows the smallest step near the outsole of the shoe rather than near its upper. Clearly, this is irrelevant because the Reebok patent only claims a part of the shoe heel steps, without claiming the upper or even the sole in combination. Hence, the Reebok patent's design claim is anticipated by the '038 patent.

The Chinese publication shows a roller skate design bearing a "HYPNO" trademark. The design is shown in the middle of the reference with an arrow pointing towards it. The roller

GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE

David K. S. Cornwell, Esq.
September 14, 2004
Page 5

skate design includes a heel that has two steps parallel to each other. The steps shown in the publication are uniform throughout the design and further include angled platforms, as is shown in the Reebok patent design claim. The steps further include smooth outside edges, as in the Reebok patent. The publication's design is also symmetrical. This design feature is also shown in the Reebok patent. Hence, the Chinese publication anticipates the Reebok patent's design claim.

To the extent there is any difference between the Reebok patent's design and either the '038 patent or the Chinese publication that precludes anticipation, the Reebok patent is rendered obvious by either the '038 patent or the Chinese publication over the '433 patent.

The '433 patent shows a heel insert for a shoe sole. As shown in the '433 patent's figures, the insert has a stair step design similar to the Reebok design. The '433 patent also has steps that are parallel to each other and a ground surface, as in the Reebok patent. Further, the '433 patent's design is symmetrical, as shown by the design claim of the Reebok patent. The steps also include smooth outside edges. Further, the Chinese publication shows angled steps which are uniform throughout the design. The Reebok patent shows angled steps, which are uniform (See, Reebok patent, Fig. 2). Hence, the Chinese publication teaches the above design feature. Modifying the step corners of the '038 patent by the '433 patent to make them curved and symmetric and modifying the '038 patent's steps' platforms by the Chinese publication to make them angled renders the Reebok patent obvious.

Hence, the '038 patent, the '433 patent and the Chinese publication disclose all elements of the Reebok patent's claim.

It would be obvious to one having ordinary skill in the relevant art to combine the three references. All three references relate to midsole designs in footwear articles. Each reference further shows midsoles having stair-step designs. Thus, there is enough suggestion or motivation to combine the references.

Upon combination of the three references, the design in the Reebok patent is clearly realized. The combination of the three references results in a midsole portion having a symmetrical stair step design, where the steps are parallel to each other and a ground surface and have smooth outside edges. This is identical to the Reebok patent's design.

Thus, the Reebok patent is prima facie obvious in light of the above three prior art references. Hence, the Reebok patent is invalid as being anticipated and/or rendered obvious in light of the prior art.

In view of IFH's discontinuance of the Oxide shoe before the Reebok patent was granted, IFH demands that Reebok withdraw its allegations of infringement against the Oxide shoe.

**GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE**

David K. S. Cornwell, Esq.
September 14, 2004
Page 6

Further, in view of the analysis above, Reebok has no reasonable basis to accuse IFH of infringement due to non-infringement and invalidity issues of its patent even if the Oxide shoe was being continued.

Very truly yours,

Peter T. Cobrin

PTC/BAM

Enclosures

cc:    Joel Salon, Esq.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| REEBOK INTERNATIONAL LTD.,<br><br>                              Plaintiff,<br><br>           v.<br><br>WAL-MART STORES, INC.,<br><br>                              Defendant. | Civil Action No. 04-12668 (RGS)(RBC)<br>Honorable Richard G. Stearns |

**PROPOSED ORDER**

      The Court, having reviewed Reebok's Expedited Motion For Clarification of the Scope of Permitted Discovery and having considered the submissions of the parties both in support of and in opposition to the Motion, provides the following clarification regarding the scope of discovery permitted prior to the November 7, 2005 trial.


It is hereby ORDERED that,

      Trial will be held beginning on November 7, 2005 on the issues of infringement (including whether such infringement was willful) and validity.

      There is no limitation on discovery permitted by either party prior to the November 7, 2005 trial.

      With respect to the issue of validity of Reebok's U.S. Patent No. Des. 495,127 to Marvin et al. ("the Reebok patent"), the parties will be entitled to present evidence of obviousness and nonobviousness.  Objective evidence of nonobviousness includes, but is not limited to, evidence of commercial success and copying by others.  Discovery with respect to the design, manufacture, offer for sale and sale of the accused shoes, regardless of whether such activities

were conducted by a party or non-party, before or after the issuance of the Reebok patent, is, therefore, relevant.

The parties will not be precluded from further discovery, if necessary, including, but not limited to, discovery on the issue of damages, after the November 7, 2005 trial.


_____
Honorable Richard G. Stearns
United States District Court Judge

Dated: _____


443704_1.DOC