## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REEBOK INTERNATIONAL LTD.,<br><br>                Plaintiff,<br><br>   v.<br><br>WAL-MART STORES, INC.,<br><br>                Defendant. | Civil Action No. 04-12668 (RGS)(RBC)<br>Hon. Richard G. Stearns, U.S.D.J. |

---

**DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN OPPOSITION TO THE MOTION TO EXPAND THE SCOPE OF DISCOVERY FILED BY PLAINTIFF REEBOK INTERNATIONAL, LTD.; AND (2) IN SUPPORT OF WAL-MART'S CROSS MOTION TO AMEND THE COMPLAINT**

---

**GIBBONS, DEL DEO, DOLAN, GRIFFINGER & VECCHIONE**
A Professional Corporation
One Pennsylvania Plaza, 37th Floor
New York, New York 10119-3701
(212) 649-4700
Attorneys for Defendant
Wal-Mart Stores, Inc.

## TABLE OF CONTENTS

**Page**

I.    Preliminary Statement.................................................................................. 1

II.   Procedural History ...................................................................................... 3

III.  Factual Background ..................................................................................... 4

IV.   There can be no Pre-Issuance Copying as a Matter of Law ........................ 5

V.    Willfulness Should Not Be Tried With Infringement................................... 7

      A.    Factual Inquiries Related to Infringement ........................................... 7

      B.    Factual Inquiries Related to Invalidity for Obviousness and Anticipation
            (35 U.S.C. §§ 102 and 103) ................................................................ 8

      C.    Factual Inquiries Related to Inequitable Conduct................................. 9

      D.    Factual Inquiries Related to Willfulness.............................................. 9

      E.    Conclusion on Similarity of Issues ..................................................... 10

      F.    Trying Willfulness Unfairly Prejudices Wal-Mart .............................. 11

      G.    Conclusion on Bifurcating Willfulness............................................... 13

VI.   Wal-Mart Should Be Permitted to Amend Its Answer to add a Claim for
      Inequitable Conduct ................................................................................... 13

      A.    Standard for Amending The Complaint............................................... 14

      B.    There is a Prima Facie Case of Inequitable Conduct............................ 14

            1.    The Duty of Candor Requires The Disclosure of Material Prior Art ...... 15

            2.    The Prior Art Advertisement is Prior Art ..................................... 16

            3.    The Prior Art Advertisement is Material ....................................... 16

            4.    Reebok's Claim of Prior Conception Is Not Relevant to Materiality ...... 18

            5.    Reebok and Cornwell Chose to Avoid Proceeding Properly.................. 19

            6.    Motivation Can Be Inferred from Conduct and Materiality ................... 21

      C.    Amending the Answer Will Not Prejudice Reebok............................... 21

      D.    Conclusion on Amending the Answer ................................................. 22

VII.  Conclusion ................................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

ACCO Brands, Inc. v. Micro Security Devices, Inc.,
346 F.3d 1075, (Fed. Cir. 2003) .................................................................. 7

American Original Corp. v. Jenkins Food Corp.,
774 F.2d 459 (Fed. Cir. 1985) .................................................................... 5

Baxter Int'l, Inc. v. McGaw, Inc.,
149 F.3d 1321, (Fed. Cir. 1998) ................................................................ 21

Brasseler U.S.A. I, L.P. v. Stryker Sales Corp.,
267 F.3d 1370, (Fed. Cir. 1999) ................................................................ 21

Bruno Independent Living Aids Inc. v. Acorn Mobility Services Ltd.,
394 F.3d 1348 (Fed. Cir. 2005) ................................................................. 21

Burroughs Wellcome Co. v. Barr Labs. Inc.,
40 F.3d 1223, (Fed. Cir. 1994) ................................................................. 19

Cooper v. Goldfarb,
154 F.3d 1321, (Fed. Cir. 1998) ............................................................... 20

Eibel Process Co. v. Minn. & Ont. Paper Co.,
261 U.S. 45, (1923) .................................................................................. 20

Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,
527 U.S. 627 (1999) .................................................................................. 7

Foman v. Davis,
371 U.S. 178, (1962) ................................................................................ 14

Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada (HIMA),
355 F.3d 1, (1st Cir. 2004) ........................................................................ 14

Gould v. Schawlow,
363 F.2d 908, (CCPA 1966) ..................................................................... 20

Graham v. John Deere Co.,
383 U.S. 1, (1966) .................................................................................... 8

Griffin v. Bertina,
285 F.3d 1029, (Fed. Cir. 2002) ............................................................... 19

Gustafson, Inc. v. Intersystems Industrial Products, Inc.,
897 F.2d 508, (Fed. Cir. 1990) ................................................................. 5

Imonex Services Inc. v. W. H. Munzprufer Dietmar Trenner GmbH,
408 F.3d 1374, (Fed. Cir. 2005) .......................................................... 10, 11

In re Harry,
333 F.2d 920, (CCPA 1964) ..................................................................... 20

#1019713 v1
105210-52957

In re Mulder,
   716 F.2d 1542, (Fed. Cir. 1983) ............................................................................ 20

In re Robertson,
   169 F.3d 743, (Fed.Cir. 1999) ................................................................................. 8

Key Pharmaceuticals Inc. v. Hercon Laboratories Corp.,
   161 F3d 709, (Fed. Cir. 1998) ................................................................................. 8

Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,
   383 F.3d 1337, (Fed. Cir. 2004) (*en banc*) ............................................................ 9

Kridl v. McCormick,
   105 F.3d 1446, (Fed. Cir. 1997) ....................................................................... 19, 20

Li Second Family Ltd. P'ship v. Toshiba Corp.,
   231 F.3d 1373, (Fed. Cir. 2000) ............................................................................. 9

Mahurkar v. C.R. Bard, Inc.,
   79 F.3d 1572, (Fed. Cir. 1996) .............................................................................. 19

Markman v. Westview Instruments, Inc.,
   52 F.3d 967, (Fed. Cir. 1995),
   aff'd, 517 U.S. 370 (1996) ...................................................................................... 8

Mas Hamilton Group v. LaGard, Inc.,
   156 F.3d 1206 (Fed. Cir. 1998) .............................................................................. 8

McNeil-PPC, Inc. v. L. Perrigo Co.,
   337 F.3d 1362, (Fed. Cir. 2003) ............................................................................ 8

Monsanto Co. v. Mycogen Plant Science, Inc.,
   261 F.3d 1356, (Fed.Cir. 2001) ............................................................................. 20

OddzOn Products, Inc. v. Just Toys, Inc.,
   122 F.3d 1396 (Fed. Cir. 1997) .............................................................................. 8

Peters v. Active Mfg. Co.,
   129 U.S. 530, (1889).............................................................................................. 17

Price v. Symsek,
   988 F.2d 1187, (Fed. Cir. 1993) ............................................................................ 20

Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,
   237 F.3d 1359, (Fed. Cir. 2001) ........................................................................ 9, 21

Quantum Corp. v. Tandon Corporation,
   940 F.2d 642, (Fed. Cir. 1991) .............................................................................. 11

Rawplug Co., Inc. v. Illinois Tool Works, Inc.,
   11 F.3d 1036, n.17 (Fed. Cir. 1993) ...................................................................... 7

Read Corp. v. Portec, Inc.,
   970 F.2d 816, (Fed. Cir. 1992) ............................................................................... 9

Schering Corp. v. Geneva Pharms., Inc.,
   339 F.3d 1373, (Fed. Cir. 2003) ............................................................................ 17

#1019713 v1
105210-52957

<u>Spectrum International, Inc. v. Sterilite Corp.,</u>
    164 F.3d 1372, (Fed. Cir. 1998) ........................................................ 7

<u>SRI International v. Matsushita Elec. Corp.,</u>
    775 F.2d 1107, (Fed. Cir. 1985) (*en banc*) ...................................... 7

<u>State Industries, Inc. v. A.O. Smith Corp.,</u>
    751 F.2d 1226 (Fed. Cir. 1985) ........................................................ 5

<u>Telemac Cellular Corp. v. Topp Telecom, Inc.,</u>
    247 F.3d 1316 (Fed. Cir. 2001) ........................................................ 8

**Statutes**

35 U.S.C. § 102(a) ......................................................................... 16

35 U.S.C. § 103 (a) ........................................................................ 17

35 U.S.C. § 271(a) (1994 ed., Supp. III) ......................................... 7

**Other Authorities**

Chisum, Donald A., <u>Chisum on Patents</u>
    at § 16.04[3] (2005 Electronic Edition) ................................. 5, 16, 20

**Rules**

Fed. R. Civ. P. 15(a) .................................................................... 14

#1019713 v1
105210-52957

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") respectfully submits this memorandum of points and authorities in opposition to the motion for "clarification" filed by plaintiff Reebok International, Ltd. ("Reebok") and in support of its cross motion to amend the complaint to allege inequitable conduct in the procurement of U.S. Patent No. Des. 495,127 (the "Reebok Patent").

## I.     PRELIMINARY STATEMENT

This should be a very simple case.  Unfortunately, Reebok's current motion both addles and amplifies the matters before the Court.  Distilled to its constituent elements, Reebok's current request, guised as a request for "clarification", seeks only to expand the scope of the trial set for November 7, 2005 in order to include the issue of "willfulness" or intent – an issue which has no overlap with the other issues currently in this case.

Interestingly, in proffering the current submission, Reebok both: (1) demonstrates that the current request has neither a factual predicate nor a legal basis; and (2) establishes a *prima facie* case that it engaged in inequitable conduct in securing the Reebok Patent.  Specifically, in presenting to the Court its argument that it seeks to explore the issue of willfulness and copying (by a third party) Reebok has submitted the following evidence:

> ➢ On <u>April 15, 2004</u>, Reebok's attorney, David K.S. Cornwell ("Cornwell") wrote a letter indicating that he was aware of an advertisement (the "Prior Art Advertisement") for the accused shoe (<u>see</u> Exhibit I to Reebok's moving papers); and

> ➢ Cornwell states that he is aware that the Prior Art Advertisement was present in the <u>April 5, 2004</u> issue of Footwear News (<u>id.</u>).

From the face of the Reebok Patent, it is clear that the Reebok Patent was filed on <u>April 14, 2004</u>. <u>See</u> Exhibit 1. It is also clear that Cornwell did not submit a copy of the Prior Art Advertisement to the United States Patent and Trademark Office (the "PTO") as required. <u>Id.</u>

**Copying.** The critical inquiry on the issue of copying is whether Wal-Mart, or any other party, copied the issued <u>Reebok Patent</u>. Obviously, the existence of the Prior Art Advertisement demonstrates that the accused product was created <u>prior</u> to the ***application*** for and the issuance of the Reebok Patent. Reebok seeks to take discovery on the issue of "copying" which, according to Reebok itself – could only have taken place prior to the application for and the issuance of the Reebok Patent – rendering the entire inquiry irrelevant. Tellingly, Reebok failed to advise the Court of these facts, and moreover, failed to advise the Court of the salient legal authority.

**Inequitable Conduct.** As further detailed herein, pursuant to 37 C.F.R. 1.56(b), Cornwell had an absolute obligation to present the Prior Art Advertisement to the PTO. His failure to do so presents a *prima facie* case of inequitable conduct. Adding this to the case at this time will not prejudice Reebok, as Reebok and its counsel are the source of all knowledge on this point, and thus will not be required to undertake additional discovery.

**Willfulness.** Reebok now seeks to include the issue of willful infringement. This case already is bifurcated on the issue of infringement and damages. Indeed, as Reebok's Memorandum concedes: "Reebok recognizes that there are <u>issues</u>, such as damages, that are not the subject of the November 7, 2005 trial …" <u>See</u> Reebok's Memorandum at 3. As detailed below, there is no overlap between the issues of willfulness and liability or validity. Further, to defend against the issue of willfulness would require Wal-Mart to decide between asserting the attorney-client privilege or foregoing the same. Again, it is telling that Reebok did not raise this

#1019713 v1
105210-52957

issue until the end of discovery.  Allowing Reebok to alter the scope of trial at this time would unfairly prejudice Wal-Mart.


## II.    PROCEDURAL HISTORY

Although Wal-Mart does not take issue with the majority of the procedural history recited by Reebok, there are some matters that require clarification and elaboration.  In particular, on August 5, 2005, Reebok told the Court that it was prepared to try the case ***that day***.  Nonetheless, prior to Wal-Mart serving any discovery, Reebok:

> ➢  Served 25 document demands on Wal-Mart;
> ➢  Served 11 interrogatories on Wal-Mart;
> ➢  Served 28 document demands on third party LJO; and
> ➢  Requested seven (7) depositions.

See Reebok's Moving Papers, Exs. A-E.  Thus, despite representing to the Court that it was prepared to proceed in August, Reebok has done its best to multiply the scope of discovery.

As Reebok acknowledges, "[p]ursuant to the Court's Order of August 5, 2005, trial has been set for this case beginning on November 7, 2005 ***on the issues of infringement and validity***."  See Reebok's Memorandum at 2.  This is Wal-Mart's position as well, there is no need for "clarification" as Reebok urges.  Rather, Reebok cannot allege with any degree of candor that there was ever a question that anything other than infringement and validity to be tried on November 7, 2005.  Indeed, Reebok does not allege that willfulness was to be tried with infringement and validity.  Additionally, Reebok urges that it "recognizes that there are ***issues***, such as damages, that are not the subject of the November 7, 2005 trial."  Id.  Other than willfulness, there are not any issues beyond damages that are left to be tried.  Thus, it should be

- 3 -

clear that Reebok's current request is not for "clarification" but, rather, seeks to have the Court reconsider and revise the August 5, 2005 Order – five (5) weeks prior to trial.

## III.    FACTUAL BACKGROUND

As with the procedural background, Wal-Mart does not seriously dispute many of the facts relayed in Reebok's moving papers. Wal-Mart does note, however, a few key omissions as well as a few points that are worth emphasis.

First, Reebok fails to attribute the proper emphasis to the fact that the application for the Reebok Patent was filed **after** Reebok became aware of the accused product. As Reebok explains: "Reebok first became aware of the accused shoes when they appeared in an advertisement in the April 5, 2004 issue of Footwear News." See Reebok's Memorandum at 5. Reebok must likewise acknowledge that the application for the Reebok Patent was filed on April 14, 2005. See Exhibit 1 hereto.

Reebok also does not provide sufficient emphasis to the fact that Cornwell knew of the Prior Art Advertisement at least as early as April 15, 2004. See Moving Papers at Exhibit I. Likewise, Reebok fails to acknowledge that at least as early as April 15, 2004, Cornwell believed that the Prior Art Advertisement infringed what would result in the Reebok Patent. Id. Finally, Reebok does not address the fact that Cornwell did not supply the Prior Art Advertisement to the PTO during the prosecution of the Reebok Patent. See Exhibit 1 hereto (which lists all prior art).

Thus, Reebok has tried to avoid connecting the dots as follows: (1) Reebok was aware of the Prior Art Advertisement before it filed the application that matured into the Reebok Patent; (2) Reebok was therefore aware that the accused product could not be copied from the Reebok

- 4 -

Patent; and (3) Reebok was made aware of the fact that the accused shoes were a commercial failure that were not being manufactured by the time the Reebok Patent issued.

## IV.    THERE CAN BE NO PRE-ISSUANCE COPYING AS A MATTER OF LAW

As the leading commentator explains:

> A patent is effective only on issuance by the Patent and Trademark Office. Suit for infringement may not properly be filed prior to issuance. Acts of making, using or selling prior to issuance give rise to no liability under the federal patent laws.

See 5 Chisum, Donald A., Chisum on Patents ("Chisum") at § 16.04[3] (2005 Electronic Edition).[1]

From this general axiom of patent law comes the obvious corollary that there can be no copying of a patent where the alleged infringer began its development process before the *issuance* of the patent in suit. See e.g. American Original Corp. v. Jenkins Food Corp., 774 F.2d 459, 465 (Fed. Cir. 1985) (holding that "the evidence fail[ed] to establish a copying of [plaintiff's] patent" and recognizing that possible knowledge of a pending patent application cannot provide a basis for willful infringement); State Industries, Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("[t]o willfully infringe a patent, the patent must exist and one must have knowledge of it"). Indeed, in Gustafson, Inc. v. Intersystems Industrial Products, Inc., 897 F.2d 508, 510-11 (Fed. Cir. 1990) the Federal Circuit explained the general precepts that are applicable here:

---

[1]    See also Gargoyles, Inc. v. United States, 113 F.3d 1572, 1581 (Fed. Cir. 1997) ("the right to exclude does not inure until the patent issues. ..."); GAF Building Materials Corp. v. Elk Corp. of Dallas 90 F.3d 479, 483 (Fed. Cir. 1996) ("a patent does not exist until it is granted... . Patent rights are created only upon the formal issuance of the patent; thus, disputes concerning patent validity and infringement are necessarily hypothetical before patent issuance."); National Presto Industries, Inc. v. West Bend Co., 76 F.3d 1185 (Fed. Cir. 1996); Waner v. Ford Motor Co., 331 F.3d 851(Fed. Cir. 2003).

#1019713 v1
105210-52957

It is obvious that a party cannot be held liable for "infringement," and thus not for "willful" infringement, of a non existent patent, i.e., no damages are payable on products manufactured and sold before the patent issued. Whether an act is "willful" is by definition a question of the actor's intent, the answer to which must be inferred from the circumstances. Hence a party cannot be found to have "willfully" infringed a patent of which the party had no knowledge. Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit.

\*\*\*

In our patent system, patent applications are secret, and patentees are authorized to sue "innocent" manufacturers immediately after their patents issue and without warning. To hold such patentees entitled to increased damages or attorney fees on the ground of willful infringement, however, would be to reward use of the patent system as a form of ambush.

Here, Cornwell's April 15, 2004 letter as well as the Prior Art Advertisement clearly demonstrate that *there could be no copying of the patent*. Indeed, Cornwell's April 15, 2004 Letter coupled with the Reebok Patent demonstrate that **even before Cornwell filed the application for the Reebok Patent, Reebok and Cornwell were aware that the accused device had already been manufactured**. Thus, Reebok already knows that the accused device cannot, as a matter of law, have been the product of copying. Likewise, Reebok already knows that neither Wal-Mart nor any other party could have even known that there was a patent pending, as the accused product was designed and manufactured ***prior*** to the application for the Reebok Patent being filed. This can all be gleaned from the evidence supplied by Reebok here! In light of the foregoing, it is beyond cavil that the issue of "copying" is not relevant here, and Reebok's

- 6 -

request to take discovery regarding the same – especially when there is five weeks left until this case is tried – should be denied.[2]


## V.  WILLFULNESS SHOULD NOT BE TRIED WITH INFRINGEMENT

Reebok proffers the conclusory statement that "the  issue  of willfulness is so intertwined with the issues of infringement and validity that a separate trial on the issue of willfulness is unwarranted."  See Reebok's Memorandum at 10.  Reebok's position is incorrect.  As the Supreme Court explained in Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank, 527 U.S. 627, 645 (1999):

> Actions predicated on direct patent infringement ... do not require any showing of intent to infringe; instead, knowledge and intent are considered only with respect to damages.  See 35 U.S.C. § 271(a) (1994 ed., Supp. III).

As a matter of law, the legal issues and factual inquiries related to patent infringement and patent validity are vastly different from the issues of willfulness and damages.


### A.  FACTUAL INQUIRIES RELATED TO INFRINGEMENT

As the Federal Circuit and Supreme Court have explained, a patent "infringement analysis entails two steps. The first step is determining  the meaning and scope of the patent claims asserted to be infringed. The second  step is comparing the properly construed claims to the device accused of  infringing."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976

---

[2]     It appears that Reebok also urges that Wal-Mart infringes because of alleged similarities between the accused shoe and a commercial product sold by Reebok.  This is devoid of merit.  As the Court of Appeals for the Federal Circuit has repeatedly explained "infringement … is  determined by comparing an accused product not with … a commercialized embodiment of the patentee, but with the properly previously construed claim[]."  SRI International v. Matsushita Elec. Corp., 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc).  See also Rawplug Co., Inc. v. Illinois Tool Works, Inc., 11 F.3d 1036, 1044 n.17 (Fed. Cir. 1993); Spectrum International, Inc. v. Sterilite Corp., 164 F.3d 1372, 1381 (Fed. Cir. 1998); ACCO Brands, Inc. v. Micro Security Devices, Inc., 346 F.3d 1075, 1081-1082 (Fed. Cir. 2003).

#1019713 v1
105210-52957

(Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996).  <u>See also</u> <u>OddzOn Products, Inc. v. Just Toys, Inc.</u>, 122 F.3d 1396 (Fed. Cir. 1997) (design patent case).  To show infringement, the patentee must demonstrate that the accused product or process contains every limitation or element of the properly construed claim.  <u>See</u> <u>e.g.</u> <u>Mas Hamilton Group v. LaGard, Inc.</u>, 156 F.3d 1206, 1211 (Fed. Cir. 1998).

Simply put, the infringement analysis requires an inquiry into the look of the accused products and how such accused products compare to the Reebok Patent.

## B.    FACTUAL INQUIRIES RELATED TO INVALIDITY FOR OBVIOUSNESS AND ANTICIPATION (35 U.S.C. §§ 102 AND 103)

To establish anticipation a party must show that each element of the claim in issue is found, either expressly or inherently, in a single prior art reference.  <u>Telemac Cellular Corp. v. Topp Telecom, Inc.</u>, 247 F.3d 1316, 1327 (Fed. Cir. 2001).  <u>See also</u> <u>In re Robertson</u>, 169 F.3d 743, 745 (Fed.Cir. 1999).   The factual determinations relevant to the obviousness inquiry include: (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) secondary considerations, if any, such as (i) commercial success, (ii) unexpected results, (iii) copying, (iv) long-felt but unresolved need, and (v) the failure of others to develop the invention.  <u>See</u>, <u>McNeil-PPC, Inc. v. L. Perrigo Co.</u>, 337 F.3d 1362, 1368 (Fed. Cir. 2003); <u>Graham v. John Deere Co.</u>, 383 U.S. 1, 17-18 (1966).  In <u>Key Pharmaceuticals Inc. v. Hercon Laboratories Corp.</u>, 161 F3d 709, 714 (Fed. Cir. 1998), the Federal Circuit explained:

> We observe in passing that, not unlike a determination of infringement, a  determination of anticipation, as well as obviousness, involves two steps.  First is construing the claim, a question of law for the court, followed by, in  the case of anticipation or obviousness, a comparison of the construed claim to

#1019713 v1
105210-52957

the prior art. This comparison process involves fact finding, and is
for the fact finder in the first instance.

Thus, the analysis of patent invalidity for anticipation or obviousness focuses on a comparison of the claims with references in the prior art, as well as the secondary factors listed above.

## C.   FACTUAL INQUIRIES RELATED TO INEQUITABLE CONDUCT

As detailed above and below, Wal-Mart seeks to amend its answer to raise a claim of inequitable conduct. In order to prove inequitable conduct in the prosecution of a patent, the defendant must provide evidence of a failure to disclose material information coupled with an intent to deceive. See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH, 237 F.3d 1359, 1366 (Fed. Cir. 2001). This is discussed in greater detail below. However, it is clear that the relevant factual inquiries here are: (1) whether the withheld reference meets a threshold level of materiality; and (2) whether the evidence shows a threshold level of intent to mislead the PTO. See Li Second Family Ltd. P'ship v. Toshiba Corp., 231 F.3d 1373, 1379, (Fed. Cir. 2000).

## D.   FACTUAL INQUIRIES RELATED TO WILLFULNESS

As stated above, willfulness is a determination as to a state of mind. Read Corp. v. Portec, Inc., 970 F.2d 816, 828 (Fed. Cir. 1992). Willfulness requires a showing that the totality of the circumstances evince the egregious conduct that constitutes willful infringement. Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp., 383 F.3d 1337, 1342 (Fed. Cir. 2004) (en banc). The Federal Circuit has "identified several criteria for assessing damages, including, inter alia, whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it

#1019713 v1
105210-52957

was not infringed, and the duration of defendant's misconduct." Imonex Services Inc. v. W. H. Munzprufer Dietmar Trenner GmbH, 408 F.3d 1374, 1377 (Fed. Cir. 2005).

Thus, the factual analysis here is very different from that which would be presented on the issues of patent infringement or patent validity. Simply put, given that the accused products were designed and manufactured prior to both the application for and the issuance of the patent, the inquiry of willfulness focuses solely on Wal-Mart's activity after the patent issued and after Wal-Mart was given official notice by Reebok. Clearly, then, the focus is entirely on Wal-Mart's legal investigations and considerations based thereon, as well as its business decisions.

### E.    CONCLUSION ON SIMILARITY OF ISSUES

Clearly, there is little to no overlap between the issues that are slated to be presented at the November 7, 2005 trial on the one hand, and the issue of willfulness on the other hand. Indeed, other than its conclusory allegations to the contrary, Reebok has not proffered any argument to the contrary. Rather, Reebok offers the following statement:

> Much of the discovery sought by Reebok of LJO and Wal-Mart is **also relevant** to the issue of willfulness, such as documents and things which refer or relate to **[1]** the indemnification agreement between LJO/IFH and Wal-Mart, as well as documents and things which refer or relate to **[2]** Reebok's DMX Reflex shoe, **[3]** the Reebok [P]atent and/or the patent application from which it issued; **[4]** any comparison of the accused shoes to the products sold by Reebok; **[5]** any analysis done with respect to the validity, enforceability and/or infringement of the [Reebok Patent]; **[6]** opinions of counsel requested … concerning the Reebok patent and/or the accused shoe; **[7]** all documents which refer or relate to decisions … to continue to make, use, sell and/or offer for sale the accused shoes after the issuance of the Reebok patent; and **[8]** any communications … regarding the Reebok patent, the accused shoes and/or this lawsuit. Responses to these requests may also lead to admissible evidence on the issue of willfulness.

See Reebok Memorandum at 10 (emphasis added) (reference numerals added).

- 10 -

Reebok implies that it propounded these requests because they are relevant to both willfulness *and* other issues in this case. Not so. These requests clearly are not relevant to the issue of infringement. These requests clearly are not relevant to the issue of patent validity. Rather, these requests are relevant **only** to the issue of willfulness. These discovery demands seek Wal-Mart's relationships and the attorney and business work done by or on behalf of Wal-Mart related to its decision to continue selling the accused shoe after August 31, 2004.

Thus, despite Reebok's empty contention that the issue of willfulness and liability are inextricably intertwined here, Reebok's own requests demonstrate that there is absolutely no overlap here. Accordingly, Reebok's allegation in this regard should be disregarded in its entirety. Instead, Reebok's request should be rejected outright.

## F.    TRYING WILLFULNESS UNFAIRLY PREJUDICES WAL-MART

The totality of the circumstances outlined in Imonex Services Inc. v. W. H. Munzprufer Dietmar Trenner GmbH, *supra*, are limited to one issue here. As detailed above, the accused product was manufactured prior to the issuance of the Reebok Patent. Accordingly, the salient inquiry here is what steps, if any, Wal-Mart undertook once it was informed of the issuance of the Reebok Patent. Yet, because one of the only ways for a party to demonstrate that it did not willfully infringe a patent is by demonstrating a competent opinion of counsel, Wal-Mart is confronted with the dilemma of choosing between (1) the lawful assertion of the attorney client privilege and (2) avoidance of a willfulness finding if infringement is found.

The best way to deal with this dilemma is through bifurcation. As the Federal Circuit explained in Quantum Corp. v. Tandon Corporation, 940 F.2d 642,643-44 (Fed. Cir. 1991):

> Proper resolution of the dilemma of an accused infringer
> who must  choose between the lawful assertion of the attorney-

- 11 -

client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.

Here, the action is already bifurcated. As Reebok states:

> Pursuant to the Court's Order of August 5, 2005, trial has been set for this case beginning on November 7, 2005 on the issues of infringement and validity. It is Reebok's understanding that the Court has decided to bifurcate the issue of damages, pending a decision on the issues of infringement and validity.

See Reebok Memorandum at 2-3. Accordingly, permitting Wal-Mart to preserve the privilege for advice of counsel makes sense. Put simply, inasmuch as the case already is bifurcated, Reebok has no reason to complain about the fact that willfulness would be tried with damages. Further, like damages, willfulness only becomes relevant if Reebok can demonstrate that the Reebok Patent is valid, enforceable and infringed.

It should be noted that all of the above discovery will require additional work in this action. Likewise, at trial, the issue of willfulness will be subject to testimony from different individuals and require presentation of different evidence. As such, not only is Wal-Mart threatened with being required to produce the opinion of counsel, it also is subject to a broader scope of discovery and a longer trial: (1) even though there is no finding of infringement or validity; and (2) even though, should liability be found, there will be a second trial on the issue of damages.

#1019713 v1
105210-52957

### G.    CONCLUSION ON BIFURCATING WILLFULNESS

The issue of willfulness, like the issue of damages, is only pertinent if the Reebok Patent is deemed valid an infringed.  Reebok has stated its understanding that only infringement and damages will be tried on November 7, 2005.  The issue of willfulness does not overlap with any of the other issues currently *sub judice*.  Significantly, discovery on this issue needlessly expands the parties' burden and expanding the breadth of the trial here significantly adds to the burden of Wal-Mart and the Court.  There is no good reason to inject the issue of willfulness into this action at this date.  Further, doing so causes substantial hardship and prejudice to Wal-Mart, while there will be no prejudice to Reebok – as it never even considered that this issue would be pertinent to the upcoming trial.  Accordingly, Reebok's motion in this regard should be denied.

### VI.    WAL-MART SHOULD BE PERMITTED TO AMEND ITS ANSWER TO ADD A CLAIM FOR INEQUITABLE CONDUCT

The Court did not issue a scheduling order in this case.  Although trial is set for November 7, 2005, the trial date was set only on August 5, 2005, before the parties were able to engage in discovery.  Reebok has not yet provided Wal-Mart any documents in this action.  However, the documents provided by Reebok in support of its current motion coupled with the Reebok Patent demonstrate that there is, at the very least, a *prima facie* case for inequitable conduct.  Further, and more important: (1) the issue of inequitable conduct overlaps with the issues of patent infringement and/or patent validity; and (2) trying the issue of inequitable conduct will not materially prejudice Reebok.

- 13 -

## A.    STANDARD FOR AMENDING THE COMPLAINT

Under the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  In Foman v. Davis, 371 U.S. 178, 182 (1962) The Supreme Court explained that:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be freely given.

This remains the law today.  See Gonzalez-Perez v. Hosp. Interamericano de Medicina Avanzada (HIMA), 355 F.3d 1, 5-6 (1st Cir. 2004).

Here, Wal-Mart became aware of Cornwell's (and Reebok's) knowledge of the Prior Art Advertisement only when Reebok served its motion papers.  This is Wal-Mart's first request for an amendment, and is neither the result of bad faith nor dilatory motive.  To the contrary, Wal-Mart is raising this request shortly after learning of the underlying facts.  As further detailed herein, the amendment is not futile – rather a *prima facie* case for inequitable conduct exists.  This *prima facie* case also demonstrates that Wal-Mart is not being motivated by anything other than a good faith attempt to raise a relevant issue.  Likewise, the *prima facie* case of inequitable conduct clearly demonstrates that justice requires that Wal-Mart be permitted leave to amend its answer.  Finally, as all of the evidence here resides with Reebok and/or its counsel, there can be no prejudice to Reebok by allowing this amendment.

## B.    THERE IS A PRIMA FACIE CASE OF INEQUITABLE CONDUCT

The facts here are simple.  Cornwell was aware that the Prior Art Advertisement was published on April 5, 2004.  On April 14, 2005, Cornwell submitted the application for the

#1019713 v1
105210-52957

Reebok Patent.  According to Cornwell's April 15, 2004 Letter, he believed that the Prior Art

Advertisement displayed a product that infringed the Reebok Patent.  Cornwell did not disclose

the existence of the Prior Art Advertisement to the PTO.

### 1.    The Duty of Candor Requires The Disclosure of Material Prior Art

37 C.F.R. 1.56(a) provides, in pertinent part:

> A patent by its very nature is affected with a public interest. The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of **all information material to patentability**. Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes **a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section**. The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. …. The Office encourages applicants to carefully examine:
>
> > (2) The closest information over which individuals associated with the filing or prosecution of a patent application believe any pending claim patentably defines, to make sure that any material information contained therein is disclosed to the Office.

(emphasis added).

37 C.F.R. 1.56(b) defines materiality and provides, in pertinent part:

> Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim;

* * *

- 15 -

> A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, **and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability**.

(emphasis added).

Finally, and of great importance here, the <u>attorney</u> prosecuting the patent application is charged with the same duty of candor.  <u>See</u> 37 C.F.R. 1.56(c).

### 2.    The Prior Art Advertisement is Prior Art

As the leading commentator explains, "[a] general rule in patent law is that the date of invention of the applicant or patentee for purposes of novelty and anticipation is presumed to be the date he files a complete patent application in the Patent and Trademark Office disclosing the invention."  See <u>Chisum</u>, *supra* at § 3.08.

The Reebok Patent was filed on <u>April 14, 2004</u>.

According to Reebok's moving papers and Cornwell's <u>April 15, 2004</u> Letter, the Prior Art Advertisement was published as of <u>April 5, 2004</u>.  As such, on its face, the Prior Art Advertisement predates the Reebok Patent by nine (9) days.

### 3.    The Prior Art Advertisement is Material

Under 35 U.S.C. § 102(a), an inventor is entitled to a patent unless

> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent …

- 16 -

Likewise, 35 U.S.C. § 103 (a) provides, in pertinent part:

> (a) A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in [35 U.S.C. § 102]
> if the differences between the subject matter sought to be patented
> and the prior art are such that the subject matter as a whole would
> have been obvious at the time the invention was made to a person
> having ordinary skill in the art to which said subject matter
> pertains.

A century-old axiom of patent law holds that a product "which would literally infringe if later in time anticipates if earlier." Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1379 (Fed. Cir. 2003); accord Peters v. Active Mfg. Co., 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). Thus, to the extent that Reebok now alleges that the accused shoe infringes the Reebok Patent, Reebok also must admit that, at the date of the filing of the Reebok Patent, it was aware of a prior art reference that made out a *prima facie* case for anticipating the Reebok Patent (or, at the very least, rendering it obvious).

Put another way, on April 15, 2004, Cornwell alleged that the Prior Art Advertisement infringed the Reebok Patent. In his April 15, 2004 Letter, Cornwell acknowledged his understanding that the Prior Art Advertisement was published on April 5, 2004. As the attorney that filed the application for the Reebok Patent, Cornwell was aware that the Reebok Patent was filed on April 14, 2004. Accordingly, at all times relevant, Cornwell knew that there was a reference (the Prior Art Advertisement), that on its face predated the application for the Reebok Patent. If his allegations are to be believed, then at least as early as April 15, 2004, Cornwell believed that the Prior Art Advertisement infringed the Reebok Patent. As such, because, from the face of the documents the Prior Art Advertisement predates the Reebok Patent, Cornwell had to believe that there was at least a *prima facie* case that it anticipated the Reebok Patent. Clearly, therefore, the Prior Art Advertisement would be material.

- 17 -

4.     **Reebok's Claim of Prior Conception**
       <u>**Is Not Relevant to Materiality**</u>

It is anticipated that Reebok will try to dispute the current claim by urging that the invention was conceived <u>prior</u> to the existence of the Prior Art Advertisement.  The legal requirements related to this issue are addressed below.  However, regardless of whether Reebok's allegation in this regard would be correct, this does <u>not</u> effect the materiality of the Prior Art Advertisement.  Rather, pursuant to 37 C.F.R. 1.56(b), a reference is material if it presents a *prima facie* case of invalidity <u>prior</u> to "consideration [of] evidence which may be submitted in an attempt to establish a contrary conclusion of patentability."  Thus, while Cornwell and/or Reebok might have successfully overcome the Prior Art Advertisement by arguing that the invention was conceived earlier in time, the materiality of the Prior Art Advertisement would be unaffected – rather, Reebok would simply present the arguments required under 37 C.F.R. 1.56(b).

There is one point here cannot be emphasized enough.  One day after filing the patent application, Cornwell sent out letters accusing the Prior Art Advertisement as a potential infringement.  On September 7, 2004, Cornwell accused the same product with infringement of the Reebok Patent.  <u>See</u> Reebok's Moving Papers at Ex. L.  Accordingly, throughout the entire prosecution of the Reebok Patent, Cornwell, who has the duty of candor with the PTO, was aware of the Prior Art Advertisement and considered the same to be material as an infringement.  It is impossible, therefore, that Cornwell could believe that a document that, on its face predates the Reebok Patent, could not be material to the patentability of the Reebok Patent.  As stated above, it is a centuries-old axiom that a reference which, if developed after the patent would infringe, would anticipate the patent if it was developed earlier.

#1019713 v1
105210-52957

5.    <u>Reebok and Cornwell Chose to Avoid Proceeding Properly</u>

At the time that the application was pending, if Reebok and/or Cornwell had abided by the duty of candor, Reebok could have avoid a finding of invalidity (for anticipation or obviousness) by establishing, through the inventors, that: (1) their invention was conceived prior to creation of the alleged infringing product, <u>and</u> (2) the inventors acted with due diligence to have the invention reduced to practice or have the patent application filed.  <u>Griffin v. Bertina</u>, 285 F.3d 1029, 1032 (Fed. Cir. 2002); <u>Mahurkar v. C.R. Bard, Inc.</u>, 79 F.3d 1572, 1577 (Fed. Cir. 1996).  Obviously, Reebok will need to do the same thing at trial here.

It appears that the reason that Reebok and Cornwell chose to avoid this avenue is because of the high burden that they faced.  For the purpose of overcoming the Prior Art Advertisement as prior art, *Reebok* had the burden of proving, <u>by clear and unequivocal evidence</u>, that the invention was <u>both</u> conceived and reduced to practice before the application date.  <u>See</u> <u>Griffin</u>, *supra*, 285 F.3d at 1032 and <u>Mahurkar</u>, *supra*, 79 F.3d at 1577.   This is not an easy task.  "Conception is the formation 'in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is therefore to be applied in practice.'"   Kridl <u>v.</u> <u>McCormick</u>, 105 F.3d 1446, 1449 (Fed. Cir. 1997).   The conception must encompass all limitations of the claimed invention, and "is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation," <u>Burroughs Wellcome Co. v. Barr Labs.</u> <u>Inc.</u>, 40 F.3d 1223, 1228 (Fed. Cir. 1994).

The evidence required to establish earlier conception is significant.  It is well established that when a party seeks to prove conception via the oral testimony of a putative inventor, the party *must proffer evidence corroborating that testimony*.  <u>See</u> <u>Mahurkar</u>, *supra*, 79 F.3d at 1577;

- 19 -

Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir. 1993).  Put another way, evidence of the inventive facts must not rest alone on the testimony of the inventors themselves.  Cooper v. Goldfarb, 154 F.3d 1321, 1330 (Fed. Cir. 1998).  This rule addresses the concern that a party claiming inventorship might be tempted to describe his or her actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent.  See Eibel Process Co. v. Minn. & Ont. Paper Co., 261 U.S. 45, 60 (1923); Kridl, supra, 105 F.3d at 1450; Price, supra, 988 F.2d at 1194-95.

Yet, even if the inventors could demonstrate that there was prior conception, Reebok's task would not be complete.  In order to show due diligence, the patentee (i.e., the inventors of the Reebok Patent) must "account for the entire critical period by showing either activity aimed at reduction to practice or legally adequate excuses for inactivity."  Chisum, supra, at §10.07.  See also, Monsanto Co. v. Mycogen Plant Science, Inc., 261 F.3d 1356, 1369 (Fed.Cir. 2001).  An applicant must account for the entire period during which diligence is required. Gould v. Schawlow, 363 F.2d 908, 919 (CCPA 1966) (Merely stating that there were no weeks or months that the invention was not worked on is not enough.); In re Harry, 333 F.2d 920, 923 (CCPA 1964) (statement that the subject matter "was diligently reduced to practice" is not a showing but a mere pleading).  Under some circumstances, even a two (2) day period lacking activity has been held to be fatal. In re Mulder, 716 F.2d 1542, 1545 (Fed. Cir. 1983).

It is possible that Cornwell did not think that the foregoing evidence existed – or it is possible that Cornwell or Reebok simply did not want to marshal their efforts at overcoming the Prior Art Advertisement.  Regardless of their considerations however, the overall conduct is clear – Cornwell and Reebok failed to disclose a reference that they believed was material.

### 6.    Motivation Can Be Inferred from Conduct and Materiality

Obviously, without discovery on this issue, all that can be stated for certain at this point is: (1) Cornwell was aware of the Prior Art Advertisement; (2) Cornwell was aware that the Prior Art Advertisement created a *prima facie* case of invalidity of the Reebok Patent (i.e. Cornwell's objective manifestation of his subjective belief that the Prior Art Advertisement would infringe the Reebok Patent); (3) Cornwell did not disclose the Prior Art Advertisement to the PTO.

As the Federal Circuit has explained on numerous occasions:

> Intent [to deceive or mislead the PTO] need not be proven by direct evidence.  Indeed, "[d]irect proof of wrongful intent is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances."

Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998).  Rather, in the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information.  See Bruno Independent Living Aids Inc. v. Acorn Mobility Services Ltd., 394 F.3d 1348 (Fed. Cir. 2005).  Moreover, and more important here, when balanced against high materiality, the showing of intent can be proportionately less.  Brasseler U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1381 (Fed. Cir. 1999).  As such, "a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead." Purdue Pharma L.P. v. Endo Pharmaceuticals Inc., 410 F.3d 690 (Fed. Cir. 2005) (cit. omit.).

## C.    AMENDING THE ANSWER WILL NOT PREJUDICE REEBOK

There is no discovery that Reebok will need to take on this issue.  The existence of the Prior Art Advertisement clearly cannot be disputed by Reebok at this point.  Accordingly, the

#1019713 v1
105210-52957

Prior Art Advertisement, and its effect on the validity of the Reebok Patent clearly will be relevant and presented to the jury here.  Further, for purposes of obviousness and anticipation, Reebok will need to demonstrate evidence regarding the conception, reduction to practice and due diligence by or on behalf of Reebok.  Thus, not only will the Prior Art Advertisement be considered by the trier of fact, but also Reebok's attempt to distinguish and/or circumnavigate the same will be considered by the trier of fact.  The only additional evidence which might be proffered would be any evidence of good faith on behalf of Cornwell or Reebok.

Reebok was aware of this evidence before Wal-Mart was.  The only "prejudice" Reebok is likely to face is that it will have no explanation for Cornwell's failure to cite the Prior Art Advertisement to the PTO.

### D.    CONCLUSION ON AMENDING THE ANSWER

A proposed amended Answer is included herewith as Exhibit 2.  Substantial justice requires that Wal-Mart be allowed to amend its answer at this time.

- 22 -

## VII.    CONCLUSION

Based on the foregoing, Reebok's belated request to expand the scope of the November

7, 2005 Trial to include the issue of willfulness should be denied.  Also based on the foregoing,

Wal-Mart should be permitted to file an amended complaint that asserts the affirmative defense

of inequitable conduct.

Respectfully submitted,

Dated: October 3, 2005

GIBBONS, DEL DEO, DOLAN,
GRIFFINGER & VECCHIONE, P.C.

By: /s/ Peter T. Cobrin
Irving H. Picard (BBO # 398820)
Peter T. Cobrin (pro hac vice)
Oren J. Warshavsky (pro hac vice)
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
(212) 649-4700 ph
(212) 333-5980 fax

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

#1019713 v1
105210-52957

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was filed electronically in compliance with Local Civil Rule 5.2.  As such, a copy of this Defendant Wal-Mart Stores, Inc.'s Memorandum of Points and Authorities: (1) in Opposition to the Motion to Expand the Scope of Discovery Filed by Plaintiff Reebok International, Ltd.; and (2) in Support of Wal-Mart's Cross Motion to Amend the Complaint was served electronically upon the following counsel of record for Plaintiff Reebok International, Ltd.:

> Victoria L. Walton (BBO #650999)
> BURNS & LEVINSON LLP
> 125 Summer Street
> Boston, Massachusetts 02110-1624
> (617) 345-3000
> (617) 345-3299 facsimile
>
> Donald R. Banowit (pro hac vice)
> STERNE KESSLER GOLDSTEIN & FOX, P.L.L.C.
> 1100 New York Avenue, N.W.
> Washington, D.C. 20005
> (202) 371-2600
> (202) 371-2540 facsimile

/s/ Peter T. Cobrin
Peter T. Cobrin (pro hac vice)

- 24 -

US00D495127S1

(12) **United States Design Patent**      (10) Patent No.:      **US D495,127 S**

Marvin et al.      (45) Date of Patent:      ** **Aug. 31, 2004**

(54) **PORTION OF A MIDSOLE**

(75) Inventors: **William Marvin**, Brighton, MA (US); **Brian Christensen**, Centerville, MA (US)

(73) Assignee: **Reebok International Ltd.**, Canton, MA (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/203,335**

(22) Filed: **Apr. 14, 2004**

**Related U.S. Application Data**

(62) Division of application No. 10/607,541, filed on Jun. 27, 2003.

(51) LOC (7) Cl. .................................................. **02-99**

(52) U.S. Cl. ............................................... **D2/972**

(58) Field of Search .......................... D2/902, 907, 908, D2/943, 944, 969, 972–974, 964–967; 36/45, 50.1, 77 M, 77 R, 83, 88, 113, 114, 126–130

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 1,081,442 | A | 12/1913 | Geiger | |
| D93,966 | S | 12/1934 | Bressler | |
| D95,767 | S | * 5/1935 | Marks | D2/965 |
| 2,048,683 | A | 7/1936 | Brockman | |
| D112,267 | S | * 11/1938 | Court | D2/965 |
| D125,773 | S | 3/1941 | Macauley | |
| 3,777,374 | A | 12/1973 | Hendricks | |
| D261,446 | S | * 10/1981 | Schmohl | D2/907 |
| 4,641,438 | A | 2/1987 | Laird et al. | |
| D290,542 | S | * 6/1987 | O'Rourke | D2/907 |
| 4,680,876 | A | 7/1987 | Peng | |
| 4,736,531 | A | 4/1988 | Richard | |
| D295,459 | S | 5/1988 | Zuidema et al. | |
| D295,691 | S | 5/1988 | Zuidema et al. | |
| D295,692 | S | 5/1988 | Zuidema et al. | |
| D296,384 | S | 6/1988 | Tong | |
| 4,760,651 | A | 8/1988 | Pon-Tzu | |
| 4,823,482 | A | 4/1989 | Lakic | |
| D301,659 | S | 6/1989 | Le | |
| D302,352 | S | 7/1989 | Austin | |

| | | | | |
|---|---|---|---|---|
| D303,451 | S | * 9/1989 | Weiner | D2/908 |
| 4,887,367 | A | 12/1989 | Mackness et al. | |
| 4,918,838 | A | 4/1990 | Chang | |
| 4,936,030 | A | 6/1990 | Rennex | |
| D316,773 | S | 5/1991 | Valle | |
| 5,014,449 | A | 5/1991 | Richard et al. | |
| D319,337 | S | 8/1991 | Hatfield | |
| D320,303 | S | 10/1991 | Kiyosawa | |
| D322,153 | S | 12/1991 | Schneider et al. | |
| D323,577 | S | 2/1992 | Kayano | |
| D324,940 | S | 3/1992 | Claveria | |
| D325,288 | S | 4/1992 | Richard et al. | |
| D326,355 | S | 5/1992 | Cotsidas | |
| D327,770 | S | 7/1992 | Prats et al. | |
| 5,181,873 | A | 1/1993 | Tolbert | |
| D334,463 | S | 4/1993 | Chang | |
| D334,833 | S | 4/1993 | Blissett | |
| 5,224,277 | A | 7/1993 | Sang Do | |
| D341,708 | S | 11/1993 | Blissett | |
| D344,401 | S | 2/1994 | Kilgore | |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0 299 669 | B1 | 12/1993 |
| FR | 2 563 979 | | 5/1984 |
| GB | 2 244 200 | A | 11/1991 |

OTHER PUBLICATIONS

Shoes, A Lexicon of Style by Valerie Steel; Rizzoli, 1999; p. 18, Ferragamo layered heel.*

*Primary Examiner*—Dominic Simone

(74) *Attorney, Agent, or Firm*—Sterne, Kessler, Goldstein & Fox P.L.L.C.

(57) **CLAIM**

The ornamental design for a portion of a midsole, as shown and described.

**DESCRIPTION**

FIG. 1 is a side view of a portion of a midsole showing our new design; and,

FIG. 2 is a cross sectional view thereof taken along line 2—2.

The broken line is environmental only and forms no part of the claimed design.

**1 Claim, 2 Drawing Sheets**





## US D495,127 S
Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| D350,018 S | 8/1994 | Kilgore |
| D350,019 S | 8/1994 | Kilgore |
| D350,020 S | 8/1994 | Kilgore |
| D350,225 S | 9/1994 | Kilgore |
| D350,227 S | 9/1994 | Kilgore |
| D350,433 S | 9/1994 | Kilgore |
| 5,343,639 A | 9/1994 | Kilgore et al. |
| D351,057 S | 10/1994 | Kilgore |
| D351,720 S | 10/1994 | Kilgore |
| 5,353,523 A | 10/1994 | Kilgore et al. |
| D351,936 S | 11/1994 | Kilgore |
| D352,155 S | 11/1994 | Merceron |
| D352,157 S | 11/1994 | Merceron |
| D352,159 S | 11/1994 | Kilgore |
| D352,160 S | 11/1994 | Kilgore |
| 5,367,792 A | 11/1994 | Richard et al. |
| D354,617 S * | 1/1995 | Kilgore ...................... D2/964 |
| 5,502,901 A | 4/1996 | Brown |
| 5,505,010 A | 4/1996 | Fukuoka |
| 5,595,002 A | 1/1997 | Slepian et al. |
| D377,859 S | 2/1997 | Bramani |
| 5,607,749 A | 3/1997 | Strumor |
| 5,621,984 A | 4/1997 | Hsieh |
| 5,625,966 A | 5/1997 | Perotto et al. |
| D379,864 S | 6/1997 | Kayano |
| D384,192 S | 9/1997 | Hsieh |
| D388,241 S | 12/1997 | Merceron |
| D404,896 S * | 2/1999 | Cooper ...................... D2/972 |
| 5,901,467 A | 5/1999 | Peterson et al. |
| 5,975,861 A | 11/1999 | Shin et al. |
| 6,282,814 B1 | 9/2001 | Krafsur et al. |
| 6,519,873 B1 | 2/2003 | Buttigieg |
| D485,053 S * | 1/2004 | McDowell .................. D2/972 |
| 2001/0049888 A1 | 12/2001 | Krafsur et al. |
| 2003/0196354 A1 | 10/2003 | Chu |

* cited by examiner

U.S. Patent

Aug. 31, 2004    Sheet 1 of 2    US D495,127 S



FIG.1



FIG.2